IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MATTHEW C. KILGORE, *et al.,*

                    Plaintiffs,

          v.

KEYBANK, NATIONAL
ASSOCIATION, *et al.,*

                    Defendants.

NO. C 08-2958 TEH

**ORDER DENYING MOTION TO
COMPEL ARBITRATION AND
GRANTING MOTION TO
STRIKE**

This matter came before the Court on Monday, July 6, 2009, on the Motion to Compel Arbitration of Defendants Keybank National Association and Great Lakes Educational Loan Services, Inc.  The Court is also in receipt of Defendants' Motion to Strike.  Having carefully considered the parties' written and oral arguments, Defendants' Motion to Compel Arbitration is DENIED and Defendants' Motion to Strike is GRANTED for the reasons set forth below.

**FACTUAL AND PROCEDURAL BACKGROUND**

Putative named Plaintiffs Matthew Kilgore, William Fuller, and Kevin Wilhelmy were students at Silver State Helicopters ("SSH") who borrowed student loans from Defendants to pay for their training as helicopter pilots.[1]  They seek to represent a putative class of over 120 California resident former students of SSH, a defunct private helicopter training school. Defendants KeyBank, Great Lakes Educational Loan Services, Student Loan Express, and American Education Services are all student loan providing and/or servicing organizations.

[1]Kevin Wilhelmy's claim is against Student Loan Xpress, and therefore is not part of the instant motion.

**United States District Court**
For the Northern District of California

1   These Defendants provided student loans to students at SSH.  On February 2, 2008, SSH

2   closed its doors and filed for bankruptcy.  Plaintiffs, putative class members, and more than

3   2000 other SSH students nationwide failed to complete their educational program prior to the

4   SSH declaration of bankruptcy.  However, Plaintiffs Kilgore and Fuller did obtain their

5   Federal Aviation Administration certificates; Kilgore is certified as a private helicopter pilot

6   and Fuller as commercial helicopter pilot.  Brooks Decl., Exs. E & F.

7       Plaintiffs Matthew Kilgore and William Fuller executed Service Contract Agreements

8   and KeyBank Notes in the Fall of 2004.  Second Amended Complaint ("SAC") ¶¶ 13-14.

9   Each received student loans in the amount of $55,950 as part of that contractual agreement.

10  Baldwin Decl. at ¶¶ 3-4.  Plaintiffs assert that the Defendants conspired with SSH, which

11  they allege was a sham vocational school, to dupe students into accepting loans that were

12  paid in advance to SSH.  When SSH shut its doors, Plaintiffs and those they seek to represent

13  were left without their degrees and with significant student loan debt. Plaintiffs allege that

14  these loans were provided as part of a fraudulent scheme in which SSH lured students by

15  offering sales presentations showing them a "lucrative and exciting career piloting

16  commercial helicopters within 18 months, fully financed by Defendants."  SAC at ¶ 34.

17  Plaintiffs allege that Defendants "created, reviewed, approved and/or ratified SSH's sales

18  presentation as it related to Defendants' loan program."  *Id.* at ¶ 36.  Plaintiffs assert that

19  KeyBank was SSH's preferred lender in 2003 and 2004, and actively participated in SSH's

20  fraud "by facilitating the loans, enabling SSH to violate the Holder Rule and insulating both

21  SSH and itself from liability by omitting and causing SSH to omit the Holder Rule Notice

22  from the relevant consumer credit transaction documents."[2]  *Id.* at ¶¶ 44-45. Plaintiffs allege

23  that KeyBank conspired with SSH executives "to insure that the students' entire tuition was

24  disbursed to SSH in short order," apparently as opposed to through periodic payments that

25  are more typical in the realm of educational loan disbursement plans.  *Id.* at ¶ 46.

26      [2]The Holder Rule is a consumer protection statute that allows consumers to assert against
    purchase money creditors the same defenses that the consumer would be able to assert against the
27  provider of the goods or services for which the money was loaned.  KeyBank excluded this notice
    from its contracts, and asserts that its provisions are not available to Plaintiffs.  Plaintiffs disagree
28  with this contention.

