1  TODD C. TORAL, State Bar No. 197706
   ttoral@nixonpeabody.com
2  STEPHANIE KARNAVAS, State Bar No. 255596
   skarnavas@nixonpeabody.com
3  NIXON PEABODY LLP
   One Embarcadero Center, 18th Floor
4  San Francisco, California 94111-3600
   Telephone: (415) 984-8200
5  Fax:  (415) 984-8300

6  W. SCOTT O'CONNELL (*pro hac vice*)
   soconnell@nixonpeabody.com
7  COURTNEY Q. BROOKS, State Bar No. 215127
   cbrooks@nixonpeabody.com
8  NIXON PEABODY LLP
   900 Elm Street
9  Manchester, NH 04101-2031
   Telephone: (603) 628-4000
10 Fax: (603) 628-4040

11 Attorneys for Defendants
   KEYBANK, NATIONAL ASSOCIATION and
12 GREAT LAKES EDUCATIONAL LOAN SERVICES, INC.

13                       UNITED STATES DISTRICT COURT

14                       NORTHERN DISTRICT OF CALIFORNIA

15

16 MATTHEW C. KILGORE, individually and on          Case No. C08-02958 TEH ADR
   behalf of all others similarly situated; WILLIAM
17 BRUCE FULLER, individually and on behalf of
   all others similarly situated,

18                                                   **KEYBANK, NATIONAL ASSOCIATION'S**
                            Plaintiffs,             **AND GREAT LAKES EDUCATIONAL**
19                                                   **LOAN SERVICES, INC.'S NOTICE OF**
          vs.                                        **MOTION AND MOTION TO DISMISS**
20                                                   **PLAINTIFFS' THIRD AMENDED**
   KEYBANK, NATIONAL ASSOCIATION, a                  **COMPLAINT; MEMORANDUM OF**
21 national banking association organized under the   **POINTS AND AUTHORITIES IN SUPPORT**
   laws of the United States of America and          **THEREOF**
22 successor in interest to KEYBANK USA, N.A.;
   KEY EDUCATION RESOURCES, a division of    Date:            March 1, 2010
23 KEYBANK, NATIONAL ASSOCIATION;           Time:            10:00 a.m.
   GREAT LAKES EDUCATIONAL LOAN               Courtroom:      Ctrm 12, 19th Floor
24 SERVICES, INC., a Wisconsin corporation; and   Judge:      The Hon. Thelton E. Henderson
   DOES 1-25,
25                                                   [Declarations of Shawn Baldwin and
                            Defendants.             Courtney Q. Brooks filed and [Proposed] Order
26                                                   Lodged Concurrently]

27

28

1

## NOTICE OF MOTION AND MOTION

2      TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3      PLEASE TAKE NOTICE THAT that on March 1, 2010 at 10:00 a.m., or as soon thereafter as

4   this matter may be heard by Judge Henderson in Courtroom 12 of the above-entitled Court, located at

5   450 Golden Gate Avenue, 19th Floor, San Francisco, California 94102, Defendants KeyBank,

6   National Association, its division Key Education Resources (collectively "KeyBank"),  and Great

7   Lakes Educational Loan Services, Inc. ("Great Lakes") will, and hereby do, move the Court for an

8   Order dismissing all claims against them pursuant to Rule 12(b)(3) and 12(b)(6) of the Federal Rules

9   of Civil Procedure.

10      This Motion is based on the following grounds:

11
12
- The contracts Plaintiffs signed require that any action be filed in Ohio rendering this venue improper;

13
- Plaintiffs fail to state claims on which relief can be granted because the Plaintiffs' contracts require the application of Ohio rather than California law;

14
15
- Plaintiffs' Cal. Bus. & Prof. Code § 17200 claim is preempted by the National Banking Act and regulations enacted thereunder;

16
- Plaintiffs fail to state a claim for the failure to include the so-called "FTC Holder Rule" language in the contracts at issue;

17
18
- Plaintiffs fail to state a claim for aiding and abetting under Cal. Bus. & Prof Code §17200; and

19
- Plaintiffs fail to state claim for fraud under Cal. Bus. & Prof Code §17200.

20      This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and

21   Authorities filed herewith, the Declarations of Shawn Baldwin and Courtney Q. Brooks, the

22   pleadings and papers on file in this action, and upon such other matters and argument as may be

23   presented to the Court at the time of hearing.

24   ///

25   ///

26   ///

27   ///

28   ///

ALTERNATIVE MOTION TO DISMISS PLAINTIFFS'         -1-                                    12831479.3
AMENDED COMPLAINT; CASE NO. C08-02958 TEH ADR

DATED:  January 11, 2010

Respectfully submitted,

NIXON PEABODY LLP


/s/ Stephanie Karnavas

By: _____

W. SCOTT O'CONNELL
TODD C. TORAL
STEPHANIE KARNAVAS
Attorneys for Defendants
KEYBANK, NATIONAL ASSOCIATION
and GREAT LAKES EDUCATIONAL
LOAN SERVICES, INC.

# TABLE OF CONTENTS

Page

I.      SUMMARY OF ARGUMENT AND ISSUES TO BE DECIDED ......................................... 1

II.     SUMMARY OF RELEVANT FACTUAL ALLEGATIONS.................................................. 2

III.    ARGUMENT ...................................................................................................................... 3

     A.     Standard Of Review ................................................................................................ 3

     B.     A Valid and Enforceable Forum Selection Clause Contained in the
           Promissory Notes Requires This Action to be Filed in Ohio.......................................... 4

     C.     Plaintiffs' Causes of Action And Class Action Allegations Each Arise
           Under California Law And Therefore Fail to State a Claim as Ohio Law
           Not California Law is Applicable to This Action ...................................................... 7

     D.     All Causes of Action Against Great Lakes Must Be Dismissed For Failure
           to State a Claim ...................................................................................................... 8

     E.     Plaintiff's Causes of Action Under Section 17200 Fail to State a Claim
           Because the FTC Holder Notice Does Not Apply to Lenders Such As
           KeyBank, Does Not Create a Remedy Against KeyBank, and Does Not
           Provide a Private Cause of Action .......................................................................... 8

          1.     The FTC Holder Notice is Inapplicable to KeyBank as a Lender .................... 9

          2.     Plaintiffs Improperly Seek to  Impose Contractual Terms on
                KeyBank Not Contained in the Promissory Notes........................................... 10

          3.     Failure to Include The FTC Holder Notice in The Promissory Note
                Does Not Give Rise to a Private Cause of Action ........................................... 11

          4.     Plaintiffs' Efforts to Manufacture a Private Right of Action For
                Failure to Include The FTC Holder Notice Under Section 17200
                Fails to State a Claim For Which Relief Can be Granted ................................ 11

     F.     Plaintiffs' Section 17200 Claim Which Purports to Rewrite the Terms of
           the Promissory Note Is Preempted By the National Bank Act and
           Regulations Enacted Thereunder ........................................................................... 12

          1.     The NBA Has a Long History of Preempting Conflicting State
                Laws ............................................................................................................. 13

          2.     The OCC's Regulations Further Support Preemption of State Laws
                That Could Interfere With the Performance of National Banks'
                Functions Under the NBA.............................................................................. 15

          3.     Plaintiffs' Efforts to Modify The Promissory Notes and Hold
                KeyBank Liable for the Deficiencies of SSH Are Preempted ........................ 16

     G.     Plaintiffs Fail to State a Claim For Violations of Section 17200 Based on
           Aiding and Abetting................................................................................................ 19

H.   Plaintiffs' Claims Are Barred By the Economic Loss Doctrine ................................... 19

I.   Plaintiffs Fail to State a Claim for Fraud Or to Plead Fraud Under the UCL With the Particularity Required by Rule 9(b) .............................................................. 21

IV.   CONCLUSION ........................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Abel v. KeyBank USA, N.A.*,
 No. 1:03 cv 524, 2003 U.S. Dist. LEXIS 27175 (N.D. Ohio Sept. 24, 2003) ............... 6, 9, 10

*Abel v. KeyBank USA, N.A.*,
 313 F. Supp. 2d 720 (N.D. Ohio 2004) ........................................................................... 16, 18

*In re Apple & AT&TM Antitrust Litig.*,
 596 F. Supp. 2d 1288 (N.D. Cal. 2008) ................................................................................ 22

*Argueta v. Banco Mexicano, S.A.*,
 87 F.3d 320 (9th Cir. 1996) ............................................................................................... 3, 4

*Armstrong v. Accrediting Council for Continuing Educ. & Training, Inc.*,
 832 F. Supp. 419 (D. D.C. 1993) ......................................................................................... 10

*Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters*,
 459 U.S. 519 (1983) ............................................................................................................... 4

*Augustine v. FIA Card Servs., N.A.*,
 485 F. Supp. 2d 1172 (E.D. Cal. 2007) ............................................................................ 6, 18

*Bank of Am. v. City & County of San Francisco*,
 309 F.3d 551 (9th Cir. 2002) ............................................................................................... 14

*Barnett Bank, N.A. v. Nelson*,
 517 U.S. 25 (1996) ............................................................................................................... 13

*Batchelder v. Kawamoto*,
 147 F.3d 915 (9th Cir. 1998) ................................................................................................. 7

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ............................................................................................................... 4

*Beneficial Nat'l Bank v. Anderson*,
 539 U.S. 1 (2003) ................................................................................................................. 14

*Blanco v. KeyBank USA, N.A.*,
 Case No. 1:04cv230-KMO, Opinion and Order at pp. 18-20 (N.D. Ohio, June 30, 2008) ........
 ......................................................................................................................................... 7, 18

*Branch v. Tunnell*,
 14 F.3d 449 (9th Cir. 1994) .................................................................................................... 2

*Brockington v. J.P. Morgan Chase Bank, N.A.,*
   No. C-08-05795 RMW, 2009 U.S. Dist. LEXIS 56622 (N. D. Cal. 2009) ........................... 21

*Carnival Cruise Lines, Inc. v. Shute,*
   499 U.S. 585 (1991) ............................................................................................................... 7

*Chiarella v. United States,*
   445 U.S. 222 (1980) ............................................................................................................. 21

*In re Crisomia,*
   No. 0035085, 2001 Bankr. LEXIS 1469 (E.D. Pa. Aug. 21, 2001) ................................... 9, 11

