ANDREW A. AUGUST (SBN 112851)
(aaugust@pinnaclelawgroup.com)
KEVIN F. ROONEY(SBN 184096)
(krooney@pinnaclelawgroup.com)
PINNACLE LAW GROUP, LLP
425 California Street, Suite 1800
San Francisco, California 94104
Telephone: (415) 394-5700
Facsimile: (415) 394-5003

[Additional Counsel on Signature Page]

Attorneys for Plaintiffs Matthew C. Kilgore,
William Bruce Fuller

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| MATTHEW C. KILGORE, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> KEYBANK, NATIONAL ASSOCIATION, *et al.* , <br><br> Defendants. | CASE NO.   08-cv-02958 TEH <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** <br><br> Date:  March 29, 2010 <br> Time:  10:00 a.m. <br> Courtroom:  Ctrm 12, 19th Floor <br> Judge:  The Hon. Thelton E. Henderson |

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

CASE NO. C08-02958 TEH
5033.001/00060933

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

# TABLE OF CONTENTS

**TABLE OF CONTENTS**................................................................................................ I

**TABLE OF AUTHORITIES** ...................................................................................... II

**I.    INTRODUCTION** ................................................................................................ 1

**II.    SUMMARY OF ARGUMENT** ............................................................................ 2

**III.    FACTUAL SUMMARY** ....................................................................................... 4

**IV.    LEGAL ARGUMENT** ......................................................................................... 4

    **A.**    **The UCL Permits Plaintiffs to Use KeyBank's Violation of the Holder Rule as a Predicate Violation of the UCL** ....................................... 4

    **B.**    **The FTC Holder Rule – An Overview** ................................................... 6

    **C.**    **Plaintiffs Have Adequately Alleged that KeyBank Engaged in** *Unlawful* **Conduct Under the UCL by Violating both Subsections of the Holder Rule.** .................................................................................. 8

        **1.**    **KeyBank** *Directly* **Violated the Holder Rule (First and Second Claims for Relief)** ...................................................... 8

        **2.**    **KeyBank** *Indirectly* **Violated the Holder Rule (Third and Fourth Claims for Relief)**

    **D.**    **Plaintiffs Have Adequately Alleged that KeyBank Engaged in** *Unfair* **Conduct Under the UCL** .................................................... 13

    **E.**    **Plaintiffs Have Adequately Alleged KeyBank Engaged in** *Fraudulent* **Conduct Under the UCL by Violating both Subsections of the Holder Rule** ................................................................................. 15

    **F.**    **KeyBank's Effort to Avoid the UCL based on its Forum Selection and Choice of Law Clauses Should Rejected** .......................... 16

    **G.**    **KeyBank's Effort to Avoid the UCL based on Federal Preemption Should be Rejected** ................................................................. 20

    **H.**    **The Economic Loss Doctrine Does Not Apply to this Action** ..............

**V.    CONCLUSION** .................................................................................................. 25

Pinnacle Law Group llp
425 California Street
Suite 1800
San Francisco, CA 94104
(415) 394-5700

# TABLE OF AUTHORITIES
## FEDERAL CASES

*Abel v. KeyBank USA, N.A.,*
   2003 U.S. Dist. LEXIS 27175 (N.D. Ohio 2003) ............................................9

*Altria Group, Inc. v. Good,*
   129 S. Ct. 538 (2008) ....................................................................... 21

*Anderson Nat'l Bank v. Luckett*
   321 U.S. 233 (1944)........................................................................ 22

*Argueta v. Banco Mexicano, S.A.,*
   87 F.3d 320 (9th Cir. 1996).............................................................16

*Augustine v. FIA Card Services, N.A.,*
   485 F. Supp. 2d 1172 (E.D. Cal. 2007 ...............................................24

*Barnett Bank of Marion Cty., N.A. v. Nelson,*
   517 U.S. at 31, 33 ......................................................................... 22

*Bencharsky v. Cottman Transmission Systems, LLC,*
   625 F. Supp. 2d 872 ..................................................................... 24

*Bernstein v. GTE Directories Corp.,*
   827 F.2d 480 (9th Cir. 1987)...........................................................19

*Brown v. LaSalle Northwest National Bank,*
   820 F. Supp. 1078, 1081 (N.D.Ill. 1993) .................................... 14,15

*Davis v. Chase Bank,*
   650 F. Supp. 2d 1073; 2009 U.S. Dist. LEXIS 85765 (C.D.Cal. Sept. 3, 2009) .................
   ........................................................................................17,22,23,24

*C.f. Marcelos v. Dominguez,*
   2008 U.S. Dist. LEXIS 91155 (N.D. Cal. 2008).................................. 14

*Cuomo v. The Clearing House Associate, L.L.C.,*
   129 S. Ct. 2710, 174 L. Ed. 2d 464 (Jun. 29, 2009)............................3,10,20,21

*Doe 1 v. AOL, LLC,*
   552 F.3d 1077 (9th Cir. Cal. 2009) ....................................................17

*Echostar Satellite Corp. v.  NDS Group PLC,*
   2008 U.S. Dist. LEXIS 110425 (C.D. Cal. Oct. 15, 2008) ................................. 6

*Engine Manufacturers Association v. South Coast Air Quality Management District,*
   498 F.3d 1031 (9th Cir. 2007)........................................................ 21

*FTC v. Winsted Hosiery Co.,*
   258 U.S. 483, 66 L. Ed. 729, 42 S. Ct. 384 (1992) ....................... 15

*FTC v. Magaui Publishers, Inc.,*
   (C.D. Cal. 1991), aff'd, 9 F.3d 1551 (9th Cir. 1993).........................15

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

CASE NO. C08-02958 TEH
5033.001/00060933

ii

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

*Falk v. General Motors Corp.*,
    496 F. Supp. 2d 1088 (N.D.Cal.,2007) ................................................................ 18,20,21

*First National Bank v. Dickinson*,
    396 U.S. 122 (1969) .......................................................................................... 29

*Flintkote Co. v. General Accident Assur. Co.*,
    2009 U.S. Dist. LEXIS 100056 (N.D. Cal. Oct. 26, 2009) ................................ 22

*Gonzalez v. Old Kent*,
    2000 U.S. Dist. LEXIS 14530 (E.D. Penn. 2000) ............................................ 12

*Hanlin v. Ohio Builders and Remodelers, Inc.*,
    196 F. Supp. 2d 572 (S.D. Ohio 2001) ............................................................ 12

*Heastie v. Community Bank of Greater Peoria*,
    727 F. Supp. 1133 (N.D. Ill. 1989) .................................................................. 13

*Hoffman v. Citibank, N.A.*,
    546 F.3d 1078 (9th Cir. 2008)......................................................................... 22

*It's Just Lunch International LLC v. Island Park Enterprise Group, Inc.*,
    2008 U.S. Dist. LEXIS 89194, 7-9 (C.D. Cal. 2008) ................................... 23,24

*Jefferson v. Chase Home Finance*,
    2008 U.S. Dist. LEXIS 10131 (N.D.Cal. Apr. 29, 2008) ................................... 3,20,23,24

*Manetti-Farrow, Inc. v. Gucci America, Inc.*,
    858 F.2d 509 (9th Cir. 1988)........................................................................... 21

*Martinez v. Wells Fargo Bank, N.A.*,
    2007 U.S. Dist. LEXIS 58758 (N.D. Cal.  July 31, 2007) .................................24

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*,
    473 U.S. 614 (1985).........................................................................................19

*Montgomery v. Bank of America Corp.*,
    515 F. Supp. 2d 1106 (C.D. Cal. 2007) ...........................................................24

*Nagrampa v. MailCoups, Inc.*,
    469 F.3d 1257 (9th Cir. 2006)..........................................................................19

*Nibeel v. McDonald's Corp.*,
    1998 U.S. Dist. LEXIS 13425 (N.D. Ill. 1998)................................................ 23

*Omstead v. Dell, Inc.*
    10 C.D.O.S. 1641, No. 08-16479 (9th Cir. February 5, 2010)........................... 3

*Perfect 10, Inc. v. Visa International Serv. Association*,
    494 F.3d 788 (9th Cir. 2007).......................................................................... 16

*Regina Corp. v. FTC*,
    322 F.2d 765 (3d Cir. 1963).......................................................................... 15

*Rose v. Chase Bank USA, N.A.*,

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

CASE NO. C08-02958 TEH
5033.001/00060933

iii

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

513 F.3d 1032, 1037 (9th Cir. Cal. 2008) ........................................................21

*Roth v. Delano,*
338 U.S. 226 (1949)........................................................................................ 23

*Sheradsky v. West One Bank,*
817 F. Supp. 423 (S.D.N.Y. 1993) ................................................................. 15

*Swingless Golf Club Corp. v. Taylor,*
2009 U.S. Dist. LEXIS 120033 (N.D. Cal. 2009)........................................... 19

*The Bremen v. Zapata Off- Shore Co.,*
407 U.S. 1 (1972) ........................................................................................... 21

*United States v. Phillips,*
367 F.3d 846 (9th Cir. 2004).......................................................................... 22

*U.S.A. v. Trans Continental Associates,*
1997 U.S. Dist. LEXIS 388 (N.D. Cal. 1997)................................................. 15

*Van Slyke v. Capital One Bank,*
503 F. Supp. 2d 1353 (N.D.Cal. 2007) .......................................................... 22

*Waters  v. Wachovia,*
550 U.S. 1, 27 S.Ct 1559, 1567 (2007) .......................................................... 21

*Wells Fargo Bank N.A. v. Boutris,*
419 F.3d 949 (9th Cir. 2005) ) ....................................................................... 27

*Wyeth v. Levine,*
U.S. 129 S. Ct. 1187, 1194-95 (2009)............................................................. 27