**United States District Court**
For the Northern District of California

1    The promissory notes that Kilgore and Fuller signed contained the following forum

2  selection clause:

3    Governing Law; Choice of Forum - I [Plaintiff] understand and agree that (i)
     you [KeyBank] are located in Ohio, (ii) that this Note will be entered into in
4    Ohio and (iii) that your decision on whether to lend me money will be made in
     Ohio.  CONSEQUENTLY, THE PROVISIONS OF THIS NOTE WILL BE
5    GOVERNED BY FEDERAL LAWS AND LAWS OF THE STATE OF
     OHIO, WITHOUT REGARD TO CONFLICT OF LAWS RULES.  I agree
6    that any suit I bring against you (or against any subsequent holder of this Note)
     must be brought in a court of competent jurisdiction in the county in which you
7    maintain your . . . principal place of business.

8  Baldwin Exs. A & B at ¶ R5 (emphasis in the original).

9    Additionally, the notes included a lengthy arbitration clause, which, among other

10 things, included the following terms:

11   **This Arbitration Provision will apply to my Note . . . unless I notify you in
     writing that I reject the Arbitration Provision within 60 days of signing my
12   Note.**
                                         \*\*\*
13   As used in this Arbitration Provision, the word "Claim" means any claim,
     dispute, or controversy between you and me arising from or relating to this
14   Note, any Prior Promissory Note, or the relationships resulting from this Note
     or any Prior Promissory Note, including, without limitation, the validity,
15   enforceability, or scope of this Arbitration Provision, this Note, or any Prior
     Promissory Note.  "Claim" includes claims of every kind and nature, whether
16   pre-existing, present, or future, including, without limitation, initial claims,
     counterclaims, cross-claims, and third-party claims, and claims based upon
17   contract, tort, fraud and other intentional torts, constitution, statute, regulation,
     common law, and equity (including, without limitation, any claim for
18   injunctive or declaratory relief).  The word "Claim" is to be given the broadest
     possible meaning . . . .
19                                       \*\*\*
     Any Claim shall be resolved, upon the election of you [KeyBank] or me [the
20   Plaintiffs] by binding arbitration pursuant to this Arbitration Provision and the
     applicable rules of either the J.A.M.S/Endispute or the National Arbitration
21   Forum in effect at the time the Claim is filed.
                                         \*\*\*
22   **IF ARBITRATION IS CHOSEN BY ANY PARTY WITH RESPECT TO
     A CLAIM, NEITHER YOU [KEYBANK] NOR I [PLAINTIFFS] WILL
23   HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR
     HAVE A JURY TRIAL ON THAT CLAIM, OR TO ENGAGE IN PRE-
24   ARBITRATION DISCOVERY EXCEPT AS PROVIDED FOR IN THE
     APPLICABLE ARBITRATION RULES.  FURTHER, I WILL NOT
25   HAVE THE RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR
     MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY
26   CLAIM SUBJECT TO ARBITRATION.  EXCEPT AS SET FORTH
     BELOW, THE ARBITRATOR'S DECISION WILL BE FINAL AND
27   BINDING. I UNDERSTAND THAT OTHER RIGHTS THAT I WOULD
     HAVE IF I WENT TO COURT MAY ALSO NOT BE AVAILABLE IN
28   ARBITRATION.  THE FEES CHARGED BY THE ARBITRATION**

**United States District Court**
For the Northern District of California

1  **ADMINISTRATOR MAY BE GREATER THAN THE FEES CHARGED BY A COURT.**

2

3  There shall be no authority for any Claims to be arbitrated on a class action basis.  Furthermore, an arbitration can only decide your or my Claim(s) and may not consolidate or join the claims of other persons that may have similar claims.