*Cuomo v. The Clearing House Ass'n, L.L.C.,*
   129 S.Ct. 2710 (Jun. 29, 2009) ....................................................................................... 12, 15

*Davis v. Elmira Sav. Bank,*
   161 U.S. 275 (1896) ............................................................................................................. 14

*Docksider, Ltd. v. Sea Tech., Ltd.,*
   875 F.2d 762 (9th Cir. 1989) ................................................................................................. 5

*Ellis v. Pennsylvania Higher Educ. Assistance Agency,*
   Case No. CV-07-04498 DDP (C.D. Cal. November 9, 2007) ..................................... 6, 17, 18

*Equal Opportunity Comm'n v. Waffle House, Inc,*
   534 U.S. 279 (2002) ............................................................................................................... 3

*Fid. Fed. Sav. & Loan Ass'n v. De la Cuesta,*
   458 U.S. 141 (1982) ......................................................................................................... 13, 15

*Fireman's Fund Ins. Co. v. M.V. DSR Atl.,*
   131 F.3d 1336 (9th Cir. 1997) ............................................................................................... 6

*Franklin Nat'l Bank v. New York,*
   347 U.S. 373 (1954) ............................................................................................................. 18

*Gauvin v. Trombatore,*
   682 F. Supp. 1067 (N.D. Cal. 1988) ..................................................................................... 8

*General Elec. v. G. Siempelkamp Gmbh,*
   29 F.3d 1095 (6th Cir. 1994) ................................................................................................. 5

*Graham Tech. Solutions, Inc. v. Thinking Pictures, Inc.,*
   949 F. Supp. 1427 (N.D. Cal. 1997) ..................................................................................... 7

*Guerrero v. Gates,*
   442 F.3d 697 (9th Cir. 2006) ................................................................................................. 4

*Hanlin v. Ohio Builders and Remodelers, Inc.,*
   196 F. Supp. 2d 572 (S.D. Ohio 2001) ............................................................................... 10

MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED
COMPLAINT; CASE NO. C08-02958 TEH ADR
   -ii-
   12831479.3

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.,*
   485 F.3d 450 (9th Cir. 2007)............................................................................. 5

*Hovsepian v. Apple, Inc.,*
   Nos. 08-5788 JF (PVT), 09-1064 JF (PVT), 2009 U.S. Dist. LEXIS 80868 (N.D. Cal. Aug. 21, 2009) ...................................................................................... 22

*Inter-Mark USA, Inc. v. Intuit, Inc.,*
   No. C-07-04178 JCS, 2008 U.S. Dist. LEXIS 18834 (N.D. Cal. Feb. 27, 2008)................... 20

*Interpetrol Bermuda, Ltd. v. Kaiser Aluminum Int'l Corp.,*
   719 F.2d 992 (9th Cir. 1983)............................................................................. 23

*In re Jamster Mktg Litig.,*
   No. 05cv0819 JM (CAB), 2009 U.S. Dist. LEXIS 7629 (S.D. Cal. 2009)............................ 19

*Jefferson v. Chase Home Fin.,*
   No. C-06-6510 TEH, 2008 U.S. Dist. LEXIS 101031 (N.D. Cal. Apr. 29, 2008) ................ 19

*Lozano v. AT&T Wireless Servs.,*
   2007 US App. LEXIS 22430 (9th Cir. 2007)....................................................... 15

*M/S Bremen v. Zapata Off-Shore Co.,*
   407 U.S. 1 (1972)................................................................................... 5, 6, 8

*Manetti-Farrow, Inc. v. Gucci Am., Inc.,*
   858 F.2d 509 (9th Cir. 1988)............................................................................. 5

*Marques v. MortgageIT, Inc.,*
   No. SACV 09-1154 AG (MLGx) 2009 U.S. Dist. LEXIS 117037, *17 (C.D. Cal. Dec. 14, 2009) ....................................................................................................... 22

*Martinez v. Wells Fargo Bank, N.A.,*
   No. C-06-0327 RMW, 2007 U.S. Dist. LEXIS 58758 (N.D. Cal. July 31, 2007)........ 6, 17, 18

*McKinney et al. v. KeyBank USA, N.A.,*
   5:06-CV-01335-SGL-JCR (C.D. Cal. Feb. 21, 2007) ......................................... 4, 6

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
   473 U.S. 614 (1985)...................................................................................... 8

*Morales v. Walker Motor Sales, Inc.,*
   162 F. Supp. 2d 786 (S.D. Ohio 2000)............................................................... 11

*Murphy v. Schneider Nat'l, Inc.,*
   362 F.3d 1133 (9th Cir. 2003)........................................................................... 5

*Nat'l Bank v. Dearing,*
   91 U.S. 29 (1875)..................................................................................... 14

*Nat'l Rural Telcoms. Coop. v. DIRECTV, Inc.*,
  319 F. Supp. 2d 1059 (C.D. Cal. 2003)................................................................. 20

*Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*,
  741 F.2d 273 (9th Cir. 1984)........................................................................... 5, 7, 8

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
  494 F.3d 788 (9th Cir. 2007)................................................................................. 19

*Pratt v. Silversea Cruises, Ltd.*,
  No. C-05-0693 SI, 2005 U.S. Dist. LEXIS 14339 (N.D. Cal. 2005)....................... 6

*Rejects Skate Magazine, Inc. v. Acutrack, Inc.*,
  No. C 06-2590 CW, 2006 U.S. Dist. LEXIS 63157 (N.D. Cal. Aug. 22, 2006) ....... 21

*Rose v. Chase Manhattan Bank USA, N.A.*,
  396 F. Supp. 2d 1116 (C.D. Cal. 2005).............................................................. 6, 18

*In re Sagent Tech., Inc.*,
  278 F. Supp. 2d 1079 (N.D. Cal. 2003) .................................................................. 8

*In re Silicon Graphics Inc. Sec. Litig.*,
  183 F.3d 970 (9th Cir. 1999).................................................................................... 2

*Silva v. Encyclopedia Britannica Inc.*,
  239 F.3d 385 (1st Cir. 2001) .................................................................................... 5

*Spradlin v. Lear Siegler Mgmt. Servs. Co.*,
  926 F.2d 865 (9th Cir. 1991).................................................................................... 7

*Stickrath v. Globalstar, Inc.*,
  527 F. Supp. 2d 992 (N.D. Cal. 2007) .................................................... 21, 22, 23

*Talatala v. Nippon Yusen Kaisha Corp.*,
  974 F. Supp. 1321 (D. Haw. 1997) ........................................................................ 6

*Vietnam Veterans of Am. v. Guerdon Indus., Inc.*,
  644 F. Supp. 951 (D. Del. 1986) ..................................................................... 10, 11

*Wachovia Bank, N.A. v. Watters*,
  431 F.3d 556 (6th Cir. 2005), *aff'd Watters,* 167 L. Ed. 2d............................. 14, 15

*Watters v. Wachovia Bank, N.A.*,
  127 S. Ct. 1559, 167 L. Ed. 2d 389 (2007) .................................................... 12, 14

*Weiss v. Columbia Pictures Television, Inc.*,
  801 F. Supp. 1276 (S.D.N.Y. 1992)........................................................................ 6

*Williams v. Nat'l Sch. of Health Tech., Inc.*,
  836 F. Supp. 273 (E.D. Pa. 1993) ........................................................................ 11

*Wynn v. Nat'l Broad. Co.*,
    234 F. Supp. 2d 1067 (C.D. Cal. 2002)................................................................ 4

**STATE CASES**

*Allied Grape Growers v. Bronco Wine Co.*,
    203 Cal. App. 3d 432 (Cal. App. 1988) .......................................................... 20

*Assilzadeh v. Cal. Fed. Bank*,
    82 Cal. App. 4th 399 (Cal. App. 2000) .......................................................... 23

*Berryman v. Merit Property Management, Inc.*,
    152 Cal. App. 4th 1544 (2007)........................................................................ 24

*Cel-Tech Commc'ns v. Los Angeles Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) ................................................................................... 12

*Daugherty v. American Honda Motor Co., Inc.*,
    144 Cal. App. 4th 824 (Cal. Ct. App. 2006) ................................................. 24

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) ................................................................................. 20

*Nibbi Bros. v. Home Fed. Sav. & Loan Ass'n*,
    205 Cal. App. 3d 1415 (Cal. App. 1988) ...................................................... 23

*Primus Auto Fin. Servs. v. Brown*,
    840 N.E.2d 254 (Ohio Ct. App. 2005) .......................................................... 11

*Robinson Helicopter Co., Inc. v. Dana Corp.*,
    34 Cal. 4th 979 (Cal. 2004)........................................................................... 20

*State of California v. Pac. Bell Tel. Co.*,
    142 Cal. App. 4th 741 (Cal. App. 3d 2006) .................................................. 15

**FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

12 C.F.R. § 7.4008(d)(2) ................................................................... 13, 15, 17

12 C.F.R. § 7.4008(d)(2)(iv), (ix) ............................................................... 17

12 C.F.R. § 7.4009(b) ................................................................................. 15

16 C.F.R. 433.2(a) ...................................................................................... 10

16 C.F.R. § 433 .......................................................................................... 20

16 C.F.R. § 433.1(j) ..................................................................................... 9

16 C.F.R. § 433.2 ....................................................................................... 11

MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED
COMPLAINT; CASE NO. C08-02958 TEH ADR
    –v–
    12831479.3

16 C.F.R. § 433.2(a) ............................................................................................ 3

16 C.F.R. § 433.2(a)-(b) ...................................................................................... 9

16 C.F.R. § 433.2(b) ............................................................................................ 3

12 U.S.C. § 21 *et seq.* .................................................................................... 6, 12

12 U.S.C. § 24 ............................................................................................... 13, 18

12 U.S.C. § 484(A) ............................................................................................ 13

15 U.S.C. § 45 .................................................................................................... 11

Fed. R. Civ. P. 8 .................................................................................................. 8

Fed. R. Civ. P. 9(b) .................................................................................... 1, 2, 21

Fed. R. Civ. P. 12(b)(3) ....................................................................................... 3

Federal Trade Commission Act, 15 U.S.C. § 40 *et seq.* ................................... 9

U.S. Const. Article VI, § 3, C1.2 ...................................................................... 13

**STATE: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

Cal. Bus. & Prof. Code § 17204 ....................................................................... 15

Cal. Bus. and Prof. Code § 17200 ...................................................................... 1

Rule 12(b)(6) ............................................................................................... 2, 4, 8

**OTHER AUTHORITIES**

Testimony of Julie L. Williams Before the Subcommittee on Oversight and Investigations of
the Committee on Financial Services of the U.S. House of Representatives (January 28,
2004) .......................................................................................................... 16

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF THEIR MOTION TO DISMISS**

## I.     SUMMARY OF ARGUMENT AND ISSUES TO BE DECIDED

Plaintiffs Matthew C. Kilgore ("Kilgore") and William Bruce Fuller ("Fuller") seek to avoid repayment of student loans each received from KeyBank to attend Silver State Helicopters ("SSH"). Plaintiffs contend they did not complete their training at SSH as a result of deficiencies with the SSH program and SSH's bankruptcy in February 2008.  The Plaintiffs, on behalf of themselves and a putative class of California borrowers (approximately 120 in total), seek to hold KeyBank, National Association ("KeyBank") liable for SSH's deficiencies by enjoining KeyBank and Great Lakes Educational Loan Services, Inc. ("Great Lakes") from collecting the outstanding student loans the California borrowers used to obtain flight training at SSH.  The student loans at issue, however, were made pursuant to a Master Student Loan Promissory Note ("Promissory Note") which requires that any suit be venued in Ohio and controlled by Ohio law.  Plaintiffs' action should be dismissed because it is brought in the wrong forum and seeks to apply California law in contravention of the express choice of Ohio law.