*Zlotnik v. U.S. Bancorp,*
2009 U.S. Dist. LEXIS 119857 (N.D. Cal. 2009)........................................... 18

## STATE CASES

*America Online, Inc., v. Superior Court,*
90 Cal. App. 4th 1 (2001) .............................................................................. 24

*Application Group, Inc. v. Hunter Group Inc.,*
61 Cal. App. 4th 881 (1998) .......................................................................... 23

*Bank of the West v. Super. Ct.,*
2 Cal. 4th 1254 (1992) ..................................................................................... 6

*Bronco Wine Co. v. Jolly* (2004) 33 Cal. 4th 943 ...................................................... 27

*California for Disability Rights v. Mervyn's,*
39 Cal. 4th 223 (2006) ..................................................................................... 8

*Cardonet, Inc. v. IBM Corp.,*
2007 WL 518909 (N.D. Cal. 2007)............................................................ 23,24

Pinnacle Law Group LLP
425 California Street
Suite 1800
San Francisco, CA 94104
(415) 394-5700

CASE NO. C08-02958 TEH                    iv                    PLAINTIFFS' OPPOSITION TO DEFENDANTS'
5033.001/00060933                                                           MOTION TO DISMISS

*Casey v. U.S. Bank National Association*,
    127 Cal. App. 4th *1138, 1145 (2005)* .............................................................. 14

*Cel-Technology Comm'ns, Inc. v. Los Angeles Cellular Telegraph Co.*,
    20 Cal. 4th 163 (1999) ....................................................................... 6,7,17

*Committee on Children's Television, Inc. v. General Foods Corp.*,
    35 Cal. 3d 197 (1983) ................................................................................ 7

*Cortez v. Purolator Air Filtration Products Co., Inc.*,
    23 Cal. 4th 163 (2000) .......................................................................... 8,11

*Davis v. Ford Motor Credit Co.*,
    179 Cal. App. 4th 581 (2009) .................................................................. 17

*Day v. AT&T Corp.*,
    63 Cal. App. 4th 325 (1998) ...................................................................... 7

*Emery v. Visa International Service Association*,
    95 Cal. App. 4th 952 (2002) .................................................................... 17

*First National Bank v. Drexler*,
    184 So. 607 (La. App. 1938) .................................................................... 29

 *Hood v. Santa Barbara Bank & Trust*,
    143 Cal. App. 4th at 538-39 .................................................................... 29

*In Re Tobacco Cases II*,
    46 Cal. 4th 298, 311,312 (2009) .......................................................... 4,6,7,8

*Iron & Glass Bank v. Franz*,
    9 Pa. D. & C. 3d 419 (Pa. C.P. 1978) ...................................................... 13

*Jefferson Gibson v. World Savings & Loan Assn*
    103 Cal. App. 4th 1291 (2002) ................................................................ 29

*Korea Supply Col. v. Lockheed Martine Corp.*,
    29 Cal. 4th 1134 (2003) ............................................................................. 7

*LiMandri v. Judkins*,
    52 Cal. App. 4th 326 (1997) .................................................................... 20

*Livie v. Proctor & Gamble Co.*,
    105 Cal. App. 4th 496 (2003) .................................................................... 7

*McGraw v. Scott Runyan Pontiac-Buick, Inc.*,
    461 S.E.2d 516 (W. Va. 1995) ................................................................ 13

*Miller v. Bank of America, N.A.*,
    170 Cal. App. 4th 980 (2009) .................................................................. 30

*Mirkin v. Wasserman*,
    5 Cal. 4th 1082 (1993) ............................................................................ 20

*Motors, Inc. v. Times Mirror Co.*,
  102 Cal. App. 3d 735, 162 Cal. Rptr. 543 (1980) ............................................................ 7

*Paduano v. American Honda Motor Co., Inc.*,
  2009 Cal. App. LEXIS 18 (2009) ..................................................................................... 8

*Paulus v. Bob Lynch Ford, Inc.*,
  139 Cal. App. 4th 659 (2006) ........................................................................................... 7

*People ex rel. Renne v. Servantes*,
  86 Cal. App. 4th 1081, 103 Cal. Rptr. 2d 870 (2001) ...................................................... 7

*People v. Duz-Mor Diagnostic Laboratory, Inc.*,
  68 Cal. App. 4th 654, 80 Cal. Rptr. 2d 419 (1998) ........................................................ 18

*Peoples Sav. Bank v. Stoddard*,
  359 Mich. 297, 102 N.W.2d 777 (1960) ........................................................................ 29

*Pratt v. North Dixie Mfgd. Housing, Ltd.*,
  2003 Ohio App. LEXIS 2195 (Ohio Ct. App. 2003) ...................................................... 12

*Robinson Helicopter Co., Inc. v. Dana Corp.*
  34 Cal. 4th 979 (2004) .................................................................................................... 31

*Saunders v. Superior Court*,
  27 Cal. App. 4th 832, 33 Cal. Rptr. 2d 438 (1994) ......................................................... 6

*Smith v. State Farm Mutual Automobile Insurance Co.*,
  93 Cal. App. 4th 700 (2001)) - ....................................................................................... 19

*Smith v. Wells Fargo Bank, N.A.*,
  135 Cal. App. 4th 1463, 38 Cal. Rptr. 3d 653 (2005) .....................................................21

*South Bay Chevrolet v. GMAC*,
  72 Cal. App. 4th 861 (1999) ............................................................................................. 8

*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*,
  17 Cal. 4th 553, 562 (1998) ..................................................................................... 6,7,11

## DOCKETED CASES

*Blanco v. KeyBank USA, N.A.*,
  Case No. 1:04cv230-KMO (N.D. Ohio 2008) ................................................................ 12

## FEDERAL STATUTES

12 C.F.R. § 7.4008 (d)(2) ................................................................................................ 22

12 C.F.R. § 7.4007(c)(1) ................................................................................................. 22

12 C.F.R. § 7.4008(c) ......................................................................................................22

16 C.F.R. § 433.2 ........................................................................................................... 1,6

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

CASE NO. C08-02958 TEH                    vi                    PLAINTIFFS' OPPOSITION TO DEFENDANTS'
5033.001/00060933                                                              MOTION TO DISMISS

Fed. R. Civ. P. 9(b) .................................................................................................. 4

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 6

41 Fed. Reg. 20022-27 (May 14, 1976) .................................................................. 9

Federal Trade Commission Act, 15 U.S.C. § 45 .................................................... 17

Regulatory Flexibility Act Review of the Trade Regulation Rule Concerning
Preservation of Consumer's Claims and Defenses 53 F.R. 44456 ............................. 12

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17200 et. seq ................................................................ 1

Pinnacle Law Group LLP
425 California Street
Suite 1800
San Francisco, CA 94104
(415) 394-5700

CASE NO. C08-02958 TEH
5033.001/00060933

vii

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

# I.   INTRODUCTION

From 2003 to 2005 KeyBank[1] "partnered" (KeyBank's word) with the now bankrupt and disgraced Silver State Helicopters trade school ("SSH") by providing SSH with more than $50 million dollars in private student loans on behalf of students who fell victim to SSH's fraudulent scheme.  The case against KeyBank is very simple: KeyBank violated all three prongs of California's Unfair Competition Law (Cal. Bus. & Prof Code § 17200 et. seq. – the "UCL") by violating the Federal Trade Commission Holder Rule (16 C.F.R. § 433.2 - hereinafter, "Holder Rule", "Rule" or "Notice") and by aiding and abetting SSH's violation of the Rule.  The only remedy sought by Plaintiffs is injunctive relief.

KeyBank violated the Rule and ensured SSH violated the Rule by making sure the Notice was omitted from its Master Promissory Notes from its borrowers and from SSH Service Contracts which KeyBank financed.  KeyBank intentionally did this in order to forestall attempts by its borrowers to assert defenses against it in collection actions.  This case seeks not only to prevent KeyBank from continuing to ruin the financial lives of more than 120 California victims of SSH's and KeyBank's particular scheme but also end, once and for all, KeyBank's predatory loan practices against California consumers that it has perfected over the past two decades.

KeyBank's intimate involvement in the SSH debacle was not an isolated circumstance of poor loan underwriting by an inexperienced bank.  Rather, it was another in a long line of partnerships KeyBank has forged with scam trade schools in which KeyBank originated billions of dollars in private student loans made to unsuspecting victims of the schools.  With the securitization craze of the last decade, KeyBank was concerned less about the performance of its loan portfolio than the enormous fees it generated by originating the loans and selling them on Wall Street.

With each failed school, KeyBank improved on its scheme of avoiding the Holder Rule by omitting the Holder Rule Notice from its loan documents and making sure the school omitted the Notice from its contracts, banning class actions by its borrowers, forcing consumers to arbitrate or

---

[1] Appellants KeyBank, N.A. and its loan servicing agent Great Lakes Educational Loan Services, Inc. will collectively be referred to as "KeyBank".

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

CASE NO. C08-02958 TEH          1          PLAINTIFFS' OPPOSITION TO DEFENDANTS'
5033.001/00060933                                    MOTION TO DISMISS

1  litigate in Ohio (a notoriously consumer-hostile forum), preventing discovery and providing for

2  recovery of attorneys fees only when it is the prevailing party.  Exhibit A to the Complaint

3  includes an investigative article detailing this scheme, which was written well before KeyBank

4  formed its alliance with SSH.[2]

## II.    SUMMARY OF ARGUMENT

6      KeyBank's Motion to Dismiss fails because under California law the UCL enables

7  Plaintiffs to bring this action predicated on KeyBank's violation of the Holder Rule even though

8  there is no private right of action under the Rule itself.  Plaintiffs' Complaint[3] properly and

9  adequately alleges both direct violations by KeyBank of all three prongs of the UCL and

10  KeyBank's indirect violations of the UCL through its knowing and intentional aiding and abetting

11  of SSH's violation of the Holder Rule.