4

        ***

5  This Arbitration Provision is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. Sections 1 *et seq.*

6

7  Baldwin Exs. A & B at ¶ Q (emphasis in the original).

8      The promissory notes also contained a signature box that was set below the rest of the

9  text, surrounded with a boldface line, which read in part:

10  **NOTICE TO CONSUMER/CUSTOMER:**

11  **(a) I [PLAINTIFF] WILL NOT SIGN THIS AGREEMENT/NOTE BEFORE I READ IT (EVEN IF OTHERWISE ADVISED) . . . .**

12

13  **(e) I [PLAINTIFF] UNDERSTAND THAT THE MASTER STUDENT LOAN PROMISSORY NOTE GOVERNING MY LOAN CONTAINS AN ARBITRATION PROVISION UNDER WHICH CERTAIN DISPUTES (AS DESCRIBED IN THE ARBITRATION PROVISION) BETWEEN ME AND YOU AND/OR CERTAIN OTHER PARTIES WILL BE RESOLVED BY BINDING ARBITRATION, IF ELECTED BY ME OR YOU OR CERTAIN OTHER PARTIES.  IF A DISPUTE IS ARBITRATED, THE PARTIES WILL NOT HAVE THE OPPORTUNITY TO HAVE A JUDGE OR JURY RESOLVE IT AND OTHER RIGHTS MAY BE SUBSTANTIALLY LIMITED.**

14

15

16

17

18  Baldwin Exs. A & B at 5 (emphasis in the original).

19      Kilgore, Fuller, and Wilhelmy filed suit against the Defendants in Alameda County

20  Superior Court on May 12, 2008.  Defendants removed this matter to federal court on June

21  13, 2008 on the basis of diversity jurisdiction.  Kilgore and Fuller seek to represent a

22  proposed class of

23  Only California residents who 1) enrolled in SSH, 2) either borrowed their SSH tuition from KeyBank or co-signed on behalf of such a borrower, 3) executed a "Master Student Loan Promissory Note" (or similarly titled agreement) that failed to contain the "Holder Rule Notice" required by 16 C.F.R. § 433.2, 4) failed to complete their SSH educational program prior to SSH filing bankruptcy, and 5) remain obligated to KeyBank on their Note in a principal amount (i.e., exclusive of interest and costs) less than $75,000.

24

25

26

27  SAC ¶ 25.

28

4

1    In their Second Amended Complaint, Plaintiffs bring causes of action for violation of

2 the California Unfair Competition Law ("UCL"), for aiding and abetting fraud, and for

3 violation of RICO. As remedy, they seek only injunctive relief prohibiting Defendants from

4 contacting credit agencies regarding their promissory notes and prohibiting Defendants from

5 taking action to enforce the notes. In the instant motion, Defendants Keybank and Great

6 Lakes Educational Loan Services ask the Court to compel arbitration under the arbitration

7 clause of the promissory notes. Also pending before the Court is Defendants' Keybank and

8 Great Lakes Motion to Dismiss, which was held in abeyance by agreement of the parties

9 until resolution of the instant motion. On July 2, 2009, defendants additionally filed a

10 Motion to Strike Plaintiffs' Declaration of July 1, 2009.

11

12 **LEGAL STANDARD**

13    The Federal Arbitration Act ("FAA") provides that "[a] written provision in any . . .

14 contract evidencing a transaction involving commerce to settle by arbitration a controversy

15 thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save

16 upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.

17 § 2. The Supreme Court has held that the FAA is indicative of the "liberal federal policy

18 favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460

19 U.S. 1, 24 (1983) (superceded by statute on other grounds). The FAA "leaves no place for

20 the exercise of discretion by a district court, but instead mandates that district courts *shall*

21 direct the parties to proceed to arbitration on issues as to which an arbitration agreement has

22 been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in the

23 original). "The court's role under the Act is therefore limited to determining (1) whether a

24 valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the

25 dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir.

26 2000). In determining whether an arbitration agreement is valid, the Court may enlist

27 "generally applicable contract defenses, such as fraud, duress, or unconscionability . . .

28 without contravening § 2 [of the FAA]." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681,

United States District Court

For the Northern District of California

5

1  687 (1996). "[T]he party resisting arbitration bears the burden of proving that the claims at

2  issue are unsuitable for arbitration." *Hoffman v. Citibank, (South Dakota), N.A.*, 546 F.3d

3  1078, 1082 (9th Cir. 2008).

4

5  **ANALYSIS**

6       As Plaintiffs concede that "the Arbitration Provision encompasses Plaintiffs' claims,"

7  the central questions before the Court under the *Chiron* standard are whether the arbitration

8  agreement is valid, and which state's laws to apply in assessing its validity. Pls.' Opp. at 6.