The fatal infirmities with this action do not end there.  Plaintiffs seek to impose liability on KeyBank and Great Lakes under Cal. Bus. & Prof. Code Section 17200 ("Section 17200") for SSH's failures by claiming that certain language was improperly omitted from the Promissory Notes and SSH contracts.  The dispute is over whether KeyBank—a National Bank—had any legal obligation to include the so-called Federal Trade Commission Holder Notice ("FTC Holder Notice") in its Promissory Notes.  All courts which have reviewed this issue have rejected this argument.  *See infra* at §E.  There is no private cause of action for failing to include the Holder notice and only the sellers of services—not lenders—have obligations concerning the Holder Rule.  Efforts to bootstrap this failed legal contention into a Section 17200 claim are unavailing because lenders of private student loans that are not federally guaranteed simply have no obligation to accept contractual liability for the failure of schools to provide the education to the student borrowers.  Further, Plaintiffs' effort to use state law as a means to modify KeyBank's Promissory Notes is preempted National Bank Act.

Plaintiffs' claim for aiding and abetting under Section 17200 fails because it is not pleaded with the particularity required under Fed. R. Civ. P. 9(b), is barred by the economic loss doctrine, is

1    preempted to the extent that Plaintiffs seek to change the Terms of their Promissory Notes and cannot

2    be based on vicarious liability.

3         Plaintiffs' additional claim under Section 17200 for violating a declared legislative or

4    regulatory policy fails because, as a matter of law, KeyBank had no obligation to include the FTC

5    Holder Notice and thus did not violate any policy.  Plaintiffs' claim based on alleged fraudulently

6    concealed facts similarly fails to state a claim for which relief can be granted, has not been pleaded

7    with particularity and is barred by the economic loss doctrine because it arises from and is premised

8    on the contractual relationship with KeyBank.

9         For these reasons and those detailed below, KeyBank and Great Lakes request that this Court

10   dismiss this action.

11   **II.   SUMMARY OF RELEVANT FACTUAL ALLEGATIONS**

12        Kilgore and Fuller, and each member of the proposed class, borrowed money from KeyBank

13   to pay SSH tuition for helicopter flight training.   *See* Third Am. Compl. ("TAC") at ¶ 1.  All of the

14   student debts at issue arise from private loans that are not backed or guaranteed by the federal

15   government.[1]  These private student loans average approximately $51,000 per student exclusive of

16   interest. *Id.*  Each Plaintiff executed KeyBank's Master Loan Promissory Notes.  *Id.* at ¶ 13.

17   KeyBank disbursed the funds either directly to the Plaintiffs or to SSH as provided for in the

18   Promissory Notes.  Separately, the Plaintiffs executed Student Service Contracts with SSH for the

19   provision of flight training.  KeyBank was not a party to these Student Service Contracts.[2]

---

[1] Student loans guaranteed by the federal government under the Federal Family Education Loan
Program ("FFELP") are not at issue in this case.  The case law which has developed around such
guaranteed loans is inapposite to this case.

[2] The TAC references, but declines to attach, the Promissory Notes and Student Service Contract
Agreements.  Because the contents of the Promissory Notes and Student Service Contract
Agreements are alleged in the TAC and authenticity has not been questioned, this Court may consider
these documents in ruling under Rule 12(b)(6) without converting the motion to dismiss into a
motion for summary judgment.  *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (overruled
on other grounds, 307 F.3d 1119, 1127 (9th Cir. 2002)); *see also In re Silicon Graphics Inc. Sec.
Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (holding SEC filings "whose contents are alleged in a
complaint and whose authenticity no party questions, but which are not physically attached to the
[plaintiff's] pleading" can be incorporated by reference).  Kilgore and Fuller's Promissory Notes are
attached as Exhibits A and B to the Declaration of Shawn Baldwin ("Baldwin Decl.")  The Student

Plaintiffs contend that SSH was deficient in providing the training required under the Student Service Contracts.  The Plaintiffs further contend that SSH's alleged deficiencies constitute a basis to avoid repayment of the student loan debt to KeyBank.   Because there is no contract between the student borrowers and KeyBank which requires KeyBank to make the students whole for SSH's failures, and there is no state or federal regulation that makes KeyBank responsible for SSH's deficiencies, Plaintiffs ask this Court to manufacture legal obligations on private student loan lenders that simply do not exist.  Plaintiffs' prior efforts to fashion these obligations were premised on legally infirm counts under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and common law aiding and abetting which have now been jettisoned in the TAC.  Plaintiffs' current formulation attempts to shoe-horn the revolving and fluid legal theories into six separate violations of Section 17200:  (1) direct violation of 16 C.F.R. §433.2(a) for the alleged improper failure to include the FTC Holder Rule notice in the Promissory Notes; (2) direct violation of 16 C.F.R. §433.2(b) for allegedly improperly providing loans to SSH students; (3) aiding and abetting SSH's unlawful violation of 16 C.F.R. §433.2(a) for failing to include the FTC Holder Rule; (4) aiding and abetting SSH's unlawful violation of 16 C.F.R. §433.2(b) for accepting KeyBank's loan proceeds; (5) violating a declared public or regulatory policy; and (6) engaging in alleged fraudulent conduct.  Such claims arise from claimed legal deficiencies with the Plaintiffs' Promissory Notes and/or the Student Service Contracts.

All of these claims are now premised exclusively on California statutory law despite the parties express choice of Ohio law, are brought forward in the wrong forum,[3] and otherwise fail to state a claim upon which relief can be granted, and should be dismissed.

_____
*(Footnote Continued)*
Service Contract Agreements are attached as Exhibits A and B to the Declaration of Courtney Q. Brooks ("Brooks Decl.")

[3] The Promissory Notes expressly provide that the parties will arbitrate their disputes.  This Court declined to compel arbitration on the basis that California law has a fundamental policy against arbitrating disputes in which only injunctive relief is at issue.  KeyBank appealed that decision on the basis that the Court should have applied federal rather than California law.  *See Equal Opportunity Comm'n v. Waffle House, Inc,* 534 U.S. 279, 294-296 (2002) (FAA requires courts to enforce an agreement to arbitrate requests for injunctive relief, even if that relief is designed principally to protect the public).  Alternatively, the parties agreed that all legal actions would be brought in a court of competent jurisdiction in Cuyahoga County, Ohio where KeyBank maintains its principal place of business.  *See* Promissory Notes, attached as Exhibits A and B to the Baldwin Decl., ¶ R (5).

III.    ARGUMENT

A.      Standard Of Review

A motion to dismiss based on the enforcement of a forum selection clause is governed by Fed. R. Civ. P. 12(b)(3).  *See Argueta v. Banco Mexicano*, *S.A.*, 87 F.3d 320, 324 (9th Cir. 1996).  Unlike the obligations under Rule 12(b)(6), the pleadings are <u>not</u> accepted as true, and this Court may consider facts <u>outside of the pleadings</u>.  *Id.* at 324.

When deciding a motion to dismiss under Rule 12(b)(6), the allegations of the complaint must be taken as true and construed in a light favorable to Plaintiff.  *Guerrero v. Gates*, 442 F.3d 697, 703 (9th Cir. 2006). When viewing the allegations of the complaint, however, the court must keep in mind:  "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  The court need not accept as true conclusory allegations, legal characterizations, unreasonable inferences or unwarranted deductions of fact.  *Wynn v. Nat'l Broad. Co.*, 234 F. Supp. 2d 1067, 1091 (C.D. Cal. 2002).  Nor must the court assume that Plaintiffs can prove facts different from those it has alleged.  *Associated Gen. Contractors of California, Inc.  v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

B.      **A Valid and Enforceable Forum Selection Clause Contained in the Promissory Notes Requires This Action to be Filed in Ohio**

Each of the executed Promissory Notes contain a forum selection clause that provides:

> I understand and agree that (i) you are located in Ohio, (ii) that this Note will be entered into in Ohio and (iii) that your decision on whether to lend me money will be made in Ohio.  **CONSEQUENTLY, THE PROVISIONS OF THIS NOTE WILL BE GOVERNED BY FEDERAL LAWS AND THE LAWS OF THE STATE OF OHIO, WITHOUT REGARD TO CONFLICT OF LAWS RULES.**  I agree that any suit I bring against you (or against any subsequent holder of this Note) must be brought in a court of competent jurisdiction in the county in which you maintain your (or the county in which the subsequent holder maintains its) principal place of business.