12      A lender's obligation under the Holder Rule has been litigated in cases outside of the

13  Ninth Circuit.  In these cases, the issue was whether a lender is obligated to include the Rule in its

14  promissory notes (generally known as the "part (a)" argument). Cases have gone both ways. This

15  is an issue of first impression in the Ninth Circuit, however.  This Court should reject KeyBank's

16  effort to construe the Rule as a meaningless, precatory enactment by the federal government's

17  most important consumer watchdog, the FTC.

18      No court in the country has ruled on the claims by Plaintiffs here that a lender which is an

19  *active participant* in a seller's violation of "part (b)" of the Rule also is liable for violating the

20  Rule. Part (b) provides that it is an "unfair or deceptive act or practice" for a seller (SSH) to

21  accept the proceeds of a purchase money loan without including the Notice in the seller's

22  consumer credit agreements.  Here, Plaintiffs allege KeyBank disbursed millions of dollars in

23  funds to SSH knowing that SSH did not include the Notice in SSH's Service Contracts and

24  further knowing that SSH was violating the Rule by accepting the funds. Thus, this Court has a

---

[2] *The Consumer Advocate,* "The Financial Industry Fuels Revival of Trade School Scams", Tom Domonoske (2003) (Ex. A to TAC) (*See e.g.* "Key Bank's system places each school in violation of the FTC Holder Rule by not placing the Holder Notice in the contract. At the time each loan is disbursed, Key Bank knows each school is violating federal law by accepting the proceeds, and intends to deny the student the benefit of the FTC Holder Rule.")

[3] Plaintiffs' Third Amended Complaint, referred to as "Complaint" or "TAC."

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

CASE NO. C08-02958 TEH          2          PLAINTIFFS' OPPOSITION TO DEFENDANTS'
5033.001/00060933                                          MOTION TO DISMISS

1    clean slate on which to articulate the responsibility of lenders doing business with California

2    consumers to comply with the Holder Rule and not actively participate in a seller's violation of

3    the Rule.

4            Even though Plaintiffs are California residents, suing solely under California consumer

5    protection law, for injuries suffered solely in California by themselves and other California

6    residents only, KeyBank's Motion to Dismiss seeks to force the SSH victims to take their legal

7    battle to Ohio where 1) KeyBank enjoys immunity from lawsuits by defrauded consumers, 2)

8    where arbitration of actions strictly for injunctive relief is permitted, 3) where reciprocity of

9    recovery of attorneys fees is not recognized, and 4) where class actions that foster the public

10   interest are banned under the terms of the Notes.  Each of these hallmarks of Ohio law is contrary

11   to a fundamental California public policy.  Thus, under well-settled - *and brand new* - caselaw

12   governing enforcement of forum selection and choice of law provisions, KeyBank's abuse of

13   these contract provisions also fails.  *See Omstead v. Dell, Inc*., 10 C.D.O.S. 1641, No. 08-16479

14   (9th Cir., February 5, 2010).

15           Finally, try as it might, KeyBank has not made and cannot make a persuasive argument

16   for federal preemption of the UCL where, as here, the predicate violation is of a federal consumer

17   protection regulation of general application.  From this Court's decision in *Jefferson v. Chase*

18   *Home Finance,* 2008 U.S. Dist. LEXIS 10131 (N.D. Cal. 2008 ) to the recent United States

19   Supreme Court decision in *Cuomo v. The Clearing House Assoc., L.L.C.,* 129 S.Ct. 2710, 174

20   L.Ed.2d 464 (2009) to the California Supreme Court's decision in *In Re Tobacco Cases II*,  46

21   Cal. 4th 298, 311 (2009) ("*Tobacco II*"), it is clear that Plaintiffs' action as private attorney

22   generals to enjoin KeyBank's long standing fraudulent and deceptive circumvention of the Holder

23   Rule is not preempted.

24           Because enforcement of KeyBank's Ohio forum selection clause would contravene strong

25   California policies and because the NBA does not preempt Plaintiffs' UCL claims which state

26   claims for relief under California law, KeyBank's Motion to Dismiss should be denied in its

27   entirety.

28   / / /

### III.   FACTUAL SUMMARY

In response to KeyBank's motion to dismiss Plaintiffs' Second Amended Complaint on, *inter alia*, failure to allege fraud with specificity under FRCP 9(b)[4], Plaintiffs filed a Third Amended Complaint with very detailed allegations based on the limited discovery done to date. The highlights of the new factual allegations are as follows:[5]

Long before KeyBank disbursed the funds to SSH on behalf of the students KeyBank 1) violated its own due diligence policies in accepting SSH as a "partner" school, 2) knew that it was "hemorrhaging" with its non-FFELP schools, especially with the high-risk aviation schools, 3) failed to follow its internal plan to eliminate risky schools such as SSH (by March 2005, KeyBank had identified SSH as one its "highest risk schools"), and 4) ignored red flags about SSH's graduation rates, placement rates, student/aircraft ratios, student/flight instructor ratios, mechanic/aircraft ratios.  For example, in May 2004 a KeyBank internal risk management investigator presciently alerted KeyBank's senior management that SSH could be the next big one (vocational school) to go under.  (TAC ¶¶ 32, 52-61)

### IV.   LEGAL ARGUMENT

Each of Plaintiffs' six claims for relief invokes the UCL and KeyBank's direct or indirect violation of the Holder Rule.  KeyBank seeks dismissal of each and every claim on the ground it fails to state a claim under FRCP 12(b)(6).  KeyBank's Motion, however, reveals a startling unfamiliarity with the most basic precepts underlying the UCL and makes material misstatements about the Holder Rule.  Thus, a general overview of these fundamental consumer protection laws is in order.

#### A.   The UCL Permits Plaintiffs to Use KeyBank's Violation of the Holder Rule as a Predicate Violation of the UCL

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice."  *Tobacco II supra* at 311; *see also Bank of the West v. Super. Ct.*, 2 Cal. 4th 1254, 1266 (1992).  The

---

[4] This is the first Motion to Dismiss heard by this court; over KeyBank's objection, Plaintiffs voluntarily sought obtained leave to amend the Complaint Third Amended Complaint  *See* ECF docket no. 128.

[5] Allegations relevant to the issues before the court are cited throughout the brief below.

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

CASE NO. C08-02958 TEH                    4
5033.001/00060933

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

provisions of the statute are disjunctive; thus, a business act or practice may be prohibited if it is "unfair" or "unlawful" or "fraudulent," or any combination thereof. *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal. 4th 553, 561 (1998). In *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal. 4th 163 (Cal. 1999),* the California Supreme Court explained why the scope of the UCL has always been intended to be construed broadly:

> The unfair competition law, . . .has a broader scope for a reason. The Legislature . . . intended by this sweeping language to permit tribunals to enjoin on-going wrongful business conduct in whatever context such activity might occur. Indeed, . . . the section was intentionally framed in its broad sweeping language, precisely to enable judicial tribunals to deal with the innumerable new schemes which the fertility of man's invention would contrive. [20 Cal. 4th at 180–81, (citations and quotes omitted)].

The California Supreme Court "has repeatedly recognized the importance" of UCL class actions in the enforcement of consumers' rights and confirmed its purpose is "to protect the public and restore to the parties in interest money or property taken by means of unfair competition." *Tobacco II supra,* at 313 (citation and quotes omitted). The three prongs of the UCL, each of which is triggered by KeyBank's conduct here, have important analytical hallmarks that KeyBank ignores.

Under the "unlawful" prong, the UCL borrows violations of other laws. *Cel-Tech supra at* 180. An unlawful act is one "forbidden by law, be it civil or criminal, federal, state or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838-39, 33 Cal. Rptr. 2d 438 (1994). A violation of another law is *per se* a violation of the UCL. *Echostar Satellite Corp. v. NDS Group PLC,* 2008 U.S. Dist. LEXIS 110425 (C.D. Cal. Oct. 15, 2008). Significantly, whether a predicate statute confers a private right of action is immaterial to determining whether the plaintiff can state a claim under the UCL. The UCL itself confirms the right to seek and obtain injunctive and other equitable relief for any violation. *Stop Youth Addiction supra* at 562. *See also Paulus v. Bob Lynch Ford, Inc*., 139 Cal.App.4th 659, 677 (2006).

Courts have defined "unfair" broadly in order to provide the courts with the maximum discretion to prohibit new schemes to defraud. *Motors, Inc. v. Times Mirror Co.*, 102 Cal. App. 3d 735, 740, 162 Cal. Rptr. 543, 546 (1980); Thus, a practice may be "unfair" – and violate the

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

CASE NO. C08-02958 TEH          5          PLAINTIFFS' OPPOSITION TO DEFENDANTS'
5033.001/00060933                                          MOTION TO DISMISS

UCL – even if it not unlawful.  *Cel-Tech supra* at 180; *Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 210 (1983).  Where the target of the business practice is a vulnerable sub-group, like the students in this case, unfairness must be judged by the impact on that group, not just the reasonable consumer.  *See Livie v. Proctor & Gamble Co.*, 105 Cal. App. 4th 496, 506-07 (2003).

"[T]he fraudulent business practice prong of the UCL has been understood to be distinct from common law fraud." *Tobacco II Cases supra* at 312; *Korea Supply Col. v. Lockheed Martine Corp.,* 29 Cal. 4th 1134, 1151 (2003).  Whereas common law fraud requires a knowingly false statement, actual deception and damages, "'[n]one of these elements [is] required' to prove UCL or FAL liability." *Id.*  Instead, such a liability has always been, and continues to be, established with facts showing only that 'members of the public are likely to be deceived.'" *Tobacco II supra*  at 312.