9  A federal court sitting in diversity, as in this situation, "look[s] to the law of the forum state

10 when making choice of law determinations." *Hoffman*, 546 F.3d at 1082. The parties agree

11 that California choice-of-law rules apply in this matter. Pls.' Opp. at 6; Defs.' Reply at 4.

12 Under *Hoffman*,

13       When an agreement contains a choice of law provision, California courts apply
         the parties' choice of law unless the analytical approach articulated in § 187(2)
14       of the Restatement (Second) of Conflict of Laws ("§ 187(2)") dictates a
         different result. The California Supreme Court has held that under California's
15       choice of law analysis, a court must determine as a threshold matter "whether
         the chosen state has a substantial relationship to the parties or their transaction,
16       or . . . whether there is any other reasonable basis for the parties' choice of
         law." *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459 (1992). If either
17       of these tests is satisfied, the second inquiry is whether the "chosen state's law
         is contrary to a *fundamental* policy of California." *Id.* If such a conflict with
18       California law is found, "the court must then determine whether California has
         a materially greater interest than the chosen state in the determination of the
19       particular issue." *Id.* (internal quotations marks omitted).

20 *Hoffman*, 546 F.3d at 1082 (internal citations omitted).

21       Both parties here agree that the first of the threshold matters in *Hoffman* is satisfied,

22 because as KeyBank is domiciled in Ohio, Ohio has the "substantial relationship" that would

23 serve as a reasonable basis for this choice of law. *See* Pls.' Opp. at 6 (conceding this point);

24 Defs.' Reply at 5 (agreeing with Plaintiffs). The residual legal questions remaining under

25 *Hoffman* are whether Ohio's "law is contrary to a fundamental policy of California," and if

26 so, "whether California has a materially greater interest than the chosen state in the

27 determination of the particular issue." *Hoffman*, 546 F.3d at 1082. If the Court answers both

28 of these questions affirmatively as to any of the four challenges that Plaintiffs bring, then the

United States District Court

For the Northern District of California

1   Court must apply California law to determine whether the arbitration clause is enforceable.

2   If the Court answers these questions in the negative as to all four asserted bases of conflict

3   between Ohio law and the fundamental policy of California, then Ohio law shall determine

4   the validity and enforceability of the arbitration clause.

5   Choice of Law

6           Plaintiffs assert that California has a series of fundamental public policies to which

7   Ohio's law is contrary, claiming 1) that Ohio law "directly evades the UCL as it concerns

8   consumer lawsuits against financial institutions,"  Pls.' Opp. at 6; 2) that California has a

9   fundamental policy barring arbitration of consumer claims for injunctive relief, which Ohio

10  permits, *id.* at 8-9; 3) that California has a fundamental policy prohibiting class action

11  waivers in consumer adhesion contracts, *id.* at 9-10; and 4) that California's fundamental

12  policy requires reciprocity in recovery of attorneys' fees, which Ohio law does not require,

13  *id.* at 11-12.  Defendants argue that Plaintiffs have misapprehended the legal question, as the

14  only issue is whether the arbitration clause is contrary to California's fundamental public

15  policy, which they claim it is not.  The Court will consider each of Plaintiffs' arguments in

16  turn.

17          Plaintiffs first claim that the Ohio Consumer Sales Practices Act ("CSPA") is contrary

18  to California's fundamental public policy because it exempts banks from suit for fraudulent

19  and deceptive conduct.  *See* O.R.C. § 1345.01(A).  Defendants counter this claim by

20  observing that suits permitted against banks by the UCL may be preempted by the National

21  Banking Act and its regulations, and so such suits are preempted both in Ohio and California.

22  Yet Defendants provide no authority controlling on this Court regarding this claim, and fail

23  to argue even the authority that they cursorily cite.  For example, Defendants offer *Martinez*

24  *v. Wells Fargo Bank, N.A.*, No. C-06-0327, 2007 U.S. Dist. LEXIS 58758, at \*16 (N.D. Cal.