Baldwin Decl., Exhs. A & B at ¶ R(5) (emphasis in original).  Because the Promissory Notes contain

a valid and enforceable forum selection clause, and because Ohio is a reasonable forum, the claims

against KeyBank and Great Lakes should be dismissed.[4]

The procedural issues raised by forum selection clauses in cases premised on diversity

jurisdiction are enforced and interpreted pursuant to federal law.  *Manetti-Farrow, Inc. v. Gucci Am.,*

*Inc.,* 858 F.2d 509, 513 (9th Cir. 1988).   "[A]bsent a strong showing that it should be set aside," a

contractual forum selection clause should be enforced.  *Holland Am. Line Inc. v. Wartsila N. Am.,*

*Inc.,* 485 F.3d 450, 457 (9th Cir. 2007) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15

(1972)); *see also Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 279 (9th

Cir. 1984) ("Courts addressing the issue uniformly apply *The Bremen* to cases involving domestic

forum selection questions.").  Under *The Bremen*, a forum selection clause is presumptively valid,

and "the party challenging the clause bears a '<u>heavy burden of proof</u>' and must 'clearly show that

enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as

fraud or over-reaching.'" *Murphy v. Schneider Nat'l, Inc.,*  362 F.3d 1133, 1140 (9th Cir. 2003)

(citing *Bremen,* 407 U.S. at 15) (emphasis added).  Therefore, "[a]bsent some evidence submitted by

the party opposing enforcement of the clause to establish fraud, undue influence, overweening

bargaining power, or such serious inconvenience in litigating in the selected forum so as to deprive

that party of a meaningful day in court, the provision should be respected as the expressed intent of

the parties."  *Pelleport,* 741 F.2d at 280.

Plaintiffs cannot meet their heavy burden.  Kilgore and Fuller agreed by <u>mandatory language</u>

that the venue for all actions arising out of the Promissory Note would be in Ohio.  *See*, *e.g. General*

*Elec. v. G. Siempelkamp Gmbh,* 29 F.3d 1095, 1096 (6th Cir. 1994) (holding forum-selection clause

containing language "all disputes arising in connection with the contract shall be at the principal

place of business of the supplier" was mandatory because the words "all" and "shall" signified that

---

[4] *See, e.g., McKinney et al. v. KeyBank USA, N.A.*, 5:06-CV-01335-SGL-JCR, (C.D. Cal. Feb. 21, 2007) (putative class action of student loan borrowers who attended failed flight school dismissed because "plaintiffs voluntarily agreed to a reasonable and enforceable forum selection clause contained in Promissory Notes" identifying Ohio); Brooks Decl., Exh. G.

jurisdiction in Germany was exclusive and mandatory); *Silva v. Encyclopedia Britannica Inc.*, 239 F.3d 385, 389 (1st Cir. 2001) (contract provision specifying any actions "must be brought in the State of Illinois" was mandatory).  The Ninth Circuit has held that "where venue is specified with mandatory language the clause will be enforced."  *Docksider, Ltd. v. Sea Tech., Ltd.,* 875 F.2d 762, 764 (9th Cir. 1989).

Plaintiffs cannot meet their burden that the selected forum is "so manifestly and gravely inconvenient" so as to make it unreasonable as a matter of law.  *Bremen*, 407 U.S. at 18 (it is "incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be <u>so gravely difficult and inconvenient</u> that he will for all practical purposes be deprived of his day in court") (emphasis added).[5]  To meet their heavy burden, Plaintiffs must show that it is impossible for them to try their case in Ohio, not simply that it is a less convenient or effective means of doing so.  *Pratt v. Silversea Cruises, Ltd.*, No. C-05-0693 SI, 2005 U.S. Dist. LEXIS 14339, at *11-12 (N.D. Cal. 2005).[6]  Further, claims of economic hardship do not rise to the level necessary to overcome the contractually selected forum.  *Weiss v. Columbia Pictures Television, Inc.*, 801 F. Supp. 1276, 1279 (S.D.N.Y. 1992) (holding that inconvenience or expense of traveling is not an adequate reason to disturb the forum-selection clause); *Talatala v. Nippon Yusen Kaisha Corp.*, 974 F. Supp. 1321, 1325 (D. Haw. 1997) (finding plaintiff's claim that he could not afford to litigate in the selected forum unpersuasive and enforcing the forum-selection clause).  Absent a showing that the Plaintiffs will absolutely be unable to proceed in Ohio, there is simply no basis for concluding that it would be unfair, unjust, or unreasonable to hold them to their bargain.  *Bremen*, 407 U.S. at 18.[7]

---

[5] Indeed, a sister court in the Central District looking at a prior version of the KeyBank Promissory Note with the same forum selection provision summarily rejected the claims raised by the student plaintiffs concerning the inconvenience of Ohio as a forum.  *See e.g.*, *McKinney et al.,* supra, (rejecting plaintiffs' contention that Ohio was an inconvenient forum such that the forum selection clause should be disregarded), Exh. G to Brooks Decl.

[6] *See also Fireman's Fund Ins. Co. v. M.V. DSR Atl.,* 131 F.3d 1336, 1338 (9th Cir. 1997) ("serious inconvenience" of litigating in Korea did not render clause "unreasonable").

[7] In their current complaint, plaintiffs have jettisoned even their conclusory and insufficient allegation that the putative class members would "effectively be barred from having their day in court because

1    Nor can Plaintiffs establish that the clause "contravene[s] a strong public policy of the forum

2    in which suit is brought."  *Id.* at 15.  Plaintiffs' TAC describes Ohio as "notoriously hostile to

3    borrowers."  TAC ¶ 25.  This contention ignores that ***both*** Ohio and California courts have preempted

4    state consumer protection laws under the National Bank Act ("NBA"), 12 U.S.C. § 21 *et seq.*[8]

5    Moreover, an alleged difference in law does not render a forum selection clause in violation of public

6    policy.  *See Batchelder v. Kawamoto*, 147 F.3d 915, 919 (9th Cir. 1998) ("The fact that Japanese law

7    may differ . . . from California law does not necessarily signify that application of Japanese law

8    would contravene California's public policy.").

9    Ohio is a reasonable forum selected for a valid business purpose.  KeyBank is incorporated in

10   Ohio.  Ohio is where it maintains its principal place of business, is the location of KeyBank's

11   corporate headquarters, the place where the senior executives overseeing KeyBank's nationwide

12   student loan program are located, and KeyBank's decision to lend Plaintiffs money was made in

13   Ohio.  Baldwin Decl. at ¶ G; *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 595 (1991) (in

14   deciding if forum is selected in bad faith, courts look to whether the selected forum is where the

15   defendant is incorporated, maintains its principal place of business, or performs its corporate

16   management function).  Because the venue selection clause was in large bold type face with

17   capitalization of crucial words, any contention that this provision was not reasonably communicated

18   is unavailing.  *See* Baldwin Decl., Exhs. A & B at ¶ R (5).

19   Because the Plaintiffs' relationship with, and claims concerning, KeyBank arise completely

---

(Footnote Continued)

of the time and expense of traveling to Ohio and having California resident witnesses appear in Ohio."  Second Amended Complaint ¶11(d) at p. 6,

[8] *See, e.g. Ellis v. Pennsylvania Higher Educ. Assistance Agency*, Case No. CV-07-04498 DDP, (C.D. Cal. November 9, 2007) Exh. H to Brooks Decl. at pp. 16-20; *Martinez v. Wells Fargo Bank, N.A.*, No. C-06-0327 RMW, 2007 U.S. Dist. LEXIS 58758, * 16 (N.D. Cal. July 31, 2007) (concluding plaintiff's claim for unfair and deceptive acts and practices in violation of § 17200 were preempted by the NBA and regulation thereunder); *Rose v. Chase Manhattan Bank USA, N.A.*, 396 F. Supp. 2d 1116, 1123 (C.D. Cal. 2005) (holding that the NBA and regulations promulgated thereunder preempted plaintiff's unfair competition law claim); *Augustine v. FIA Card Servs., N.A.,* 485 F. Supp. 2d 1172, 1176 (E.D. Cal. 2007) (finding plaintiff's § 17200 claim was preempted by the NBA and regulations); *Abel v. KeyBank USA, N.A.*, No. 1:03 cv 524, 2003 U.S. Dist. LEXIS 27175, *27-28 (N.D. Ohio Sept. 24, 2003) (dismissing state consumer protection claim as preempted by the NBA); *Blanco v. KeyBank USA, N.A.*, Case No. 1:04cv230-KMO, Opinion and Order at pp. 18-20 (N.D. Ohio, June 30, 2008), Exh. I to Brooks Decl.

---

1  from their respective Promissory Notes, the forum selection clause in those documents should be

2  enforced and the TAC dismissed for improper venue.[9]

3        **C.      Plaintiffs' Causes of Action And Class Action Allegations Each Arise
                Under California Law And Therefore Fail to State a Claim as Ohio Law**
4              **Not California Law is Applicable to This Action**

5        The Promissory Notes entered into between the Plaintiffs and the Defendant contain a choice-

6  of-law provision stating that " . . .**THE PROVISIONS OF THIS NOTE WILL BE GOVERNED**

7  **BY FEDERAL LAWS AND THE LAWS OF THE STATE OF OHIO, WITHOUT REGARD**

8  **TO CONFLICT OF LAWS RULES . . ."**  *See* Baldwin Decl., Exhs. A & B at ¶ R(5) (emphasis in

9  original).  The United States Supreme Court has consistently held that a choice-of-law provision

10 contained in a freely negotiated agreement will be given full effect.  *See Carnival Cruise*, 499 U.S. at

11 585; *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 631 (1985); *Bremen*,

12 407 U.S. at 9.  As noted above, Plaintiffs have not alleged—because they cannot—the existence of

13 any fraud, undue influence, overweening bargaining power, or serious inconvenience in connection

14 with the choice-of-law provision.  Therefore, this Court should follow Supreme Court precedent, and

15 apply the parties' contractual term requiring the application of Ohio law.  *See Pelleport*, 741 F. 2d at

16 380.  Because Ohio law applies to this action, Plaintiffs' claims, all arising under Section 17200, fail

17 to state a claim upon which relief may be granted and should be dismissed.