The UCL's focus is on the defendant's conduct, rather than the plaintiff's damages, in service of the statute's larger purpose of protecting the general public against unscrupulous business practices.  *Id.*  To achieve its goal of deterring unfair business practices in an expeditious manner, the Legislature limited the scope of the remedies available under the UCL to equitable relief (restitution and injunctive relief). *Id.*.  Compensatory tort damages are not available under the UCL.  *California for Disability Rights v. Mervyn's,* 39 Cal. 4th 223, 232 (2006). The UCL imposes strict liability.  It is not necessary to show that the defendant intended to injure anyone. *South Bay Chevrolet v. GMAC* 72 Cal.App.4th 861, 877 (1999).  Once a violation has been established there is no need for proof of reliance, causation or damages.  *Cortez v. Purolator Air Filtration Prods. Co., Inc.*, 23 Cal. 4th 163, 181, (2000); *Paduano v. American Honda Motor Co., Inc.*, 2009 Cal. App. LEXIS 18, 23-24 (2009).

**B.       The FTC Holder Rule – An Overview**

In 1976, the Federal Trade Commission promulgated 16 C.F.R. part 433, intended to address the problem of consumer liability to financial institutions that finance the purchase of defective goods or services in consumer credit transactions.  As explained in the FTC's *Staff Guidelines on*

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

CASE NO. C08-02958 TEH
5033.001/00060933

6

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

*Trade Regulation Rule Concerning Preservation of Consumers' Claims and Defenses* ("FTC Guidelines") the purpose of the regulation was to make it impossible "for a seller to arrange credit terms for buyers which separate the consumer's legal duty to pay from the seller's legal duty to keep his promises."  The FTC Guideline*s* leave no doubt that a lender's participation in a seller's violation of the rule thwarts the very purpose of the rule which is to preserve consumers' claims and defenses against the creditor:

> [The Holder Rule] is designed to prevent the widespread use of credit terms which compel consumers to pay a creditor even if the seller's conduct would not entitle the seller to be paid. It is designed to preserve the consumer's legally sufficient claims and defenses so ***that they may be asserted to defeat or diminish the right of a creditor to be paid***, where a seller who arranges financing for a buyer fails to keep his side of the bargain. [41 Fed**.** Reg**.** 20022-27 (May 14, 1976) (emphasis added)]

The FTC Guidelines also emphasize that the Holder Rule was enacted because lenders are in a better position to evaluate the sellers they team up with and that it makes more sense to shift the risk of loss to them as opposed to the consumer who has little means to investigate.

The Holder Rule contains two subsections.  Part (a) prohibits a seller from taking or receiving a consumer credit contract which fails to contain the required Notice.  Part (b) prohibits a seller from accepting the proceeds of a purchase money loan unless all consumer credit contracts made in connection with the transaction contains the Notice.  16 C.F.R. 433.2.  Unlike part (a) which does not by its express terms introduce a third party lender into the equation, part (b) specifically contemplates a tripartite relationship: the consumer, the seller who accepts the purchase money loan proceeds and, by definition, the purchase money lender who makes the loan and thus facilitates the seller's acceptance of the loan proceeds. KeyBank acknowledges, as it must, that the Holder Rule applied to SSH and applied to the loans made on behalf of SSH's students and does dispute that SSH violated the Rule.  KeyBank Memorandum in Support of Motion to Dismiss (hereinafter "KeyBank Memo."), p. 10:8-9.

/ / /

Pinnacle Law Group llp
425 California Street
Suite 1800
San Francisco, CA 94104
(415) 394-5700

CASE NO. C08-02958 TEH          7          PLAINTIFFS' OPPOSITION TO DEFENDANTS'
5033.001/00060933                                                MOTION TO DISMISS

C.     **Plaintiffs have Adequately Alleged that KeyBank Engaged in *Unlawful* Conduct Under the UCL by Violating both Subsections of the Holder Rule**

1.     **KeyBank *Directly* Violated the Holder Rule (First and Second Claims for Relief)** [6]

KeyBank tries to dodge Plaintiffs' UCL claim with four arguments, one more meritless than the other: 1) The Holder Rule does not create a private right of action; 2) Plaintiffs fail to allege the underlying fraudulent conduct of SSH that the Holder Rule is intended to address 3) Plaintiffs cannot have the Notes re-written to include the Holder Rule and 4) the Rule does not apply to creditors even if the Notice is intentionally omitted from the transaction documents by design and with the creditor's knowledge. *See* KeyBank Memo., pp 8-11. The first three arguments reflect KeyBank's fundamental misunderstanding of how the UCL operates (and mischaracterizes what Plaintiffs seek in this case) and the last argument ignores several compelling cases that directly contradict KeyBank's position.

Again, one of the most salient features of the UCL is that it allows plaintiffs to "borrow" violations of other laws – even ones that a UCL plaintiff could not rely on directly – as the predicate for the UCL violation.  .  Thus, the fact that the Holder Rule – a federal consumer protection regulation that applies to all business[7] – does not provide an independent private right of action is legally irrelevant. *See Stop Youth Addiction, supra,* at 562, 565-567.

The UCL is a strict liability statute.  Once a violation of the predicate law is established, that *a fortiori* constitutes a violation of the UCL.  The court then moves on to the remedy for the violation. *Cortez supra* at 181.  Thus, Plaintiffs need only allege and prove that KeyBank violated the UCL by either omitting the Notice from the Notes or providing SSH the loan proceeds in violation of the Holder Rule.  Plaintiffs need not allege or prove reliance or damages resulting from SSH's misconduct.

---

[6] The caption page of the Complaint mistakenly identifies the Second Claim for Relief as being brought under the fraud prong of the UCL.  The Claim for Relief itself properly states that it is based on the unlawful prong.

[7] KeyBank does not cite, because it cannot cite, any case that has held the Holder Rule does not apply to an otherwise applicable transaction simply because the creditor is a National Bank.  If Congress, the FTC, OCC and FDIC intended that the Rule not apply to National Bank one of them presumably would have said so at some point over the past 35 years.

Pinnacle Law Group llp
425 California Street
Suite 1800
San Francisco, CA 94104
(415) 394-5700

CASE NO. C08-02958 TEH                    8               PLAINTIFFS' OPPOSITION TO DEFENDANTS'
5033.001/00060933                                                           MOTION TO DISMISS

1    KeyBank's argument that Plaintiffs must plead and prove the same facts establishing

2    SSH's fraud that they would have had to allege if SSH and KeyBank included the Holder Rule in

3    the Note or Service Agreement seeks to have this put KeyBank in no worse position than it would

4    have been had it complied – and assured SSH's compliance – with the Rule. Giving creditors and

5    sellers a "free pass" to violate the Holder Rule is directly contrary to the remedial purpose of both

6    the UCL and the Rule.  If the worst consequence a creditor has to face for ensuring the Notice is

7    omitted from the transaction documents is defending  the same claims it would otherwise have

8    had to defend had the Notice been included, there is no downside to the creditor of making sure

9    the Notice is omitted in every transaction.

10       KeyBank relies heavily on several "hometown" cases for its assertion that the *raison' etre*

11   of the rule – holding creditors accountable for the misconduct of their affiliated sellers – can be

12   circumvented simply by omitting the Notice from the transaction documents. To be sure, Ohio

13   courts have uniformly bought the argument that the Holder Rule applies to creditors only if it is

14   included in the transaction document[8]  Apart from these few cases, Plaintiffs have not found any

15   other case where compliance with a law designed to protect the public from fraud and deception

16   has been construed as being "voluntary"; i.e., inapplicable to targets of its intended reach simply

17   because the target decided to not abide by it and actively assisted others in violating it.

18       KeyBank's argument has not faired well outside of Ohio and has been soundly rejected in

19   several cases in which the Holder Rule violation was, as here, a predicate violation of a state

20   consumer protection statute.  In *Gonzalez v. Old Kent*, 2000 U.S. Dist. LEXIS 14530 (E.D. Penn.

21   2000) the District Court, also in the context of a 12(b)(6) motion to dismiss, flatly rejected the

22   same argument KeyBank makes here:

23           [P]laintiff clearly has the high ground on this issue.  Assuming, as we do for purposes of a
24           12(b)(6) Motion, that the Holder Rule should have appeared somewhere in the collection
             of documents that the plaintiff signed, and assuming further that this language would

25   _____
     [8] *Abel v. KeyBank USA, N.A.,* 2003 U.S. Dist. LEXIS 27175 (N.D. Ohio 2003); *Blanco v.*
     *KeyBank USA, N.A.,* Case No. 1:04cv230-KMO (N.D. Ohio 2008); *Hanlin v. Ohio Builders and*
26   *Remodelers, Inc.,* 196 F. Supp. 2d 572 (S.D. Ohio 2001); *Pratt v. North Dixie Mfgd. Housing,*
     *Ltd.,* 2003 Ohio App. LEXIS 2195 (Ohio Ct. App. 2003). As discussed below, these cases
27   underscore why dismissing this case on the forum section clause or choice of law clause is
     improper: Sending this case back to Ohio or applying Ohio law here will sound the death knell for
28   a case involving only California residents and unlawful, unfair and fraudulent conduct committed
     against them in only in California.

CASE NO. C08-02958 TEH                           9                PLAINTIFFS' OPPOSITION TO DEFENDANTS'
5033.001/00060933                                                              MOTION TO DISMISS

have, at least, given plaintiff a right to offset against monies claimed by Old Kent the value of any claims plaintiff may have against Quality, ***it would turn the law on its head to allow Old Kent to avoid the consequences of this language by its own failure*** -- alleged by the plaintiff to be an illegal failure -- to include the Holder Rule Notice in the loan documents. [*Gonzalez* at 13. [Emphasis Added]

In *Iron & Glass Bank v. Franz*, 9 Pa. D. & C.3d 419, 428-430 (Pa. C.P. 1978) the court held that borrowers can use the Holder Rule as a predicate violation under Pennsylvania's unfair competition law where, as here, the lender knowingly funded a transaction that violated the Holder Rule.  *See also Heastie v. Community Bank of Greater Peoria,* 727 F. Supp. 1133, 1138-39 (N.D. Ill. 1989) (noting that Illinois' unfair competition law has a broader reach than the Holder Rule).  As the West Virginia Supreme Court stated in construing a state law that incorporated the FTC Holder Rule, without such a rule a financial institution could ''run in effect a 'laundry' for 'fly-by night' retailers.'' *McGraw v. Scott Runyan Pontiac-Buick, Inc*., 461 S.E.2d 516, 526 (W. Va. 1995).