25  July 31, 2007), but do not explain how the instant situation is implicated under that court's

26  holding that "where state law would significantly impair the exercise of authority,

27  enumerated or incidental under the NBA, the State's regulations must give way."  Under

28  such precedent, it is apparent that the issue of preemption by federal law is not automatic, yet

7

1   Defendants fail to argue how the UCL is a state law that significantly impairs the authority of

2   the NBA such that the preemption doctrine applies here.

3          However, Plaintiffs similarly offer no authority for the proposition that the UCL is a

4   fundamental policy of California.  In both of the main cases that Plaintiffs cite, *Nagrampa v.*

5   *MailCoups, Inc.,* 469 F.3d 1257, 1285-87 (9th Cir. 2006) and *Ting v. AT&T,* 319 F.3d 1126,

6   1152 (9th Cir. 2003), while the Ninth Circuit indicated a policy preference regarding

7   consumers' ability to vindicate their rights, neither case holds there to be a fundamental

8   policy in favor of UCL suits against banks.  Although Judge Alsup has considered

9   unwaivable statutory rights in the context of arbitration, his holding did not reach the issue of

10  whether the UCL itself represents a fundamental policy, and only appears to stand for the

11  proposition that a fee-splitting provision of an arbitration clause may impede a consumer's

12  efforts to vindicate statutory rights under the UCL.  *See AT&T Mobility II v. Pestano*, No. C-

13  07-5463, 2008 U.S. Dist. LEXIS 23135, at \*16-17 (N.D. Cal. Mar. 7, 2008).  The passage of

14  the California Court of Appeal case on which Judge Alsup relied likewise focused solely on

15  fee-shifting arrangements, and did not offer a general proposition about the UCL as a

16  fundamental California policy.  *Independent Ass'n of Mailbox Center Owners, Inc. v.*

17  *Superior Court*, 133 Cal. App. 4th 396, 416 (2005).  Without more, there is inadequate

18  authority for the Court to find that the UCL is a fundamental policy of California, even if the

19  UCL and Ohio law differ.  It thus does not matter whether California has a materially greater

20  interest than Ohio in the determination of this issue.

21         The next question is whether the arbitration clause's mandatory arbitration of the

22  Plaintiffs' injunctive relief claims, if permitted by Ohio, is in conflict with a fundamental

23  policy of California.  Plaintiffs assert that claims for injunctive relief under California's

24  consumer protection statutes are not arbitrable.  Defendants argue that the arbitration clause

25  itself is not contrary to a fundamental policy of California law, but offer no authority for the

26  proposition that injunctive relief claims are arbitrable under California law.  Although there

27  is some authority indicating that such a restriction on arbitration applies only to public

28  injunctive relief requests, *see, e.g.*, *Cruz v. PacifiCare Health Systems, Inc.*, 30 Cal. 4th 303,

316 (2003) (stating that the rule applies to public injunctive relief claims, but not expressly limiting it to this context), the Ninth Circuit's interpretation of this matter appears less ambiguous.  In a lengthy discussion of the inarbitrability of public injunctive relief claims, the Ninth Circuit described California law on the matter by stating that "[i]nitially, California law provides that certain 'public injunctions' are incompatible with arbitration (and that such a holding is consistent with the FAA).  Actions seeking such injunctions cannot be subject to arbitration even under a valid arbitration clause." *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1080 (9th Cir. 2007).  Judge Jeffrey White has expressly extended this rule to the individual context under the UCL.  *See Ramirez v. Cintas Corp.*, No. C-04-281, 2005 U.S. Dist. LEXIS 43531, at *13-14 (N.D. Cal. Nov. 2, 2005).  The Court will adopt Judge White's extension and hold that California law bars arbitration of injunctive relief claims brought under the UCL.