18        **D.      All Causes of Action Against Great Lakes Must Be Dismissed For Failure
                to State a Claim**
19

20        Although Plaintiffs name Great Lakes as a defendant in this matter, they fail to allege any

21 facts concerning Great Lakes and its alleged obligations to the Plaintiffs.  Rather, Plaintiffs

22 summarily state that the "relief sought in this action against Key and KER cannot be had without the

23 participation of Great Lakes and thus Great Lakes is an indispensable party defendant" and thereafter

24 [9] *See Spradlin v. Lear Siegler Mgmt. Servs. Co.*, 926 F.2d 865, 868 (9th Cir. 1991) (enforcing forum
   selection clause where appellant "failed to produce evidence of inconvenience he would suffer by
25 litigating in Saudi Arabia" or any specific allegations as to his inconvenience); *Pelleport*, 741 F.2d at
   380 (enforcing forum selection clause and dismissing the case for improper venue where plaintiff did
26 not show overweening bargaining power or that the clause was otherwise unreasonable despite
   inconvenience of venue for certain witnesses); *Graham Tech. Solutions, Inc. v. Thinking Pictures,*
27 *Inc.*, 949 F. Supp. 1427, 1434 (N.D. Cal. 1997) (enforcing forum selection clause and dismissing
   action for improper venue).

28

1   defined "KeyBank" to include Great Lakes.  TAC ¶ 8.  Great Lakes is a Wisconsin corporation and

2   an independent entity separate and apart from KeyBank which has no contracts with the Plaintiffs.

3   *Id.*.  "Plaintiff must allege the basis of his claim against each defendant to satisfy Federal Rule of

4   Civil Procedure 8(a)(2), which requires a short and plain statement of the claim to put defendants on

5   sufficient notice of the allegations against them."  *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071

6   (N.D. Cal. 1988); *see also In re Sagent Tech., Inc.*, 278 F. Supp. 2d 1079, 1094 (N.D. Cal. 2003)

7   ("[T]he complaint fails to state a claim because plaintiffs do not indicate which individual defendant

8   or defendants were responsible for which alleged wrongful act.").  Plaintiffs have not complied with

9   the pleading requirements of Fed. R. Civ. P. 8.  Accordingly, the causes of action against Great Lakes

10   must be dismissed for failure to state a claim under Rule 12(b)(6).

> ### E.   Plaintiff's Causes of Action Under Section 17200 Fail to State a Claim Because the FTC Holder Notice Does Not Apply to Lenders Such As KeyBank, Does Not Create a Remedy Against KeyBank, and Does Not Provide a Private Cause of Action

13   Plaintiffs contend that KeyBank deliberately and methodically violated the FTC Holder Rule

14   and claim this omission to be a predicate violation for their Section 17200 claim.  *See* TAC at ¶¶ 25,

15   65, 70, 75, 80, 85, and 89.  Neither the regulatory scheme nor any Court which has confronted this

16   issue has ever held that a National Bank must include the FTC Holder Notice in a promissory note for

17   a private student loan.

> ### 1.   The FTC Holder Notice is Inapplicable to KeyBank as a Lender

20   Plaintiffs incorrectly allege that KeyBank is obligated under the FTC Holder Rule to include

21   the Holder Notice in its promissory notices for private student loans.  KeyBank has no such

22   obligation under the plain language of the Holder Rule.  Despite multiple efforts to impose the Holder

23   Rule on lenders, no Court to our knowledge has ever construed the Rule in that fashion.

24   In 1976, the FTC promulgated the FTC Holder Rule which makes it an "unfair or deceptive

25   act or practice," under the Federal Trade Commission Act, 15 U.S.C. § 40 *et seq.*, for a *seller* of

26   goods and/or services to (1) receive a consumer credit contract; or (2) accept the proceeds of a

27   purchase money loan from a referred or affiliated lender unless the consumer credit contract contains

28   the following notice:

1

2        NOTICE

3        ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO
         ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT
4        AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED
         PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY
5        HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID
         BY THE DEBTOR HEREUNDER.

6        16 C.F.R. § 433.2(a)-(b).  Under the rule, a "seller" is defined as "[a] person who, in the

7   ordinary course of business, sells or leases goods or services to consumers."  16 C.F.R. § 433.1(j).

8   Thus, by its express terms, the FTC Holder Rule imposes obligations only on <u>sellers</u>.  In this case, the

9   seller is SSH.  Lenders, such as KeyBank, have no obligations under the Rule.  *See In re Crisomia*,

10  No. 0035085, 2001 Bankr. LEXIS 1469, at *11 (E.D. Pa. Aug. 21, 2001) (the penalty for failing to

11  include the FTC Holder notice is "solely visited upon <u>the seller</u>.") (emphasis added); *see also Abel v.*

12  *KeyBank USA, N.A.*, No. 1:03 cv 524, 2003 U.S. Dist. LEXIS 27175, at * 27 (N.D. Ohio Sept. 24,

13  2003) (because KeyBank did not contractually accept derivative liability by including holder

14  language no cause of action exists under Ohio consumer protection statute); *Blanco*, Opinion and

15  Order at p. 18 ("the FTC has declined to require lenders to include the FTC Holder Rule in their

16  contracts"), Exh. I to Brooks Decl.  In *Abel*, the district court noted that attempts to read the FTC

17  Holder Rule language into loan documents have been consistently rejected.  *Id.* at 27 (citing *Pratt v.*

18  *North Dixie Mfgd. Housing, Ltd.*, No. WD-02-054, 2003 Ohio App. LEXIS 2195 (Ohio Ct. App. 6th

19  Dist. May 9, 2003) (no liability under FTC Holder Rule without language in sale agreement); *Hanlin*

20  *v. Ohio Builders and Remodelers, Inc.*, 196 F. Supp. 2d 572 (S.D. Ohio 2001) (no derivative liability

21  under consumer protection statute where contract did not contain FTC Holder Notice); *Vietnam*

22  *Veterans of Am. v. Guerdon Indus., Inc.*, 644 F. Supp. 951, 964-65 (D. Del. 1986) (any rights of the

23  consumer under the FTC Holder Rule only exist when the provision is in fact in the contract).

24        Under the plain and explicit language of the FTC Holder Rule, lender KeyBank does not have

25  the obligations that Plaintiffs allege and therefore the first and second cause of action—for direct

26

27

28

1    violation of 16 C.F.R. 433.2(a) and (b) respectively—must be dismissed.[10]

2              **2.     Plaintiffs Improperly Seek to  Impose Contractual Terms on KeyBank
                        Not Contained in the Promissory Notes**

3

4         The notice provision of the FTC Holder Rule is a contractual term.  *Armstrong v. Accrediting

5    Council for Continuing Educ. & Training, Inc.*, 832 F. Supp. 419, 432 (D. D.C. 1993).  "If the notice

6    is not included in the contract, therefore, the rights created by the notice cannot exist."  *Id.*; *see also*

7    *In re Crisomia*, 2001 Bankr. LEXIS at *7 (noting that if the notice is not provided, the FTC Holder

8    Rule provides no remedy to the consumer).  The FTC Holder Rule, by its own terms, "does not create

9    any claims or defenses for the consumers."  *Vietnam Veterans*, 644 F. Supp. at 964.  "Any rights of

10   the consumer under the terms of the required provision itself *come into existence only when the*

11   *provision is in fact included* in the consumer credit contract."  *Id.* (emphasis added); *see also*

12   *Williams v. Nat'l Sch. of Health Tech., Inc.*, 836 F. Supp. 273, 283 (E.D. Pa. 1993) (noting "plaintiffs

13   have no right against subsequent holders of the loans. . . if the required language is omitted.").[11]  In

14   the instant case, Plaintiffs must necessarily concede that the Promissory Notes do not include the

15   FTC Holder Rule notice.  Therefore, Plaintiffs have no right to enforce its terms against KeyBank.

16             **3.     Failure to Include The FTC Holder Notice in The Promissory Note Does Not
                        Give Rise to a Private Cause of Action**

17        There exists yet another reason that Plaintiffs' claims must be dismissed.  The FTC Holder

18   Rule "does not grant private parties a cause of action for the failure to include the notice."  *Williams*,

19   836 F. Supp. at 283.  Indeed, in adopting section 5 of the FTCA,[12] "Congress had intended that the

20   FTC, a highly specialized administrative agency, decide whether a particular act constituted an unfair

21   ───────────────

22   [10] Here, among other fatal flaws, Plaintiffs improperly seek to use state statutory law—Section
     17200—to change federal law and redefine who is obligated to comply with the FTC Holder Rule.
     As detailed *infra* at § F, federal law preempts such efforts.

23

24   [11] There is further support for this well-established principle found in the regulatory history of the
     rule.  Indeed, the FTC considered and rejected a proposed amendment to the FTC Holder Rule to
     make it applicable to a lender.  *In re Crisomia*, 2001 Bankr. LEXIS at * 12-13.  In short, "without an

25   allegation that the 'Holder in Due Course' provision was part of each plaintiffs contract . . ., plaintiffs
     have not stated a claim with respect to the contractual provision required 16 C.F.R. § 433.2."

26   *Vietnam Veterans*, 644 F. Supp. at 965.

27   [12] The FTC Holder Rule was adopted pursuant to § 5 of the FTCA, 15 U.S.C. § 45.  *Morales v.
     Walker Motor Sales, Inc.*, 162 F. Supp. 2d 786, 790 (S.D. Ohio 2000).

28

or deceptive practice and that courts deciding lawsuits filed by private individuals would disrupt that carefully constructed administrative process." *Morales*, 162 F. Supp. 2d at 790.  Therefore, even if this Court were to agree with Plaintiffs' contention that KeyBank's failure to include the FTC Holder notice in the Promissory Notes is a violation of the Rule, "[e]nforcement of the Federal Trade Commission Act and therefore the FTC Holder Rule is left to the FTC."  *Williams*, 836 F. Supp. at 283; *see also Primus Auto Fin. Servs. v. Brown*, 840 N.E.2d 254  (Ohio Ct. App. 2005) (noting that "there is no private right of action to enforce the FTC [Holder] Rule") (quotations omitted).  "[E]very court considering [this] question has rejected the proposition that a private right of action exists under the FTC Holder Rule."  *Morales*, 162 F Supp. 2d at 790.