KeyBank seeks to have this Court endorse the Ohio decisions that circumvent the Holder Rule in a way that will provide an imprimatur for manipulation of the Rule by those doing business in California – and with perverse results: The creditor will be *less* accountable if it intentionally violates, or aids the seller in violating, the law than by compliance with an undeniably important federal regulatory scheme.  This bizarre consequence is of the ilk eschewed by the Court in *Cuomo supra,* where the Court observed, "To demonstrate the binding quality of a statute but deny the power of enforcement involves a fallacy made apparent by the mere statement of the proposition, for such power is essentially inherent in the very conception of law." *Cuomo supra* at, 129 S. Ct. at 2717-2718 (citations omitted).

Plaintiffs have also properly alleged valid UCL claims for relief against KeyBank for its direct violation of part (b) of the Holder Rule.  The Complaint alleges that SSH's acceptance of millions of dollars in purchase money loan proceeds given to it by KeyBank was an "unfair and deceptive act" under part (b) of the Rule because its Service Contracts did not contain the required Notice. (TAC ¶¶ 11, 49)  The Complaint also alleges that KeyBank knew SSH was committing an unfair and deceptive act – and in fact ensured that SSH did so - by intentionally omitting the Notice from the Service Contracts.  (TAC ¶¶ 25, 49, 50, 70).  SSH's violation could

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

CASE NO. C08-02958 TEH                                    10                    PLAINTIFFS' OPPOSITION TO DEFENDANTS'
5033.001/00060933                                                                                      MOTION TO DISMISS

not have occurred but for KeyBank's providing the loan proceeds.  This is a direct violation of the unlawful prong of the UCL.

### 2. KeyBank *Indirectly* Violated the Holder Rule (Third and Fourth Claims for Relief)

Even if KeyBank's conduct is not held to be a direct violation of Holder Rule, under well-settled aiding and abetting principles Plaintiffs have stated a valid Claim for Relief against KeyBank for indirectly violating both parts of the Rule.  In California, liability may be imposed on one who aids and abets the commission of an intentional wrong if the person 1) knows the other's conduct constitutes a breach of duty and 2) gives substantial assistance or encouragement to the other to so act.  *Casey v. U.S. Bank National Ass'n, 127 Cal.App.4th 1138, 1144 (2005)*.  To satisfy this test a defendant must have "actual knowledge of the specific primary wrong the defendant substantially assisted." *Id. at 1145*.

As to part (a), Plaintiffs allege in detail how KeyBank had actual knowledge that SSH's Service Contract did not contain the Notice and why it assisted SSH's taking/receiving consumer credit contracts which lacked the Holder Rule (i.e., the Service Contract) by funding the loans that enabled the contracts.  (TAC ¶¶ 25, 49, 50, 75)  As to SSH's part (b) violation, Plaintiffs allege that even though KeyBank ensured that the Service Contracts did not contain the Notice, KeyBank nevertheless funded the loans and in doing so substantially assisted SSH in "accepting purchase money loan proceeds" in violation of the Rule.  (TAC ¶ 80)  In short, Plaintiff has adequately pled that KeyBank knew of SSH's wrongdoing and has articulated with specificity KeyBank's role in SSH's Holder Rule violation. *C.f. Marcelos v. Dominguez*, 2008 U.S. Dist. LEXIS 91155, 27-30 (N.D. Cal. 2008); *see also, Brown v. LaSalle Northwest Nat'l Bank*, 820 F.Supp. 1078, 1081 (N.D. Ill. 1993) ("defendant can be part of a scheme to defraud consumers even if the regulation does not directly apply to lenders.")

KeyBank's liability is also cognizable under the "means and instrumentalities doctrine" under federal caselaw.  This doctrine is explained in *U.S.A. v. Trans Continental Associates,* 1997 U.S. Dist. Lexis 388 (Cal.N.D. 1997).

It has long been a part of the law that a person is a wrongdoer under the FTCA [Federal Trade Commission Act] "who so furnishes another with the means of consummating a fraud." *FTC v. Winsted Hosiery Co.*, 258 U.S. 483, 494, 66 L. Ed. 729, 42 S. Ct. 384

Pinnacle Law Group llp
425 California Street
Suite 1800
San Francisco, CA 94104
(415) 394-5700

(1992). Additionally, in *FTC v. Magaui Publishers, Inc*., 1991-1 Trade Cases p. 69, 425, 1991 WL 90895 (C.D. Cal. 1991), aff'd, 9 F.3d 1551 (9th Cir. 1993), the district court, whose opinion was upheld by the Ninth Circuit, held that "*one who places in the hands of another a means or instrumentality to be used by another to deceive the public in violation of the FTC Act is directly liable for violating the act.*" *See also*, *Regina Corp. v. FTC*, 322 F.2d 765, 768 (3d Cir. 1963) ("One who places into the hands of another a means of consummating a fraud or competing unfairly in violation of the Federal Trade Commission Act is himself guilty of a violation of the Act."). [*Trans Continental Associates* at 16, Emphasis Added] [9]

The means and instrumentalities doctrine is also recognized in the Staff Guidelines to the Holder Rule and has been articulated by the Federal Deposit Insurance Corporation ("FDIC"). Shortly after promulgation of the Holder Rule, the FDIC sent a letter to lenders advising them of their duties under the Holder Rule. In it the FDIC warned about a lender's liability for its *indirect* participation in the violation of the Holder Rule:

> While the Rule admittedly is aimed at sellers, there are situations where the Rule will also affect banks….***Banks should not accept any consumer paper which fails to contain the notice required of sellers, since they may be considered to be a participant in the seller's violation of the Rule.*** In addition, banks making purchase money loans should include the prescribed notice in their contracts.
>
> FDIC Law, Regulations, Related Acts, Section 6500, 7161.

In the face of this authority, KeyBank offers one anemic counter-argument: A UCL claim cannot be predicated on vicarious liability….A defendant's liability must be based on his personal participation in the unlawful practices and unbridled control over the practices that are found to violate [the UCL]. (KeyBank Memo. 19:19-20:13, citing *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n,* 494 F. 3d 788, 808 (9th Cir. 2007).) In the abstract, this statement of the law is correct. However, KeyBank ignores the allegations in paragraphs 32, 36 and 44-51 of the Complaint describing KeyBank's partnership relationship with SSH and how KeyBank participated in drafting the Service Contract, exercised control over the loan solicitation process and of course, completely controlled the disbursement of loan proceeds to SSH.

---

[9] *See also, Sheradsky v. West One Bank*, 817 F.Supp. 423 (S.D.N.Y. 1993) "Where the necessary intent is present, deliberate knowing participation in furthering a Ponzi-type scheme constitutes participation in a scheme or artifice to defraud violative of the federal mail fraud statute...If fraud is involved in a transaction, a financing entity which deliberately shuts its eyes to clues concerning the fraud may be unable to enforce promissory notes signed as a result of the fraud...The perceptions underlying the [Holder Rule] subjecting financiers recommended by a seller of consumer goods or services to claims or defenses the consumer might have against the seller, support this principle."

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

CASE NO. C08-02958 TEH
5033.001/00060933

12

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

The identical vicarious liability defense to a UCL action against a lender was recently rejected by Judge Alsup in *Marcelos, supra*.  In *Marcelos* the plaintiff alleged his mortgage broker committed fraud and the lender aided and abetted the broker's fraud thereby violating the fraudulent prong of the UCL.  Judge Alsup denied the lender's 12(b)(6) motion, distinguishing the case cited by the lender, *Emery v. Visa Int'l Service Ass'n*, 95 Cal. App. 4th 952, 960 (2002) on the ground that, as Plaintiffs allege here, the lender *did* have a relationship with the broker and as lender, ostensibly had at least some control over the distribution of loan documents.

### D.   Plaintiffs Have Adequately Alleged that KeyBank Engaged in *Unfair* Conduct Under the UCL

KeyBank's motion is silent as to Plaintiffs' Fifth Claim for Relief - KeyBank's violation of the unfair prong of the UCL.  The essence of this claim is that regardless of whether the Holder Rule applies to KeyBank, KeyBank acted "unfairly" as defined under the UCL by actively, knowingly and intentionally helping SSH violate the Rule.  As noted above, the "unfair" prong of the UCL is broader than the "unlawful" prong and therefore, even absent a violation of law, a plaintiff may prevail on a UCL claim if the defendant engaged in unfair practices.  *Cel-Tech supra* at 180.  Under any cognizable definition of an "unfair" practice in the context of consumer deception, Plaintiffs have alleged Keybank violated the UCL.

The California Supreme Court has directed courts to look to the jurisprudence arising under section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, for guidance in applying the unfair prong of the UCL.  *Davis v. Ford Motor Credit Co.,* 179 Cal.App.4th 581, 597-98 (2009) (*citing Cel-Tech supra* at 185).  The factors that define unfairness under the section 5 test are: (1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to the consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided.  Not even KeyBank will seriously dispute each of these factors exist here.  Plaintiffs have alleged substantial injury[10] and KeyBank

---

[10]  TAC ¶¶  32, 35, 36, 37, 38, 61, 66, 71, 76, 81, 86 and 93.

cannot identify any countervailing benefit to consumers or competition that outweighs the harm to Plaintiffs; and given KeyBank's historical intransigence in flaunting the Holder Rule, Plaintiffs could not have avoided KeyBank helping SSH violate the Rule.