Ohio law on this issue is not especially well-developed.  In 2004, the Ohio Court of Appeals observed that the Ohio Consumer Sales Practices Act ("CSPA") does not preclude arbitration clauses in sales contracts.  *Eagle v. Fred Martin Motor Co.*, 157 Ohio App. 3d 150, 162 (Ohio Ct. App. 2004).  Since that time, in staying all aspects of a consumer class action against a check cashing service pending arbitration, including a claim for injunctive relief under CSPA, another Ohio Court of Appeals held that a consumer class action claim for injunctive relief under CSPA was subject to arbitration in Ohio.  *Hawkins v. O'Brien*, No. 22490, 2009 Ohio App. LEXIS 73, at *17 (Ohio Ct. App. Jan. 9, 2009).  *Hawkins*, when compared with *Ramirez*, indicates that there is a conflict between California and Ohio law on the arbitrability of injunctive relief claims.

Judge White's holding in *Ramirez* lends this Court guidance on how to apply these cases.  In reliance on *Eagle* and *Cruz*, Judge White held that although *Eagle* makes no express statement of what kinds of injunctive claims are arbitrable, there was enough of an indication of conflict between California and Ohio laws on the arbitrability of claims for injunctive relief to conclude that "California has a materially greater interest in seeing its law applied" because of the Plaintiff's residency and employment in California.  *See Ramirez*,

United States District Court
For the Northern District of California

1   2005 U.S. Dist. LEXIS 43531, at *14.  The *Ramirez* court then applied California law on the

2   issue, and found that the plaintiff's claim for injunctive relief under the UCL was not subject

3   to arbitration.  In light of *Hawkins*, which provides even clearer indication that Ohio permits

4   arbitration of consumer injunctive remedies than *Eagle*, and *Cruz*, which found a

5   fundamental policy of California to bar arbitration of injunctive claims on weaker indication

6   of a conflict, the Court finds that a clear conflict exists such that Ohio's law is contrary to a

7   fundamental policy of California.

8       After so finding, the next step is to "determine whether California has a materially

9   greater interest than the chosen state in the determination of the particular issue." *Hoffman*,

10  546 F.3d at 1082.  The relative weight of material interest in the determination of an issue

11  requires the court to weigh a number of factors, including where the contract was made, the

12  state where a party to the contract is domiciled, where the events that are the subject of the

13  case transpired, the origin of the laws that plaintiffs seek to invoke, the public policy

14  expressed by those laws, the number of contacts a state has with the subject matter of a case,

15  and the nature of the state's interest in the case.  *See Klussman v. Cross Country Bank*, 134

16  Cal. App. 4th 1283, 1299 (2005); *see also Brack v. Omni Loan Co., Ltd.*, 164 Cal. App. 4th

17  1312, 1329 (2008) (holding that California's interest in a matter exceeded that of Nevada,

18  after considering "which state, in the circumstances presented, will suffer greater impairment

19  of its policies if the other state's law is applied," and weighing that application of Nevada

20  law would deprive California residents "of the substantive and regulatory protection

21  California affords all of its other consumers" against Nevada's "more general interest in

22  enforcing the provisions of contracts made by one of its citizens").

23      The Ninth Circuit has recently observed that California's interest in a matter was

24  materially greater than that of the chosen state when a plaintiff sought "to represent a class

25  composed solely of California residents and invoke[d] solely California consumer protection

26  laws." *Oestreicher v. Alienware Corp.*, Nos. 07-16531, 08-16290, 2009 U.S. App. LEXIS

27  7259, at *4 (9th Cir. Apr. 2, 2009).  The court contrasted this interest of California with that

28

United States District Court

For the Northern District of California

1    of the other state, which was "limited to enforcement of contractual provisions made by one

2    of its corporate citizens." *Id.* at *5.

3        Here, there is no dispute that the contract, by its own terms, was formed in Ohio and

4    elected Ohio law.  However, Plaintiffs were present in California at the time of formation.

5    Plaintiffs are California residents, and seek to represent a class of California residents.

6    Although Plaintiffs invoke both state and federal law, California's public policy in support of

7    the assertion of consumer rights is crystallized in the UCL, which is central to Plaintiffs'

8    claims.  Ohio's interest appears to be limited to general matters of corporate interest and

9    enforcement of the provisions of contracts made by one of its corporate citizens.  The

10   interests in the current case mirror those considered by the Ninth Circuit in *Oestreicher* and

11   by the California Court of Appeal in *Klussman* and *Brack.*  On this basis, the Court finds that

12   California's interest is materially greater than that of Ohio, and shall apply California law to

13   the determination of whether the arbitration clause is valid.