### 4.   Plaintiffs' Efforts to Manufacture a Private Right of Action For Failure to Include The FTC Holder Notice Under Section 17200 Fails to State a Claim For Which Relief Can be Granted

Because no private right of action exists for the failure to include the FTC Holder Notice, Plaintiffs attempt to shoe-horn this situation into a Section 17200 claim.  This effort must fail because Plaintiffs can provide no statute, regulation, or case authority requiring KeyBank to include the FTC Holder Notice in the Promissory Notes.  Plaintiffs ask this Court to re-write the Promissory Notes to include terms and obligations that are absent and not required.  *See, e.g., Cel-Tech Commc'ns v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (1999) ("A plaintiff may thus not 'plead around' an 'absolute bar to relief' by simply 'recasting the cause of action as one for unfair competition.'") (citing *Manuf. Life Ins. Co. v. Superior Court*, 10 Cal. 4th 257, 283 (1995).  Indeed, Plaintiffs misunderstand Holder Rule liability and seek benefits to which they are not entitled.  The Holder Notice--if included in the Promissory Notes--would allow the Plaintiffs to press any claims or defenses concerning SSH against KeyBank.  The TAC is devoid of any allegations concerning the deficiencies with the SSH flight training provided to the Plaintiffs.  The Plaintiffs must state the elements of a claim against SSH in order for the Holder Rule to be implicated.  Here, no such allegations have been pled and any conceivable Holder rule liability is not implicated.  The entire

1    complaint fails from this fatal flaw.  Accordingly, Plaintiffs' fifth cause of action under Section

2    17200 should be dismissed because there has been no violation of a declared legislative or regulatory

3    policy.

4         F.    **Plaintiffs' Section 17200 Claim Which Purports to Rewrite the Terms of the Promissory Note Is Preempted By the National Bank Act and Regulations Enacted Thereunder**

5

6         Plaintiffs' request that this court read into the Promissory Notes obligations and conditions

7    that are not in these contracts is preempted by federal law.  As a national bank, KeyBank is created

8    and operated under the National Bank Act ("NBA"), 12 U.S.C. § 21 *et seq.*   This statute, its

9    implementing regulations and a long line of NBA conflict preemption authority, prevents the use of

10   state statutes to alter the core lending function of national banks.  *See Watters v. Wachovia Bank,*

11   *N.A.*, 127 S. Ct. 1559, 167 L. Ed. 2d 389 (2007). While conflict preemption has been limited with

12   regard to certain state activity regarding National Banks, *see Cuomo v. The Clearing House Ass'n,*

13   *L.L.C.*, 129 S.Ct. 2710, 174 L. Ed. 2d 464 (2009), the terms of credit is exclusively an issue of federal

14   law.  *See* 12 C.F.R. § 7.4008(d)(2).

15        1.    **The NBA Has a Long History of Preempting Conflicting State Laws**

16        The preemption doctrine is rooted in the Supremacy Clause of the United States Constitution

17   ("the Supremacy Clause").  The Supremacy Clause provides:

18        This Constitution, and the Laws of the United States which shall be made in
          Pursuance thereof and all Treaties made, or which shall be made, under the
19        Authority of the United States, shall be the supreme Law of the Land; and the
          Judges in every State shall be bound thereby, any Thing in the Constitution or
20        Laws of any State to the Contrary notwithstanding.

21   U.S. Const. Art. VI, § 3, C1.2 (emphasis added).  Preemption can generally occur in three ways: (1)

22   where Congress has expressly preempted state law; (2) where Congress has legislated so

23   comprehensively that federal law occupies an entire field of regulation and leaves no room for state

24   law; or (3) where federal law conflicts with state law.  *See Barnett Bank, N.A. v. Nelson*, 517 U.S. 25,

25   31 (1996); *Fid. Fed. Sav. & Loan Ass'n v. De la Cuesta*, 458 U.S. 141, 153 (1982).  Plaintiffs'

26   allegations implicate "conflict preemption" which arises where "state law stands as an obstacle to the

27   accomplishment and execution of the full purpose and objectives of Congress."  *De la Cuesta*, 458

28   U.S. at 153 (internal citations omitted).

In 1864, Congress enacted the NBA to establish a system of national banking that vested in nationally chartered banks enumerated powers and "all such incidental powers as shall be necessary to carry on the business of banking." *Id.* (quoting 12 U.S.C. § 24 (Seventh)).  To specifically prevent inconsistent or intrusive state regulation from impairing the national system, Congress provided:  "No national bank shall be subject to any visitorial powers except as authorized by Federal law . . . ." *Id.* (quoting 12 U.S.C. § 484(A)).  The authority granted to National Banks also includes, *inter alia*, the powers:

> [t]o exercise by its board of directors or duly authorized officers or agents, subject to law, <u>all such incidental powers as shall be necessary to carry on the business of banking</u>; by discounting and <u>negotiating promissory notes</u>, drafts, bills of exchange, and other evidences of debt; by receiving deposits; by buying and selling exchange, coin, and bullion; <u>by loaning money on personal security</u>; and by obtaining, issuing, and circulating notes according to the provisions of this title.

12 U.S.C. § 24 (Seventh) (emphases added).

Based upon these extensive powers granted to National Banks, it is unsurprising that there is a long history of federal courts finding that state laws are preempted when they frustrate the exercise of a National Bank's powers:

> National banks are instrumentalities of the Federal government, . . . created for public purposes, and as such necessarily subject to the paramount authority of the United States.  <u>It follows that an attempt, by a State, to define their duties or control the conduct of their affairs is absolutely void, wherever such attempted exercise of authority expressly conflicts with the laws of the United States, and either frustrates the purpose of the national legislation or impairs the efficiency of these agencies of the Federal government to discharge the duties, for the performance of which they were created.</u>

*Davis v. Elmira Sav. Bank*, 161 U.S. 275, 283 (1896) (emphasis added).  The Supreme Court has reiterated that the national banking system is to remain free from "possible unfriendly State legislation."  *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 10 (2003) (quotation omitted).  Simply put: "States can exercise <u>no</u> control over [national banks], nor in any wise affect their operation, except in so far as Congress may see proper to permit.  Anything beyond this is an abuse, because it is the usurpation of power which a single State cannot give."  *Farmers' & Mechs.' Nat'l Bank v. Dearing*, 91 U.S. 29, 34 (1875) (internal quotation omitted) (emphasis added).  "Congress has legislated in the field of banking from the days of *M'Culloch v. Maryland*, creating an extensive

1   federal statutory and regulatory scheme.  Accordingly, the history of national banking legislation has

2   been one of interpreting grants of <u>both enumerated and incidental powers to national banks</u> as grants

3   of authority not normally limited by, but rather <u>ordinarily pre-empting contrary state law</u>." *Bank of*

4   *Am. v. City & County of San Francisco*, 309 F.3d 551, 558 (9th Cir. 2002) (internal quotation and

5   citation omitted) (emphases added).

6       Otherwise, "[d]iverse and duplicative superintendence of national banks' engagement in the

7   business of banking" would follow—a result that the NBA was designed to eschew.  *Watters*, 127 S.

8   Ct. at 1568.  For this reason, the Supreme Court in *Watters* reaffirmed its broad interpretation of the

9   Congressional mandate that National Banks are to remain free from state intrusion that would impair

10  their ability to exercise <u>any</u> of their powers necessary to carry on the business of banking.  *Id.* at

11  1568-69, 1572.  In short, when state law could interfere with the National Banks' exercise of federal

12  authority, whether enumerated <u>or</u> incidental, the state law <u>must</u> give way.  *See Wachovia Bank, N.A.*

13  *v. Watters*, 431 F.3d 556, 563 (6th Cir. 2005), *aff'd Watters,* 167 L. Ed. 2d at 407 (NBA and its

14  corresponding regulations preempt state laws that not only do interfere with a national bank's

15  exercise of its federal powers, but also preempts state law that <u>could</u> so interfere).[13]

16  [13] The recent case of *Cuomo* does not alter this analysis.  States have always enforced their general
    laws against national banks—and have enforced their banking-related laws against national banks for
17  at least 85 years.  *Id.*, 174 L.Ed.2d at 475.  The narrow issue presented in *Cuomo* was whether the
    New York Attorney General could force national banks to turn over non-public information to aid in
18  its investigation of possible racial discrimination in real estate lending practices of several national
    banks.  *See id.*, 174 L.Ed.2d at 464.  The *Cuomo* decision does not address the preemption of state
19  laws that conflict with a national bank's ability to conduct the business of banking, but rather draws
    the distinction between state enforcement actions and visitorial powers.  While the Supreme Court
20  held that states are not precluded from exercising its ordinary powers to enforce state laws, in so
    holding, the Court noted that "[c]hanneling state attorneys general into judicial law-enforcement
21  proceedings (rather than allowing them to exercise "visitorial" oversight) would preserve a regime of
    exclusive administrative oversight by the Comptroller while honoring in fact rather than merely in
22  theory Congress's decision not to pre-empt substantive state law."  *Id.* at 174 L.Ed.2d at 472.
    Notably, the Supreme Court affirmed the Second Circuit's decision barring the threatened issuance of
23  executive subpoenas, while noting it would allow judicial enforcement actions.  Where, as here, a
    state statute is being used to modify the contractual terms of the promissory note, conflict preemption
24  still applies.  *Cuomo* does nothing to alter the fundamental principle that the NBA, and Office of the
    Comptroller of the Currency ("OCC") regulations, protect national banks from state interference with
25  the "business of banking."

26  Moreover, any argument that *Cuomo* reinforces the Plaintiffs' ability to sue as "private attorneys
    general" is meritless.  Private attorney general actions under the UCL were eliminated with the
27  passage of Proposition 64 in 2004.  *Lozano v. AT&T Wireless Servs.*, 2007 US App. LEXIS 22430
    (9th Cir. 2007).  After its amendment by Proposition 64, a person asserting a claim for unfair

28

2.      **The OCC's Regulations Further Support Preemption of State Laws That Could Interfere With the Performance of National Banks' Functions Under the NBA**

Regulations from the OCC, the federal agency exercising exclusive control over National Banks, further support preemption of Plaintiffs' Section 17200 claim.  Significantly, the Supreme Court has stated that Federal regulations enacted by federal agencies have equal preemptive force as federal statutes.  *De la Cuesta*, 458 U.S. at 153.

In 2004, the OCC adopted comprehensive standards codifying these well-established preemption principles drawn directly from applicable Supreme Court precedent.  *Rose v. Chase Manhattan Bank USA, N.A.,* 396 F. Supp. 2d 1116, 1123 (C.D. Cal. 2005); 12 C.F.R. § 7.4009(b) ("Except where made applicable by Federal law, state laws that obstruct, impair, or condition a national bank's ability to fully exercise its powers to conduct activities authorized under Federal law do not apply to national banks.").  These regulations were explicitly designed to preempt conflicting state law in response to "the trend at the state and local levels toward enacting legislation that seeks to impose costly and inconsistent compliance burdens on national banks."  Testimony of Julie L. Williams Before the Subcommittee on Oversight and Investigations of the Committee on Financial Services of the U.S. House of Representatives (January 28, 2004) ("Williams' Testimony").  Significantly, when drafting its regulations, the OCC considered the effect the new 2004 regulations would have on state consumer protection laws:

> It is simply not the case that consumers will be hurt by our rules.  National banks . . . are subject to extensive Federal consumer protection laws and regulations, administered and enforced by the OCC.  OCC examinations of national banks . . . are conducted to ensure and enforce compliance with these laws and regulations and supplemental OCC supervisory standards.