Two recent cases from this District denying 12(b)(6) motions to dismiss underscore the breadth of the "unfair" prong. *See Zlotnik v. U.S. Bancorp* 2009 U.S. Dist. LEXIS 119857 (N.D. Cal. 2009) ("unfair violation alleged where 1) defendant encouraged consumers to obtain purchase money financing using complicated mortgage instruments that were difficult to understand and continued to do so despite complaints from consumers, and 2) defendant marketed loan products to consumers by emphasizing low initial monthly payments while misrepresenting the later increase); *see also In re NVIDIA GPU Litig*., 2009 U.S. Dist. LEXIS 108500, 36-37 (N.D. Cal) (Plaintiff consumer class stated an "unfair" prong claim where they alleged defendants acts were  substantially injurious to consumers because plaintiffs 1) purchased computers containing defendants defective products, 2) the defect resulted in display problems and system crashes, 3) were unable to use their computers for  their intended purposes, and 4) would not have purchased the computers had they known about the defect.)

Some cases have used other tests of "unfairness" which are equally satisfied by Plaintiffs allegations here. A business practice constitutes unfair competition "if it is forbidden by any law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made[,] or if it is unfair, that is, if it offends an established public policy or ... is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Falk v. General Motors Corp*.  496 F.Supp.2d 1088, 1098 (N.D.Cal.,2007) citing *People v. Duz-Mor Diagnostic Laboratory, Inc.,* 68 Cal.App.4th 654, 658 (1998) (internal quotations and citations omitted).  In light of the clear purpose of the Holder Rule, KeyBank's decades-long refusal to honor the Rule's protective umbrella for consumers and its particular disregard of the threat SSH posed to its borrowers as

1    alleged in the Complaint (TAC ¶¶ 52-61), KeyBank's conduct was certainly unethical,

2    oppressive, unscrupulous and substantially injurious to California consumers.

3        Finally, even if this court were to apply the more restrictive test of *Cel Tech* – that the

4    public policy which is a predicate to a consumer unfair competition action under the 'unfair'

5    prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions

6    (*see e.g.,  Smith v. State Farm Mutual Automobile Ins. Co*., 93 Cal. App. 4th 700, 720 n.23

7    (2001)) – Plaintiffs allegations meet this test handily. The public policy that is the predicate for

8    Plaintiffs' unfair UCL claim is that of protecting California consumers against unfair and

9    deceptive business practices.  The Holder Rule is not merely "tethered" to this important public

10   policy; it is the federal regulatory embodiment of that policy.

11
     **E.    Plaintiffs Have Adequately Alleged KeyBank Engaged in *Fraudulent* Conduct
12          Under the UCL by Violating both Subsections of the Holder Rule**

13       Pleading fraud in a federal action is governed by Federal Rule of Civil Procedure 9(b).

14   "'A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so

15   that a defendant can prepare an adequate answer from the allegations'." *Swingless Golf Club*

16   *Corp. v. Taylor*, 2009 U.S. Dist. LEXIS 120033, 11-12 (N.D. Cal. 2009) (citations omitted).

17       The TAC thoroughly details KeyBank's fraudulent practices and describes the "who,

18   what, where, when, and why" of KeyBank's fraud including its nefarious partnership with SSH

19   and its knowledge of SSH's skeletal facade.  (TAC ¶¶ 24-27, 39-61)   KeyBank ignores the

20   Complaint's particularized recounting of KeyBank's concealment of SSH's numerous red flags

21   and instead claims Plaintiffs have not pled the elements of misrepresentation, specifically

22   claiming Plaintiffs have failed to allege that KeyBank had a duty to the Plaintiffs.  In fact,

23   however, the Complaint pleads numerous facts supporting each of the elements necessary to

24   support a violation of the fraudulent prong of the UCL claim.

25       The fraudulent prong of the UCL is satisfied upon a showing the public is "likely to be

26   deceived." *Tobacco II  supra,* at 312.  Unlike common law fraud, a section 17200 violation can

27   be shown even without allegations of actual deception, reasonable reliance and damage."

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

CASE NO. C08-02958 TEH          15          PLAINTIFFS' OPPOSITION TO DEFENDANTS'
5033.001/00060933                                           MOTION TO DISMISS

1  *Blakemore v. Superior Court*, 129 Cal.App.4th 36, 49 (2005). Here, Plaintiffs have established a

2  UCL fraudulent prong claim by pleading facts showing that KeyBank concealed material facts.

3        Concealing material facts and/or failure to disclose constitutes fraud when the defendant

4  had exclusive knowledge of material facts not known to the plaintiff. *LiMandri v. Judkins,* 52

5  Cal.App.4th 326, 337 (1997)) "In order for non-disclosed information to be material, a plaintiff

6  must show that 'had the omitted information been disclosed, one would have been aware of it and

7  behaved differently'." *Id.* (citing *Mirkin v. Wasserman,* 5 Cal.4th 1082, 1093 (1993)).

8        The Complaint alleges detailed material facts that were exclusively within the knowledge

9  and control of KeyBank which KeyBank failed to disclose to its student borrowers before

10  disbursing their loan funds to SSH. *See* TAC ¶¶ 25-27, 37, 39, 51 – 59. "In order for non-

11  disclosed information to be material, a plaintiff must show that 'had the omitted information been

12  disclosed, one would have been aware of it and behaved differently'." *Falk supra* at 1095 (N.D.

13  Cal. 2007). Had KeyBank disclosed SSH's numerous red flags to Plaintiffs, Plaintiffs most

14  certainly would have acted differently and would not have entered into the Service Contracts with

15  SSH or would have terminated their enrollment with SSH.[11]

16      **F.**    **KeyBank's Effort to Avoid the UCL based on its Forum Selection and Choice**

17             **of Law Clauses Should Rejected**

18        KeyBank effectively seeks to immunize its UCL violations by asserting the Ohio forum

19  selection and choice of law clauses in the Notes.[12] Because Ohio law contravenes both

20  "fundamental" and "strong" California public policies, the clauses are unenforceable against

21  Plaintiffs. In the Ninth Circuit, federal law governs the validity of the forum selection clause.

22  *Manetti-Farrow, Inc. v. Gucci America, Inc*., 858 F.2d 509, 513 (9th Cir. 1988). Based on the

23  Supreme Court's directives in *The Bremen v. Zapata Off-Shore Co*., 407 U.S. 1, 15 (1972)

---

[11] Read as whole, the Complaint pleads SSH's fraud and misrepresentations, which if known,
would have caused any student to run from SSH. (*See also,* TAC ¶¶ 30-31, 33-34)

[12] This part of KeyBank's motion is brought under Rule 12(b)(3) and thus the Court may
consider evidence outside the pleadings and the pleadings need not be accepted as true as
required under Rule 12(b)(6). *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir.
1996). However, "[b]ecause a Rule 12(b)(3) motion can severely impact the plaintiff's forum
choices, the trial court must "draw all reasonable inferences in favor of the non-moving party and
resolve all factual conflicts in favor of the non-moving party." *Murphy v. Schneider Nat'l, Inc*.,
329 F.3d 1224, 1229 (9th Cir. 2003).

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

CASE NO. C08-02958 TEH              16              PLAINTIFFS' OPPOSITION TO DEFENDANTS'
5033.001/00060933                                         MOTION TO DISMISS

("*Bremen*"), the Ninth Circuit has said that a contractual choice-of-forum clause should be held unenforceable if "enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision". *Doe 1 v. AOL LLC,* 552 F.3d 1077 (9th Cir. 2009).

This Court has already ruled in this case that forcing Plaintiffs to arbitrate this case in Ohio under Ohio law pursuant to the Notes will violate the "fundamental" policy of California that bars arbitration of injunctive relief claims in consumer class actions. (Order Denying Motion to Compel Arbitration ("Order") p. 10, ECF Docket No. 81). Under the "law of the case" doctrine and *Bremen*'s "prior judicial decision" language, the Court's analysis should end here.[13]/[14] If the Court is inclined to look for additional grounds, however, there are several other "fundamental" and "strong" policies California that will be contravened if the forum selection and choice of law clauses are enforced here. As discussed at length in Plaintiffs' brief in opposition to KeyBank's Motion to Compel Arbitration[15] these include such policies that 1) favor consumer class actions, 2) prohibit class action bans in consumer adhesion contracts like the Note, and 3) underlie the statutory reciprocity for contractual attorneys fees in California Civil Code section 1717.

In opposition to KeyBank's motion to compel arbitration, Plaintiffs argued that applying Ohio law would contravene a "fundamental" policy of the UCL that has long allowed consumers

---

[13] The law of the case doctrine precludes a court from reconsidering an issue that it has already resolved (here, that claims for injunctive relief under the UCL is a "fundamental" California public policy). Issues that a district court determines during pretrial motions become law of the case. *United States v. Phillips*, 367 F.3d 846, 856 (9th Cir. 2004) (footnotes omitted). None of the grounds for departing from this rule exist here. *Flintkote Co. v. General Accident Assur. Co.*, 2009 U.S. Dist. LEXIS 100056, 11-12 (N.D. Cal. Oct. 26, 2009)

[14] KeyBank's motion to dismiss on the ground that its choice of law clause purports to mandate that Plaintiffs' claims be decided under Ohio law, fails for the same reason. The Court's order denying KeyBank's motion to dismiss expressly concluded California law must apply under Ninth Circuit choice of law analysis. (Order, p. 11, ECF Docket No. 81); *Doe 1 v. AOL, LLC* 552 F.3d 1077, (9th Cir. 2009); *Davis v. Chase* 299 Fed.Appx. 662 (9th Cir. 2008), and *Hoffman v. Citibank,* N.A., 546 F.3d 1078, 1083 (9th Cir. 2008). *See also Van Slyke v. Capital One Bank*, 503 F.Supp.2d 1353 (N.D.Cal. 2007); Plaintiffs'/Appellees' Ninth Circuit Response Brief, pps. 10-25 (Ex. A to Plaintiffs' concurrently filed Request for Judicial Notice).