14       Having reached this conclusion, the next step under *Hoffman* asks the Court to

15   consider the validity of the arbitration clause under California law.  However, Plaintiffs raise

16   two additional bases of conflict between the laws of California and Ohio, asserting that the

17   states differ in their approach to class action waivers and reciprocity of recovery of attorneys'

18   fees, with Ohio's law being contrary to a fundamental policy of California in both cases.  As

19   to the first of these claims, which the parties dispute, it is worth noting, without resolving,

20   that "California does not have a fundamental policy against all class action waivers" but

21   instead "has a fundamental policy against exculpatory class action waivers in consumer

22   contracts of adhesion, because they are unconscionable." *Guadagno v. E\*Trade Bank*, 592

23   F. Supp. 2d 1263, 1269-70 (C.D. Cal. 2008) (citing *Discover Bank v. Superior Court*, 36 Cal.

24   4th 148 (2005)).  Declining to reach the issue of unconscionability altogether, the Court need

25   not reach this issue either.

26       As to the issue of the reciprocity of attorneys' fees, Plaintiffs contend that this too is a

27   locus of conflict between the laws of California and Ohio; Defendants' sole reference to the

28   issue of attorneys' fees focuses on whether the class action waiver clause is unconscionable,

United States District Court

For the Northern District of California

1  not whether there is a conflict between Ohio and California law on the issue of how

2  attorneys' fees are allocated.  As such, it appears that Defendants have conceded this point,

3  but the Court need not reach this issue to decide this motion.

4  Application of California Law

5          Having concluded under the approach articulated in *Hoffman* that California's choice-

6  of-law rules dictate the application of California law, the next step in the Court's analysis is

7  to enlist California law to determine the validity and enforceability of the arbitration clause.

8  In light of the Court's conclusion in its choice-of-law analysis that California law precludes

9  arbitration of claims for injunctive relief, *supra*, this resolution likewise militates a finding

10  that the arbitration clause is unenforceable as a matter of California law.  *See Davis*, 485 F.3d

11  at 1080; *Cruz*, 30 Cal. 4th at 316; *Ramirez*, 2005 U.S. Dist. LEXIS 43531, at \*13-14.

12  Although there may be some authority for distinguishing between the arbitrability of

13  individual injunctive remedy claims and requests that are "for the benefit of consumers and

14  the general public," *Cruz*, 30 Cal. 4th at 316, the Court will apply the bar on arbitration of

15  injunctive relief claims more broadly.  Such a step is consistent with *Ramirez*, in which

16  another judge of this Court extended the rule to an individual.  2005 U.S. Dist. LEXIS 43531,

17  at \*13-14.

18          Additionally, Defendants have failed to contest Plaintiffs' claim that California law

19  prevents the arbitration of injunctive claims, and conceded as much at the hearing on this

20  motion.  Although Defendants assert that Plaintiffs' characterization of their claims as

21  injunctive is pretextual, *see* Defs.' Reply at 2, and that this is merely "an effort at artful

22  pleading to get around well-established authority which compels arbitration in this situation,"

23  *id.* at 3, Defendants offer no legal authority for such propositions.  Furthermore, they have

24  neglected, both in writing and at the hearing on this matter, to even counter the authority that

25  Plaintiffs offer as demonstration of a California bar on arbitration of injunctive relief claims.

26  In light of Defendants' concession and the weight of legal authority, the Court holds that the

27  arbitration clause is invalid in this matter, as Plaintiffs plead only injunctive relief claims,

28

12

which are not arbitrable as a matter of California law.  As such, the Court shall not compel Plaintiffs to arbitrate their claims.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion to Compel Arbitration is DENIED. As stated at the hearing on July 6, 2009, Defendants' July 2, 2009 Motion to Strike the August Declaration of July 1, 2009 is GRANTED, as the declaration is improper according to Local Rule 7-3(d).  As to the Motion to Dismiss currently pending in this matter, counsel shall meet and confer, and file with the Court a proposed stipulated briefing schedule and hearing date.

**IT IS SO ORDERED.**

Dated:   July 8, 2009

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT

13