_____
*(Footnote Continued)*
competition under the UCL must allege an actual injury in fact and can no longer act for the interests of the general public.  *See* 2004 Amendment to Cal. Bus. & Prof. Code §17204 (substituted "who has suffered injury in fact and has lost money or property as a result of such unfair competition" for "acting for the interests of itself, its members or the general public").  *See also State of California v. Pac. Bell Tel. Co.*, 142 Cal. App. 4th 741, 757 (Cal. App. 3d 2006) ("Proposition 64, however, limited standing to public prosecutors and 'any … person … who has suffered injury in fact and has lost money or property as a result of such unfair competition.'")  Accordingly, whether the Cuomo decision allows attorney generals to enforce state law against national banks has no bearing on the well-settled law that the NBA preempts any attempt to interfere with the core "business of banking," including such things as the terms of credit, disbursement and repayment.  *See*, *e.g.*, 12 C.F.R. § 7.4008(d)(2).

. . .

> Of course, nothing in the OCC's preemption or visitorial powers rules prevents States from applying State standards and taking actions against the entities they supervise and regulate.  Indeed, resources would be deployed more efficiently to protect more consumers if States applied their resources to the conduct of State supervised entities, the OCC applied its resources to national banks, and State officials referred problems involving national banks that come to their attention to the OCC.

Williams' Testimony at 18-19 (emphasis omitted from original).  At a minimum, this testimony evidences "at least in a general sense, the federal government's intent to preempt state consumer protection laws by enacting the revisions to the federal regulations." *Abel v. KeyBank USA, N.A.*, 313 F. Supp. 2d 720, 729 (N.D. Ohio 2004).

### 3. Plaintiffs' Efforts to Modify The Promissory Notes and Hold KeyBank Liable for the Deficiencies of SSH Are Preempted

Plaintiffs' attempt to use Section 17200 to modify federal law and somehow impose a non-existent obligation on KeyBank with regard to the FTC Holder Notice is preempted. The terms of credit extended by a national bank is exclusively an issue of federal law.  OCC regulations provide that National Banks may make non-real estate loans <u>without regard to state law limitations</u> concerning:

> (i) Licensing, registration (except for purposes of service of process), filings, or reports by creditors;

> (ii) The ability of a creditor to require or obtain insurance for collateral or other credit enhancements or risk mitigants, in furtherance of safe and sound banking practices;

> (iii) Loan-to-value ratios;

> (iv) <u>The terms of credit</u>, including <u>the schedule for repayment of principal and interest,</u> amortization of loans, balance, <u>payments due,</u> minimum payments, <u>or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;</u>

> (v) Escrow accounts, impound accounts, and similar accounts;

> (vi) Security property, including leaseholds;

> (vii) Access to, and use of, credit reports;

1    (viii) Disclosure and advertising, including laws requiring specific
     statements, information, or other content to be included in credit
2    application forms, credit solicitations, billing statements, credit
     contracts, or other credit-related documents;

3    (ix) <u>Disbursements and repayments</u>; and

4
5    (x) Rates of interest on loans.

6   12 C.F.R. § 7.4008(d)(2) (emphases added).

7        Plaintiffs' claims directly conflict with the power of the bank to make non-real estate loans

8   without regard to state law claims concerning "the terms of credit. . . and disbursements and

9   repayments."  12 C.F.R. § 7.4008(d)(2)(iv), (ix).  Such a result is impermissible.  The NBA is

10  properly read "to protect from state hindrance a national bank's engagement in the 'business of

11  banking.'"  *Watters*, 127 S. Ct. at 1572.  This Court is constrained from allowing Plaintiffs to use

12  state law, here Section 17200, in any way which affects the activities detailed in 12 C.F.R. §

13  7.4008(d)(2). Indeed, this Court cannot permit Plaintiffs to superimpose alleged state law

14  requirements upon these federally-conferred core banking powers.  *Martinez,* 2007 U.S. Dist. LEXIS

15  58758, at *16; *Ellis*, supra, at pp. 16-24, Exh. H to Brooks Decl. (finding plaintiff's Section 17200

16  claim was preempted by the NBA and OCC regulations).

17       The regulation of terms of credit, repayment, and disbursements are squarely within the

18  purview of the "business of banking," reserved exclusively to the OCC.  *See Franklin Nat'l Bank v.*

19  *New York*, 347 U.S. 373, 376 (1954) (The National Bank Act provides that national banks shall

20  possess "all such incidental powers as shall be necessary to carry on the business of banking; by

21  discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt;

22  by receiving deposits; by buying and selling exchange, coin, and bullion; by loaning money on

23  personal security; and by obtaining, issuing, and circulating notes according to the provisions of this

24  chapter."); 12 U.S.C. § 24 (Seventh).  Additionally, banks may extend loans without regard to "laws

25  requiring specific statements, information, or other content to be included in credit application forms,

26

27

28

1  credit solicitations, billing statements, credit contracts, or other credit-related documents." *See*

2  *Augustine*, 485 F.Supp. 2d at 1176 (*citing* 12 C.F.R. § 7.4008(d)(2)(viii)).

3       Where, as here, the Plaintiffs' attempt to use state law to require the inclusion of the Holder

4  Notice and  modify the core collection obligations under the promissory notes must be preempted.

5  *See Rose*, 396 F. Supp. 2d at 1123 (holding that the NBA and section 7.4008 preempted plaintiff's

6  unfair competition law claim); *Augustine*, 485 F. Supp. 2d at 1176 (finding plaintiff's § 17200 claim

7  that bank was required to make different disclosures because of state law was expressly preempted by

8  the NBA and OCC regulations); *Abel*, 313 F. Supp. 2d at 726-727 (dismissing state consumer

9  protection claim as preempted by the NBA and section 7.4008 noting that "this type of state imposed

10  liability significantly interferes with a national bank's ability to negotiate promissory notes and lend

11  money"); *Martinez*, 2007 U.S. Dist. LEXIS 58758, at *16 (concluding plaintiff's claim for unfair and

12  deceptive acts and practices in violation of § 17200 were preempted by the NBA and the OCC's

13  regulation thereunder); *Blanco*, supra, Exh. I to Brooks Decl. at pp. 18-20 (dismissing state consumer

14  protection claim as preempted by the NBA and section 7.4008); *Ellis,* supra, Exh. H to Brooks Decl.

15  at pp. 16-21.[14]  Because Plaintiffs' claim is preempted by federal law, it should be dismissed for

16  

17  failure to state a claim upon which relief may be granted.

18  

19         **G.**    **Plaintiffs Fail to State a Claim For Violations of Section 17200 Based on
Aiding and Abetting**

20  

21       Plaintiffs' third and fourth claims under Section 17200 should be dismissed because of the

22  parties' choice of Ohio law.  Moreover, Plaintiffs' claims for "aiding and abetting" under Section

23  _____

24  [14] The preemption of this claim is consistent with this Court's holding in *Jefferson v. Chase Home Fin.*, No. C-06-6510 TEH, 2008 U.S. Dist. LEXIS 101031 (N.D. Cal. Apr. 29, 2008).  There, the

25  court found no conflict with a state law requiring additional notice requirements.  Here, however, Plaintiffs want the bank to modify its promissory notes making it a guarantor of the performance of

26  SSH.  This is a profound alteration to the relationship and fundamentally encroaches on the terms under which monies will be loaned and repaid.  Indeed, even in *Jefferson*, the court noted that

27  requiring the bank to service or process loans, to include specific content in its disclosures, or to handle repayment of loans in any particular manner would be preempted.  *Id.* at * 36.

28

1    17200 are predicated on a third party's—SSH's—alleged violations of the FTC Holder Rule.

2    California law, however, precludes liability for "aiding and abetting" under Section 17200.  *See*

3    *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n,* 494 F.3d 788, 808 (9th Cir. 2007) (citing *Emery v. Visa Int'l*

4    *Serv. Ass'n*, 95 Cal. App. 4th 952, 960 (Cal. 2002)); *see also In re Jamster Mktg Litig.*, No. 05cv0819

5    JM (CAB), 2009 U.S. Dist. LEXIS 7629 (S.D. Cal. 2009).  An "unfair practices claim under Section

6    17200 cannot be predicated on vicarious liability….A defendant's liability must be based on his

7    personal participation in the unlawful practices and unbridled control over the practices that are found

8    to violation section 17200…"  *Perfect 10*, 494 F.3d at 808.

9         Plaintiffs allege "KeyBank knew SSH's Service Contract did not contain the required Holder

10   Rule Notice" and thus KeyBank acted unlawfully "facilitating" SSH's conduct.  TAC ¶¶ 75, 80.

11   Such allegations are void of any showing that KeyBank participated in fashioning or deciding the

12   contents of SSH's contract or exercised any control over the contents of SSH's contract.  *See Perfect*

13   *10*, 494 F.3d at 808.

14                **H.    Plaintiffs' Claims Are Barred By the Economic Loss Doctrine**

15        Plaintiffs' damages necessarily arise from a breach of contract with SSH, which they seek to

16   impute to KeyBank under the Holder Notice. The complaint is devoid of the requisite allegations

17   against SSH.  "The economic loss rule requires a purchaser to recover in contract for purely

18   economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a

19   broken contractual promise."  *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988

20   (Cal. 2004).  Therefore, although a breach of contract may form the predicate for a section 17200

21   claim, the defendant's conduct must also be unlawful, or unfair, or fraudulent.  *Nat'l Rural Telcoms.*

22   *Coop. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059, 1074 (C.D. Cal. 2003).  This requires showing that

23   the defendant had violated some duty to the plaintiff independent of the contract.  *See*, *e.g.*, *Allied*

24   *Grape Growers v. Bronco Wine Co.*, 203 Cal. App. 3d 432 (Cal. App. 1988) (a breach of contract

25   was found to have supported a UCL claim only after that breach was found to have independently

26
     violated three statutes).  Because, as shown above, *see* Section E, *supra*, KeyBank did not owe any

27

28

duties to Plaintiffs under 16 C.F.R. § 433, Plaintiffs cannot establish the breach of any extra-contractual tort or statutory duty necessary to support a UCL claim based upon a contractual relationship.