[15] Plaintiffs submit herewith a formal request for Judicial Notice of the Opposition, other filed pleadings and Plaintiffs' Ninth Circuit Response Brief.

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

CASE NO. C08-02958 TEH
5033.001/00060933

17

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

1  to sue banks doing business here because the Ohio law expressly bars consumer actions against

2  financial institutions. [ECF Docket No. 67, pps. 7-8]  This Court, however, declined to make such

3  a determination because Plaintiffs failed to provide adequate authority.  Order, 8:17-18 [ECF

4  Docket No. 81] Plaintiffs now provide two recent cases which, using their analytical approach,

5  compel the conclusion that applying the Ohio choice-of-law provision will contravene a

6  fundamental policy of California of allowing consumers to sue banks for unlawful, unfair and

7  fraudulent business practices.

8          In *Cardonet, Inc. v. IBM Corp*., 2007 WL 518909 (N.D. Cal. 2007) and *It's Just Lunch

9  Int'l LLC v. Island Park Enter. Group, Inc*., 2008 U.S. Dist. LEXIS 89194, 7-9 (C.D. Cal. 2008)

10  ("*IJL*"), both courts were squarely faced with the question of whether a UCL claim implicated a

11  "fundamental" California policy which would be contravened by applying another state's law

12  (New York and Nevada, respectively). Both courts held that to answer this question one must

13  look at substantive predicate violation. Judge Whyte decided in *Cardonet* that the differences

14  between the UCL and New York's statute was insufficient to elevate the UCL to fundamental

15  policy status in that case.

16          In *It's Just Lunch*, Judge Phillips also looked to the predicate violation alleged by plaintiff.

17  After noting that there is no "bright-line" definition of a "fundamental policy" and relying on

18  comment g to Section 187 of the *Restatement Second of Conflict of Laws* and two prior cases

19  involving the California Franchise Investment Law (CFIL) the court observed that the language

20  of the UCL "hews close to the spirit of a fundamental policy in Restatement 187 comment g." *Id*.

21  at 9.  However, because the counterclaimant (the party which sought to establish the fundamental

22  policy) failed to state with any precision which of the alleged actions or violations were

23  predicates for the UCL claim, the court ruled they failed to sustain their burden of proving under

24  the facts alleged that the UCL embodies a fundamental policy in California. Significantly for this

25  case, however, the court determined that the CFIL does embody a fundamental California policy

26  because it "[p]rotects franchisees against franchisors who may have superior bargaining power"

27  and was "'enacted to protect the statute's beneficiaries from deceptive and unfair business

28  practices'".  *Id.* at 8-9 citing *America Online, Inc., v. Superior Court*, 90 Cal. App. 4th 1, 11

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

CASE NO. C08-02958 TEH
5033.001/00060933

18

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

1   (2001).

2          Here, Plaintiffs clearly allege KeyBank's UCL violation is predicated on its knowing and

3   intentional violation of the Holder Rule - a federal consumer protection regulation that defines a

4   specific unfair and deceptive act or practice and which is expressly designed to protect consumers

5   against creditors who, because of their affiliation with, but transactional separation from the

6   seller, are in a far stronger position than the consumer.  16 C.F.R. § 433.2.  Both the CFIL and the

7   Holder Rule, therefore, were intended and designed to protect their respective beneficiaries from

8   unfair and deceptive acts and practices.  *See Bencharsky v. Cottman Transmission Systems, LLC,*

9   625 F.Supp.2d 872, 879 and 16 C.F.R. § 433.2.  To conclude, as did *Its Just Lunch*, that a law

10  (the CFIL) which protects sophisticated franchisees from deceptive and unfair business practices

11  is "fundamental," but California's most potent consumer protection law and a federal consumer

12  protection regulation are not, turns both the law and logic on their head.  At bare minimum the

13  UCL embodies a "strong" (as used in *Bremen*) policy protecting consumers' rights against banks.

14         An otherwise valid forum selection clause will not be enforced if it was obtained as a

15  result of overreaching by a party with overwhelming bargaining power who seeks to enforce it.

16  *Nagrampa v. MailCoups, Inc.,* 469 F.3d 1257, 1287 (9th Cir. 2006) citing *Mitsubishi Motors*

17  *Corp. v. Soler Chrysler-Plymouth,* 473 U.S. 614, 632 (1985).  One of the hallmarks of

18  overreaching and unequal bargaining power is the adhesion contract - "a standardized contract

19  form offered to consumers of goods and services essentially on a 'take it or leave it' basis,

20  without affording the consumer a realistic opportunity to bargain, *and under such conditions that*

21  *the consumer cannot obtain the desired product or service except by acquiescing to the form of*

22  *the contract."* [Citation omitted]. The distinctive feature of an adhesion contract is that the

23  weaker party has no choice as to its terms. [Citation omitted].  *Bernstein v. GTE Directories*

24  *Corp.,* 827 F.2d 480, 481-482 (9th Cir. 1987) (emphasis added).

25         Plaintiffs' opposition to KeyBank's Motion to Compel Arbitration and its supporting

26

27

28

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

CASE NO. C08-02958 TEH          19          PLAINTIFFS' OPPOSITION TO DEFENDANTS'
5033.001/00060933                                              MOTION TO DISMISS

declarations[16] set forth in great detail how and why the Notes are a textbook adhesion contracts. The evidence also shows how KeyBank used its partnership with SSH and its overwhelming bargaining power to solicit loans to California residents while getting them to agree that they would have to travel to Ohio to defend their rights as California consumers under Ohio law. Under these factual circumstances and under controlling caselaw, the forum selection clause should not be enforced.

**G.      KeyBank's Effort to Avoid the UCL based on Federal Preemption Should be Rejected**

KeyBank's argument that the National Bank Act ("NBA") and OCC regulations preempt application of the UCL is KeyBank's "Hail Mary".  KeyBank, however, cites no case – because there is none – that has held or even hinted that a state consumer protection statute of general application, the violation of which is predicated on a federal consumer protection regulation of general application, is preempted by NBA.  To the contrary, this Court's decision in *Jefferson v. Chase Home Finance supra* and the Supreme Court's discussion in *Cuomo supra,* both of which KeyBank all but ignores, compel the conclusion that Plaintiffs' claims in this case are not preempted.

In *Jefferson, supra,* this court explained why laws of general application are not preempted:

> But Plaintiff asserts only that Chase made misrepresentations about how it would apply prepayments, in violation of the CLRA and the False Advertising Act, and therefore the UCL. ***The Court holds that such laws of general application, which merely require all businesses (including banks) to refrain from misrepresentations and abide by contracts and representations to customers do not impair a bank's ability to exercise its lending powers.***  They only "incidentally affect" the exercise of a Bank's powers, do not fall into the enumerated categories of § 34.4(a), and are therefore not preempted.

> *Id*. at 10 (emphasis added).

> *Cuomo* provides strength and support for this conclusion.  After *Cuomo,* the presumption

---

[16] [ECF Docket Nos. 67 & 69; Plaintiffs Request for Judicial Notice ("RFJN")] As detailed in the Opposition to the Motion to Compel ("Opposition"), Plaintiffs also confirm that KeyBank's class action ban contained within its adhesive Notes, contravenes a fundamental California Policy.  *See* Opposition at pps. 9-11, 16-17.  The Opposition also explains that Ohio law contravenes California's fundamental policy of the reciprocity of attorneys' fees.  (Opposition at 11-12).  *See also,* Plaintiffs' Ninth Circuit Response Brief, (Ex. A to RFJN) at 25-26.

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

CASE NO. C08-02958 TEH
5033.001/00060933

20

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

1   against federal preemption should be applied against KeyBank because Plaintiffs' UCL

2   enforcement claims arise in a field traditionally regulated by the states in furtherance of their

3   historic police powers. Because neither the UCL nor the Holder Rule are directed particularly at

4   the business of banking and in light of the Courts' discussions in *Cuomo, Watters v. Wachovia*,

5   550 U.S. 1, 127 S.Ct. 1559, 1567 (2007), *Wyeth v. Levine*, 555 U.S. ---, 129 S.Ct. 1187, 1194-95

6   (2009), *Altria Group, Inc. v. Good*, 129 S.Ct. 538, 543 (2008) and *Bronco Wine Co. v. Jolly*

7   (2004) 33 Cal.4th 943, 956-57 the presumption against federal preemption of state laws should

8   apply here.  (*But see, Rose v. Chase Bank USA, N.A., 513 F.3d 1032, 1037 (9th Cir. Cal. 2008)*

9   *citing Wells Fargo Bank N.A. v. Boutris,* 419 F.3d 949, 959 n.13 (9th Cir. 2005) ( both pre-dating

10  *Cuomo*)).

11      Subject to the presumption against preemption of traditional state laws, Congress has the

12  power to preempt state law in one of three ways:  (1) when federal legislation has fully occupied

13  a subject matter field (field preemption); (2) when Congress explicitly preempts state law in a

14  statute's language (express preemption); or (3) when there is a conflict between federal and state

15  law (conflict preemption).  *Engine Mfrs. Ass'n v. South Coast Air Quality Management Dist*.,

16  498 F.3d 1031, 1039 (9th Cir. 2007). None of these apply to Plaintiffs claims here.