Indeed, it is well established that the UCL is "not an all-purpose substitute for a tort or a contract action." *Inter-Mark USA, Inc. v. Intuit, Inc.*, No. C-07-04178 JCS, 2008 U.S. Dist. LEXIS 18834, *32 (N.D. Cal. Feb. 27, 2008) (*quoting Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 173 (2000)). Allowing Plaintiffs to re-cast contractual claims as UCL claims would enable them to take advantage of the UCL's more liberal standing requirements to avoid meeting the "more rigorous requirements of a negligence action or a breach of contract suit . . . something the legislature never intended." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1151 (2003). That Plaintiffs' claims are truly contractual in nature is revealed by the relief which Plaintiffs seek: an order excusing Plaintiffs from fulfilling their payment obligations under their contracts with KeyBank. By seeking to avoid contractual obligations, Plaintiffs are plainly seeking contractual damages.

Because Plaintiffs cannot allege that KeyBank owed any duty to Plaintiffs outside those set forth in the Promissory Notes, Plaintiffs' claims lie solely in contract and the economic loss doctrine bars their tort claims. *Rejects Skate Magazine, Inc. v. Acutrack, Inc.*, No. C 06-2590 CW, 2006 U.S. Dist. LEXIS 63157, *15 (N.D. Cal. Aug. 22, 2006) (refusing to dismiss tort claim <u>only</u> <u>because</u> Plaintiffs "alleged violations of duties independent of the contract").

## I.      Plaintiffs Fail to State a Claim for Fraud Or to Plead Fraud Under the UCL With the Particularity Required by Rule 9(b)

Plaintiffs have alleged KeyBank committed fraud under the UCL by concealing material facts. TAC ¶ 89. Plaintiffs do not identify, however, any legal basis which requires KeyBank to disclose the allegedly "Concealed Facts" referenced in the TAC. "At common law, misrepresentation made for the purpose of inducing reliance upon the false statement is fraudulent. But one who fails to

disclose material information prior to the consummation of a transaction commits fraud *only when he is under a duty to do so*." *Chiarella v. United States*, 445 U.S. 222, 228 (1980) (emphasis added). And the duty to disclose arises when one party has information "that the other [party] is entitled to know because of a fiduciary or other similar relation of trust and confidence between them."  No such relationship is alleged or exists here.  *Id.*  Under California law, a duty to disclose may arise in only four circumstances: "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts." *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 1001 (N.D. Cal. 2007).

The Plaintiffs are not in a fiduciary relationship with KeyBank nor are there any allegations to substantiate such a contention.[15]  Additionally, the remaining circumstances giving rise to a duty to disclose require that non-disclosed facts be material.  *Stickrath*, 527 F. Supp. 2d at 1001.  Non-disclosed facts are material if their disclosure would cause a reasonable consumer to behave differently.  *Hovsepian v. Apple, Inc.*, Nos. 08-5788 JF (PVT), 09-1064 JF (PVT), 2009 U.S. Dist. LEXIS 80868, *9 (N.D. Cal. Aug. 21, 2009).  Plaintiffs do not "allege facts supporting the claim that a reasonable consumer 'would have behaved differently'" had he been aware of the non-disclosed facts.  *In re Apple & AT&TM Antitrust Litig.*, 596 F. Supp. 2d 1288, 1311 (N.D. Cal. 2008) (dismissing a complaint because plaintiff did not allege facts to support materiality).[16]  Indeed, the

---

[15] *Brockington v. J.P. Morgan Chase Bank, N.A.*, No. C-08-05795 RMW, 2009 U.S. Dist. LEXIS 56622, *9 (N. D. Cal. 2009) ("there is no fiduciary duty owed between a lender and a borrower, and without a duty to disclose, defendant cannot be liable for concealment."); *Marques v. MortgageIT, Inc.*, No. SACV 09-1154 AG (MLGx) 2009 U.S. Dist. LEXIS 117037, *17 (C.D. Cal. Dec. 14, 2009) ("a lender normally does not owe a fiduciary duty to its borrower under California law.").

[16] Furthermore, the alleged "Concealed Facts," while perhaps suggesting poor lending practices, fail to provide any support for Plaintiffs' claims as the allegations do not provide a basis for liability.  *See* ¶¶ 24, 44-49, 51-59.

TAC "contains only generalized allegations with respect to exclusive knowledge and active

concealment." *Hovsepian*, 2009 U.S. Dist. LEXIS 80868, *9 (dismissing complaint where plaintiff

failed to allege sufficient facts to support a duty to disclose).[17]  Besides Plaintiffs' conclusory

allegations that SSH students were "unsuspecting," TAC ¶¶ 24, 56, 58, 60, there are no facts to

support a claim that they could not have done their own due diligence to investigate SSH.  Thus,

whether a fact is material, or whether a failure to disclose a fact is material, "is a legal conclusion

rather than a factual allegation." *Stickrath*, 527 F. Supp. 2d at 1000.  It is for this reason that a

plaintiff must allege facts to support such a conclusion.  Generalized allegations are not sufficient.

*Hovsepian*, 2009 U.S. Dist. LEXIS 80868, at *14.  Where, as here, a plaintiff fails to allege that non-

disclosed facts are material, a plaintiff cannot sufficiently allege a duty to disclose.   *Stickrath*, 527 F.

Supp. 2d at 1001.

    The Promissory Note specifically notified Plaintiffs that KeyBank made no representation and

did not in any way endorse or promote SSH.  *See* Promissory Note, Baldwin Decl., Exhs. A & B at ¶

¶ R.(12).  Because the full extent of the duty owed by KeyBank to Plaintiffs is defined by the

Promissory Note, Plaintiffs' claims sounding in fraud should be dismissed.

    Many of the so-called "facts" that Plaintiffs claim KeyBank should have disclosed are really

opinions for which no disclosure allegation exists.  For example, one of the Plaintiffs' alleged

"Concealed Facts" is that an aviation school expert had such a poor opinion of SSH that he predicted

SSH would be the next big school failure. *See* TAC  ¶ 57.  *See also id*, ¶¶ 25-27, 50.  Statements of

opinion are not generally actionable in fraud.  *Interpetrol Bermuda, Ltd. v. Kaiser Aluminum Int'l

Corp.*, 719 F.2d 992, 996 (9th Cir. 1983); *Nibbi Bros. v. Home Fed. Sav. & Loan Ass'n*, 205 Cal.

App. 3d 1415, 1423 (Cal. App. 1988) ("a representation ordinarily will give rise to a cause of action

---

[17] Even if Plaintiffs did allege that had they known the alleged concealed facts they would have
behaved differently, such an analysis must be conducted on an individual, rather than class-wide
basis.

for fraud or deceit only if it is a representation of fact rather than opinion"). An opinion cannot form the basis of a fraud claim.[18] Here, Plaintiffs allege that KeyBank committed fraud by failing to disclose the information alleged in paragraphs 24-27 and 44-59 of the TAC. *See* TAC, ¶ 89. The "facts" alleged in these paragraphs, however, consist largely of unsubstantiated opinions, *see*, *e.g.,* TAC ¶¶ 25-26, or reconstructions of the loan process based upon "information and belief," see, e.g., TAC ¶¶ 26-27, 44-51, or statistics concerning the performance of KeyBank's loans. TAC ¶¶ 52-53.

Even if Plaintiffs' allegations could be considered "fact," because Plaintiffs cannot allege any duty to disclose the purportedly "Concealed Facts," their claim under the UCL must fail. California courts have consistently ruled that a plaintiff cannot maintain an action under the fraudulent prong of the UCL for failure to disclose information when the defendant has no duty to disclose such information. *See, e.g., Berryman v. Merit Property Management, Inc., 152* Cal. App. 4th 1544, 1557 (Cal. Ct. App. 2007); *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 838 (Cal. Ct. App. 2006) ("We cannot agree that a failure to disclose a fact one has no affirmative duty to disclose is 'likely to deceive' anyone within the meaning of the UCL.").

///

///

---

[18] Predictions "as to future events, or statements as to future action by some third party, are deemed opinions, and not actionable fraud." *Nibbi Bros.*, 205 Cal. App. 3d at 1423 (*quoting* 4 Witkin, *Summary of Cal. Law* (8th ed. 1974) Torts, § 447, p. 2712); *Interpetrol Bermuda, Ltd.*, 719 F.2d at 996 (statement of opinion as to the reputation of a third party not actionable in fraud). In *Nibbi Bros.*, the court examined an affirmative representation made by the defendant lender regarding a contractor's ability to sustain continued financing. 205 Cal. App. 3d at 1424. The court determined that such a representation constituted a "nonactionable expression of opinion." *Id.* Similarly, the court in *Assilzadeh v. Cal. Fed. Bank*, 82 Cal. App. 4th 399, 412 (Cal. App. 2000), found that a foreclosing lender had no duty to disclose to a buyer a third party opinion it had obtained regarding condominium prices. The defendant disclosed to a buyer the fact that the condominium building had been the subject of construction defect litigation which had since settled. *Id.* at 411. The defendant had also commissioned a broker's price opinion regarding the impact of settlement of litigation on condominium prices. *Id.* The court determined that the defendant had no obligation to disclose the broker's price opinion because it constituted no more than a "vague and general speculation" regarding the price of condominiums. *Id.* at 412.

1

**IV.     CONCLUSION**

2          For all of the foregoing reasons, KeyBank and Great Lakes' Motion to Dismiss should be

3    granted.

4
     DATED:  January 11, 2010                        Respectfully submitted,
5
                                                     NIXON PEABODY LLP
6

7
                                                     /s/ Stephanie Karnavas
8                                              By:  _____
                                                     W. SCOTT O'CONNELL
9                                                    TODD C. TORAL
                                                     STEPHANIE KARNAVAS
10                                                   Attorneys for Defendants
                                                     KEYBANK, NATIONAL ASSOCIATION
11                                                   and GREAT LAKES EDUCATIONAL
                                                     LOAN SERVICES, INC.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28