17      First, there is no field preemption here.  "Federally chartered banks are subject to state

18  laws of general application in their daily business to the extent such laws do not conflict with the

19  letter or the general purposes of the NBA."  *Watters supra* at 127 S.Ct. 1567; *see also Cuomo,*

20  *supra* at 2720-2721 (holding that OCC regulation purporting to pre-empt state law enforcement

21  is not a reasonable interpretation of the NBA). Second, not even KeyBank asserts the NBA

22  *expressly* preempts general application state consumer protection enforcement statutes such as

23  the UCL. After *Cuomo,* this argument is a dead end.[17]

24      Left solely with conflict preemption, KeyBank tries to manufacture a conflict between

25  the UCL/Holder Rule matrix asserted by Plaintiffs here and the OCC regulations it seeks to hide

---

26  [17] Although KeyBank acknowledges that *Cuomo* held that states have the right through their
    attorneys general to *enforce* their laws by judicial action as distinct from exercising "visitorial
27  powers", KeyBank misstates the effect of Prop 64 on Plaintiffs' ability to act under the UCL as a
    private attorney general.  Prop 64 did not eliminate the private attorney general doctrine; rather, it
28  imposed a standing requirement on the *named* plaintiffs who now must have suffered actual
    injury as a prerequisite for suing in that capacity on behalf of others.  *See Tobacco II* at  314.

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

CASE NO. C08-02958 TEH          21          PLAINTIFFS' OPPOSITION TO DEFENDANTS'
5033.001/00060933                                        MOTION TO DISMISS

behind, specifically 12 C.F.R. 7.4008 (d)(2).  In *Davis v. Chase*, 650 F. Supp. 2d 1073, 1079

(C.D. Cal. 2009) the court articulated a framework for analysis of section 7.4008 preemption.

First, consistent with the general principles of NBA preemption, a state law will preempted if it

"obstruct[s], impair[s], or condition[s] a national bank's ability to fully exercise its federally

authorized non-real estate lending powers.  Second §7.4008(d)(2) sets out specific laws that are

preempted. Third. § 7.4008(e) provides guidance on subjects that are not preempted "to the

extent that they only incidentally affect the exercise of national banks' non-real estate lending

powers," such as contracts, torts, and criminal law

The United States Supreme Court has held that conflict preemption under the NBA exists

only when a state law "forbids, or [] impair[s] significantly the exercise of a power that Congress

explicitly granted."  *Barnett Bank of Marion Cty., N. A. v. Nelson*, 517 U. S. 25, 33.  To be

preempted, a state law must "significantly interfere" with the national bank's exercise of such

powers.  (*Id.*, citing *Anderson Nat'l Bank v. Luckett* (1944) 321 U.S. 233, 247-52.)  Only

significant impairment or outright obstruction of a bank's congressionally granted powers

provides the basis for finding conflict preemption.  *Barnett* makes clear that state laws are

preempted only when they create an "irreconcilable conflict" with federal statutes governing the

powers of national banks. *Barnett supra*  at 31.

Neither the UCL nor the Holder Rule directly controls national bank activity.  Not even

KeyBank suggests that either the Holder Rule or the UCL themselves inhibit banks from

negotiating or collecting on promissory notes.  Complying with the Holder Rule may have the

incidental effect of encouraging all lenders -- national or otherwise -- to engage in a closer risk

analysis before accepting promissory notes or other consumer credit contracts.  However, that is

a far cry from "obstructing, impairing, or conditioning a national bank's ability to fully exercise

its powers."  If, as KeyBank seems to urge, NBA preemption were interpreted to include any

action that merely burdens the bank's business operations, it would also invalidate countless

other state and local regulations.

Several well-established court decisions hold that federal bank law does not preempt

other state laws that incidentally affect national banks' business transactions.  *See, e.g., First*

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

CASE NO. C08-02958 TEH
5033.001/00060933

22

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

*Nat'l Bank v. Dickinson*, 396 U.S. 122 (1969) (finding that a Florida branch bank law applies to national banks); *Roth v. Delano,* 338 U.S. 226 (1949) (no interference with a national bank's federal functions result from a requirement that the bank make a report of unclaimed property to the state to permit the state to assert a right to such property under escheat laws); *First Nat'l Bank v. Drexler*, 184 So. 607 (La. App. 1938) (statute that authorized corporate officers to institute legal proceedings and to execute bonds in connection therewith is valid and applicable to national banks); *Peoples Sav. Bank v. Stoddard*, 359 Mich. 297, 102 N.W.2d 777 (1960) (no preemption of state antimonopoly action against national bank).

As these cases reveal, where, as here, a state law has only an incidental effect on the operation of a national bank, the NBA does not preempt the applicable state law.  "Incidentally" does not mean "de minimus."  Instead, a state law "incidentally" affects a national bank if it is not directed exclusively against it – that is, if it is a law of general applicability which governs all persons or entities, some of whom happen to include national banks.  *Jefferson supra, citing Gibson v. World Savings & Loan Assn* (2002) 103 Cal.App.4th 1291, 1303-04.)  *Hood v. Santa Barbara Bank & Trust*, 143 Cal.App.4th 526, 538-39; s*ee also* 12 C.F.R. § 7.4007(c)(1); *Davis v. Chase Bank, supra,* (concurring with *Jefferson*).  Because the UCL and the Holder Rule apply to all businesses operating in California, not merely to banks, they only incidentally affect the lending and collection functions of the bank and thus fall within the OCC's savings clause.

Although KeyBank acknowledges that the Holder Rule is a contractual term and that this case arises from a contract (KeyBank Memo. 11:3-4, 20:15) it fails to address that Plaintiffs' claims are protected by the preemption savings clause in the OCC regulations which explicitly provide that state laws governing contracts, torts, and consumer protection are areas of state law excluded from federal preemption where they only "incidentally" affect the bank's powers.  12 C.F.R. § 7.4008(c).[18]

---

[18]   12 C.F.R. § 7.4008(c) provides:

State laws on the following subjects are not inconsistent with the non-real estate lending powers of national banks and apply to national banks to the extent that they only incidentally affect the exercise of national banks' non-real estate lending powers: 1. Contracts; 2;  Torts; 8.  Any other law the effect of which the OCC determines to be incidental to the non-real estate lending operations of national banks or otherwise

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

CASE NO. C08-02958 TEH
5033.001/00060933

23

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

Cases considering whether the NBA and OCC regulations preempt UCL claims have tended to distinguish between those claims that 1) arise from generally-applicable duties such as contractual obligations and the duty to refrain from deceptive acts and 2) rest on alleged violations of statutes specifically aimed at NBA duties.  In the former case, courts have found no preemption either by applying general NBA preemption principles or by finding that § 7.4008(e) applies.  *Davis v. Chase supra*  (*citing Jefferson supra*);  *Smith v. Wells Fargo Bank, N.A.,* 135 Cal. App. 4th 1463, 1475-84 (2005) for the former, and *Rose supra,  Miller v. Bank of Am., N.A.,* 170 Cal. App. 4th 980, 989-90, (2009) and  *Montgomery v. Bank of Am. Corp.*, 515 F. Supp. 2d 1106 (C.D. Cal. 2007) for the latter.

The UCL cases KeyBank cites in its Opening Brief (*see* footnote 8 and pages 18 – 19) are all of the latter variety: *Rose supra* (predicate act violation under California Civil Code Section 1748.9 mandating certain disclosures on checks from credit card companies);  *Augustine v. FIA Card Servs., N.A.*, 485 F. Supp. 2d 1172, 1176 (E.D. Cal. 2007) (UCL claim challenging credit card interest rate increases and disclosures of the evaluation process used for retroactive rate increases);  *Martinez v. Wells Fargo Bank, N.A.*, 2007 U.S. Dist. LEXIS 58758 (N.D. Cal. July 31, 2007) (UCL claims predicated upon national bank's conduct and discretion in setting, charging, and disclosing settlement service fees which are expressly addressed by 12 C.F.R. § 7.4002).  In sharp contrast, Plaintiffs' claims invoke a federal consumer protection law that applies to all businesses and lenders in consumer credit transaction.

In the final analysis, none of the three grounds for federal preemption of Plaintiffs' claims exists here.

### H.    The Economic Loss Doctrine Does Not Apply to this Action

KeyBank's economic loss doctrine argument has no application here.  The economic loss doctrine is limited to breach of contract actions where a plaintiff also seeks tort damages.  *See Robinson Helicopter Co., Inc. v. Dana Corp.* (2004) 34 Cal.4th 979, 988.  This is not a breach of contract action.  This action seeks to remedy KeyBank's *violation of the law*.  Plaintiffs allege KeyBank violated all three prongs of the UCL – not by breaching a contract as KeyBank's claims

consistent with the powers set out in paragraph (a) of this section.

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

CASE NO. C08-02958 TEH          24          PLAINTIFFS' OPPOSITION TO DEFENDANTS'
5033.001/00060933                                                                MOTION TO DISMISS

in its Motion – but rather through KeyBank's violation of the Holder Rule (both directly and by aiding and abetting SSH's violation of the Rule) which in turn violates all three prongs of the UCL. As plaintiffs do not allege breach of contract and further do not allege the UCL predicate act was a breach of contract, the economic loss doctrine is inapplicable.

## V.   CONCLUSION

Key leads the pack of lenders that have fueled sham vocational schools to the enormous detriment of vulnerable students. Hiding behind fancy legal drafting Key has shifted the risk of seller's misconduct to consumers in direct violation of the Holder Rule. This is the action to put an end to this legal maneuvering.


DATED: February 8, 2010          PINNACLE LAW GROUP LLP



                                 By: */s/ Andrew A. August*
                                        Andrew A. August
                                        Kevin F.Rooney


                                 THE STURDEVANT LAW FIRM
                                 James C. Sturdevant
                                 Whitney Huston

                                 Attorneys for Plaintiffs

PINNACLE LAW GROUP LLP
425 CALIFORNIA STREET
SUITE 1800
SAN FRANCISCO, CA 94104
(415) 394-5700

CASE NO. C08-02958 TEH
5033.001/00060933

25

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS