1  TODD C. TORAL, State Bar No. 197706
   ttoral@nixonpeabody.com
2  STEPHANIE KARNAVAS, State Bar No. 255596
   skarnavas@nixonpeabody.com
3  NIXON PEABODY LLP
   One Embarcadero Center, 18th Floor
4  San Francisco, California 94111-3600
   Telephone: (415) 984-8200
5  Fax: (415) 984-8300

6  W. SCOTT O'CONNELL (*pro hac vice*)
   soconnell@nixonpeabody.com
7  COURTNEY Q. BROOKS, State Bar No. 215127
   cbrooks@nixonpeabody.com
8  NIXON PEABODY LLP
   900 Elm Street
9  Manchester, NH 03101-2031
   Telephone: (603) 628-4000
10 Fax: (603) 628-4040

11 Attorneys for Defendants
   KEYBANK, NATIONAL ASSOCIATION and
12 GREAT LAKES EDUCATIONAL LOAN SERVICES, INC.

13                         UNITED STATES DISTRICT COURT

14                       NORTHERN DISTRICT OF CALIFORNIA

15

| | |
|---|---|
| 16  MATTHEW C. KILGORE, individually and on behalf of all others similarly situated; WILLIAM BRUCE FULLER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>KEYBANK, NATIONAL ASSOCIATION, a national banking association organized under the laws of the United States of America and successor in interest to KEYBANK USA, N.A.; KEY EDUCATION RESOURCES, a division of KEYBANK, NATIONAL ASSOCIATION; GREAT LAKES EDUCATIONAL LOAN SERVICES, INC., a Wisconsin corporation; and DOES 1-25,<br><br>Defendants. | Case No. C08-02958 TEH ADR<br><br>**KEYBANK, NATIONAL ASSOCIATION'S AND GREAT LAKES EDUCATIONAL LOAN SERVICES, INC.'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**<br><br>Date:        March 29, 2010<br>Time:        10:00 a.m.<br>Courtroom:   Ctrm 12, 19th Floor<br>Judge:       The Hon. Thelton E. Henderson |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ....................................................................................................................... 1

    A. Plaintiffs' Claims Are Preempted by the National Bank Act and OCC Regulations Promulgated Thereunder ...................................................................... 1

    B. Plaintiffs Have No Predicate Violation Upon Which to Base a Section 17200 Claim ...................................................................................................................... 6

    C. Plaintiffs Fail to Plead Adequate Aiding and Abetting or Unfair Conduct By Helping SSH ...................................................................................................... 8

    D. Plaintiffs Fail to State A Claim Under the "Unfair" Prong ...................................... 10

    E. Plaintiffs' Fraud Claim Under Section 17200 Fails Because Defendants Did Not Conceal Material Facts ............................................................................. 10

    F. Plaintiffs Continue to Seek to Avoid Their Contractual Agreements By Bringing Suit In a Forum And Under Law Despite Their Express Contractual Obligations ......................................................................................... 11

III. CONCLUSION .................................................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Abel v. KeyBank USA, N.A.*,
  313 F. Supp. 2d 720 (N.D. Ohio 2004) ............................................................................ 6, 7

*Anderson National Bank v. Luckett*,
  321 U.S. 233 (1944) ................................................................................................................ 7

*Bank of Am. v. San Francisco*,
  309 F.3d 551 (9th Cir. 2002) ................................................................................................. 2

*Bartels v. Alabama Commercial College, Inc.,*,
  918 F. Supp. 1565 (S.D. Ga. 1995) ...................................................................................... 6

*Batchelder v. Kawamoto*,
  147 F.3d 915 (9th Cir. 1998) ............................................................................................... 11

*Cardonet, Inc. v. IBM Corp.*,
  2007 U.S. Dist. LEXIS 14519 (N.D. Cal. Feb. 14, 2007) ............................................... 11

*Circuit City Stores, Inc. v. Mantor,*
  335 F.3d 1101 (9th Cir. 2003) ............................................................................................. 12

*In re Crisomia*,
  No. 0035085, 2001 Bankr. L EXIS 1469, *12-13 (E.D. Pa. Aug. 21, 2001) ................. 6, 7

*Cuomo v. The Clearing House Ass'n, L.L.C.*,
  129 S. Ct. 2710 (Jun. 29, 2009) ............................................................................................ 4

*Ellis v. Pennsylvania Higher Educ. Assistance Agency,*
  Case No. CV-07-04498 DDP (C.D. Cal. Nov. 9, 2007) ................................................... 3

*Equal Opportunity Comm'n v. Waffle House, Inc.*,
  534 U.S. 279 (2002) .............................................................................................................. 11

*First Nat'l Bank v. Dickinson*,
  396 U.S.122 (1969) ................................................................................................................. 3

*Gonzalez v. Old Kent*,
  2000 U.S. Dist. LEXIS 14530 (E.D. Penn. 2000) ........................................................... 6, 7

*Heastie v. Cmty. Bank of Greater Peoria*,
  727 F. Supp. 1133 (N.D. Ill 1989) ....................................................................................... 7

*Jefferson v. Chase Home Finance*,
  2008 U.S. Dist. LEXIS 101031 (N.D. Cal. Apr. 29, 2008) ....................................................... 4

*Marcelos v. Dominquez*,
  2008 U.S. Dist. LEXIS 91155 (N.D. Cal. Jul. 18, 2008) ..................................................... 9, 10

*McKinney v. KeyBank U.S.A., N.A.*,
  5:06-CV-01335 SGC-JCR (C.D. Cal. Feb. 21, 2007) ............................................................ 12

*Medtronic, Inc. v. Lohr*,
  518 U.S. 470 (1996) ................................................................................................................ 2

*Murphy v. Schneider Nat'l, Inc.*,
  362 F.3d 1133 (9th Cir. 2003) .............................................................................................. 11

*Oestreicher v. Alienware Corp.*,
  502 F. Supp. 2d 1061 (N.D. Cal. 2007) ................................................................................ 12

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
  494 F.3d 788 (9th Cir. 2007) .................................................................................................. 8

*Roth v. Delano*,
  338 U.S. 226 (1949) ................................................................................................................ 3

*Silva v. E\*Trade Mortgage Corp.*,
  424 F. Supp. 2d 1315 (S.D. Cal. 2006) ............................................................................... 4, 5

*Wells Fargo Bank N.A. v. Boutris*,
  419 F.3d 949 (9th Cir. 2005) ................................................................................................... 3

*Williams v. Nat'l Sch. Of Health Tech., Inc.*,
  836 F. Supp. 273 (E.D. Pa. 1993) ........................................................................................... 7

**STATE CASES**

*A&M Produce Co. v. FMC Corp.*,
  135 Cal App. 4th 473 (Cal. Ct. App. 1982) .......................................................................... 12

*Fenning v. Glenfed, Inc.*,
  40 Cal App. 4th 1285 (Cal. Ct. App. 1995) ............................................................................ 5

*First Nat'l Bank v. Drexler*,
  184 So. 607 (La. App. 1938) ................................................................................................... 3

*Gibson v. World Savings and Loan Ass'n*,
  103 Cal. App. 4th 1291 (Cal. Ct. App. 2002) ......................................................................... 5

*Iron & Glass Bank v. Franz*,
  9 Pa. D. & C.3d 419 (Pa C.P. 1978) ....................................................................................... 7

*Nashville Elec. Serv. v. Stone*,
    1998 Tenn. App. LEXIS 474 (1998) .......................................................................... 7

*People Sav. Bank v. Stoddard*,
    359 Mich. 297 102 N.W.2d 777 (1960) .................................................................... 3

*Stirlen v. Supercuts, Inc.*,
    51 Cal. App. 4th 1519 (Cal. Ct. App. 1997) ........................................................... 12

**FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

12 C.F.R. § 7.4008(c) ............................................................................................................ 3

12 C.F.R. § 7.4008(d)(2)(iv) and (ix) ............................................................................... 2, 3

16 C.F.R. § 433 ...................................................................................................................... 7

16 C.F.R. § 433.1 .................................................................................................................. 1

40 Fed. Reg. 53, 530 (1975) ................................................................................................. 6

12 U.S.C. § 21 *et seq.* ......................................................................................................... 11

12 U.S.C. § 24 ....................................................................................................................... 7

15 U.S.C. 45(a)(1) ................................................................................................................. 3

## I.    INTRODUCTION

Plaintiffs Matthew C. Kilgore ("Kilgore") and William Bruce Fuller ("Fuller") (collectively "Plaintiffs") bring this lawsuit, now in its fourth iteration, against Defendants KeyBank National Association and Great Lakes Educational Loan Services, Inc. (collectively "Defendants" or "KeyBank") alleging six violations of California Business and Professions Code § 17200 (Section 17200).  Despite Plaintiffs' attempt to fashion new law and impose liability on KeyBank which neither Congress has provided nor has any court ratified, KeyBank's arguments are straightforward.

Because Plaintiffs' claims are premised on their Promissory Notes which mandate bringing suit in Ohio under Ohio law, their claims should be dismissed for failure to bring this action in the proper forum and for failing to state a claim based on improper application of California law. Furthermore, Plaintiffs' arguments in opposition to KeyBank's motion to dismiss should be rejected for:

- failing to recognize that the National Bank Act ("NBA") preempts their state law Section 17200 claims;
- failing to iterate a violation of Federal Trade Commission Holder Rule, 16 C.F.R. §433.1 *et seq.* ("the Holder Rule") as a predicate violation of a Section 17200 claim;
- failing to allege conduct of KeyBank which would make it liable for the alleged violations of Silver State Helicopter's ("SSH"); and
- misapplying California law to manufacture a conflict that would preclude application of the parties' bargained for choice of forum and choice of law.

Plaintiffs cannot escape the fundamental flaw that all of their Section 17200 claims are directed at KeyBank's core lending activities—e.g., the terms of credit, contents of their credit applications form and other loan documents.  Because these core banking activities are exclusively regulated by the Office of the Comptroller of the Currency ("OCC") regulations, Plaintiffs claims are preempted.

## II.   ARGUMENT

### A.    Plaintiffs' Claims Are Preempted by the National Bank Act and OCC Regulations Promulgated Thereunder

Plaintiffs' Section 17200 claims are preempted by the NBA and the Office of the Comptroller of the Currency ("OCC") regulations promulgated thereunder because they impermissibly alter the actual terms of the Promissory Notes to make KeyBank liable for the omissions, failures and violations of others. The terms under which a National Bank extends credit are core banking functions that cannot be altered by the application of state law. Plaintiffs seek to modify KeyBank's obligations and liability by forcing the Holder Rule Notice into promissory notes under the pretext of state law. The Plaintiffs' efforts to get indirectly that which cannot be gotten directly must fail. National Banks have no obligation to include the Holder Rule Notice in private non-guaranteed student loans and California law cannot be the basis to create any such obligation. Contrary to their assertions, Plaintiffs' claims are not related to laws of general application, but are specifically directed towards KeyBank's lending practices—an area exclusively reserved to the NBA. Plaintiffs' arguments are disingenuous at best, as the heart of their causes of action stem from KeyBank's lending practices, specifically related to KeyBank's terms of credit, disbursements and repayments, which are among the explicit items exclusively regulated by the OCC. *See* 12 C.F.R. §7.4008(d)(2)(iv) and (ix). Plaintiffs' claims against KeyBank should, therefore, be dismissed with prejudice.

Plaintiffs' argument that the presumption against federal preemption of state laws should not apply because the UCL and Holder Rule are not directed particularly at the business of banking, *see* Pl. Opp. Def. Mot. Dismiss (Docket No. 136) ("Opp.") at p. 21, is erroneous. A statute's pre-emptive effect is guided by the rule that "[t]he purpose of Congress is the ultimate touchstone in every pre-emption case." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (internal quotations omitted). The presumption against federal preemption which applies when Congress has "legislated . . . in a field which the States have traditionally occupied," *see id.*, does not apply to Plaintiffs' claims because regulation of lending practices of National Banks has been superceded by the clear and manifest purpose of Congress in enacting the NBA and the OCC regulations. While states may retain some power to regulate National Banks in areas such as contracts, debt collection, acquisition and transfer of property, taxation, zoning, criminal, and tort law, *see Bank of Am. v. San Francisco*, 309 F.3d 551,

559 (9th Cir. 2002), Plaintiffs' claims, according to their own interpretation, are not breach of contract claims.[1] Their Section 17200 claims are directly aimed at KeyBank's lending practices which are preempted under the doctrine of conflict preemption. The OCC regulations, which have been recognized as reasonable interpretations of statutory authority, *see Wells Fargo Bank N.A. v. Boutris*, 419 F.3d 949, 962 (9th Cir. 2005), explicitly regulate the conduct to which Plaintiffs' claims are directed. *See* 12 C.F.R. §7.4008(d)(2)(iv) and (ix).

Moreover, Plaintiffs specifically allege unlawful, unfair, and fraudulent business practices. *See* Compl., Counts I through IV. In further support of preemption of such claims, OCC regulations reflect an intent to preempt state unfair competition claims by requiring that "A national bank shall not engage in unfair or deceptive practices within the meaning of section 5 of the Federal Trade Commission Act, 15 U.S.C. 45(a)(1), and regulations promulgated thereunder in connection with loans made under this §7.4008." *See* 12 C.F.R. § 7.4008(c). The OCC reserved for itself the exclusive power to regulate National Banks with respect to alleged unfair and deceptive practices. *See also Ellis v. Pennsylvania Higher Educ. Assistance Agency,* Case No. CV-07-04498 DDP (C.D. Cal. Nov. 9, 2007), attached Exh. H to Brooks Decl. to Mot. Dismiss (Docket No. 132-2). Accordingly, Plaintiffs' Section 17200 claims against KeyBank for unfair or deceptive practices are preempted by the NBA and OCC regulations.[2]

---

[1] KeyBank disputes Plaintiffs' interpretation of their claims and continues to assert that Plaintiffs are trying to impermissibly turn what should be a breach of contract claim into a Section 17200 claim.

[2] Plaintiffs' attempt to avoid preemption by citing to cases where courts have allowed application of other state laws that incidentally affect National Banks' business transactions. These cases are inapposite as the state law at issue in those cases was not attempting to regulate the core banking functions solely governed by federal law. *See First Nat'l Bank v. Dickinson*, 396 U.S.122, 130 (1969) (operation of the national bank was specifically predicated on federal law that provided a condition that a "branch" may be established only when, where, and how state law would authorize a state bank to establish and operate such a branch); *Roth v. Delano*, 338 U.S. 226, 230-31 (1949) (finding that requiring bank to make report of unclaimed property to state did not interfere with federal statute); *First Nat'l Bank v. Drexler*, 184 So. 607, 611 (La. App. 1938) (no federal law existed requiring that any particular officer of the bank is alone authorized to sign and execute bonds for the issuance of conservative writs thus greater rights are extended to national banks by a state law and are not in any wise in conflict with the powers granted by the United States government); *People Sav. Bank v. Stoddard*, 359 Mich. 297, 336 102 N.W.2d 777, 797 (1960) (Michigan state law against monopolies did not conflict with federal law because Federal banking statute did not provide a scheme of regulation which includes either permission for or restriction against monopoly practices in banking).

Moreover, *Jefferson v. Chase Home Finance*, 2008 U.S. Dist. LEXIS 101031 (N.D. Cal. Apr. 29, 2008) and *Cuomo v. The Clearing House Ass'n, L.L.C.*, 129 S. Ct. 2710 (Jun. 29, 2009) do not compel the Court to adopt Plaintiffs' conclusion that their claims are not preempted based on their flawed reasoning that laws of general application, such as Section 17200, are not preempted because they apply to all businesses and do not impair a bank's ability to exercise its lending powers. *See* Opposition at p. 20 citing *Jefferson*, *supra* at *10. As KeyBank noted in its Motion, however, the holding of *Jeffesron* and *Cuomo* do not dictate such a conclusion. *See* Mot. Dismiss Third Am. Compl. (Docket No. 132) ("Motion") at p. 19 n. 14.

*Jefferson* involved state law claims, including one count under Section 17200, based on the defendant bank's failure to apply payments to the plaintiff's mortgage account and the bank's misrepresentations about its services. The Section 17200 claims in *Jefferson* generally alleged that the bank's acts were unlawful, deceptive, illegal or fraudulent. *Id.* at 14. In *Jefferson*, this Court (Henderson, J.) held that the plaintiffs' claims, as framed, were not preempted by federal law. In analyzing the Section 17200 claim, however, this Court specifically noted that the *Jefferson* plaintiff "does not claim that California consumer protection laws require [defendant bank] to service or process loans, include specific content in its disclosures, or handle repayment of loans in any particular manner -- requirements that would be preempted." *Id.* at *36 citing 12 C.F.R. § 34.4(a). The "core issue" in *Jefferson* was not "whether or when [the bank] is permitted to place payments in suspense accounts, but whether [the bank] misrepresented to customers what it would do with their payments." *Id.* at *36-37. Consequently, the "duty to refrain from misrepresentation falls on all business. It does not target or regulate banking or lending, and it only incidentally affects the exercise of banks' real estate lending powers." *Id.* at *37.

In contrast, Plaintiffs' claims against KeyBank are the terms of credit and the obligations created by the Promissory Notes. This situation is analogous to the plaintiffs' claims in *Silva v. E*Trade Mortgage Corp.*, 424 F. Supp. 2d 1315, 1317 (S.D. Cal. 2006). As this Court aptly recognized in *Jefferson*, the plaintiffs in *Silva* alleged the defendant lender did not refund a certain fee to the plaintiffs, even though the federal Truth in Lending Act ("TILA") required them to do so. Rather than suing under the TILA, plaintiffs in *Silva* alleged the TILA violations as predicate acts

1  supporting causes of action under Section 17200 and the Consumers Legal Remedy Act ("CLRA"),
2  claiming that the lender had misrepresented the plaintiff's legal rights and failed to disclose their right
3  to a refund of the fee. *Id.* at 1317. Similarly, Plaintiffs here allege a violation of the Holder Rule as
4  the predicate act supporting a cause of action under Section 17200.

5  Furthermore, the "savings clause" in the OCC regulation does not apply to Plaintiffs' claim
6  because their Section 17200 claims are directed at predicate acts which are specific to the lending
7  activities and "business of banking" reserved for regulation by federal law. In those cases where the
8  Section 17200 claims have not been preempted, *see e.g., Gibson v. World Savings and Loan Ass'n*,
9  103 Cal. App. 4th 1291 (Cal. Ct. App. 2002) and *Fenning v. Glenfed, Inc.*, 40 Cal App. 4th 1285
10 (Cal. Ct. App. 1995), plaintiffs alleged "predicate acts that were violations of the general legal duties
11 with which every business must comply." *Silva*, 421 F. Supp. at 1320. But in *Silva*, as here, the
12 Section 17200 claims involve duties under the OCC regulations which are specific to defendant's
13 lending activities, not general legal duties. *Id.* Thus, a state's provision of remedies for violation of
14 federal law amounts to a form of state regulation of the affected area, even if the state does not
15 impose any requirements beyond those provided by federal law. *Id.* "It becomes especially clear that
16 a state is regulating an industry—even if it does not impose additional substantive requirements
17 beyond federal law—if there are procedural differences between the state law and federal law, such
18 as more extensive remedies or a longer limitations period." *Id.*

19 The *Silva* court disagreed with the plaintiff's argument that the Section 17200 and CLRA
20 claims should not be preempted because they did not impose any substantive lending requirements on
21 the defendant, but simply enforced pre-existing federal requirements. *Id.* at 1318. The *Silva* court
22 found that the TILA itself had express regulations on the subject (that the fee must be refunded), and
23 that it had its own remedies. *Id.* at 1319-20. Thus, the *Silva* plaintiffs could not use state law to add
24 an additional remedy for the TILA violation where federal regulations explicitly preempted the field.
25 *Id.* at 1320, citing 12 C.F.R. § 560.2. Similarly, the OCC regulations at issue in this case have
26 express regulations on the terms of lending credit, disbursements, and payments and provide for
27 remedies against banks that fail to comply. Accordingly, Plaintiffs' Section 17200 claims are
28 preempted and should be dismissed.

### B. Plaintiffs Have No Predicate Violation Upon Which to Base a Section 17200 Claim

Plaintiffs' First and Second Claims for Relief must be dismissed for failure to state a claim. It is well-settled that the Holder Rule does not apply to the lenders of private student loans. The Holder Rule expressly places an obligation on the "seller," not the lender such as KeyBank, to include the necessary language in its promissory note. Indeed, the FTC considered and rejected a proposed amendment to the Holder Rule which would have made it an unfair or deceptive practice for either the seller or the lender to take or receive a credit contract without including the Holder Rule notice. *See* 40 Fed. Reg. 53, 530 (1975); *see also In re Crisomia*, No. 0035085, 2001 Bankr. LEXIS 1469, *12-13 (E.D. Penn. Aug. 21, 2001). Therefore, the Holder Rule remains on the books essentially unchanged from its original version, and therefore does not apply to lenders such as KeyBank. While Plaintiffs contend that this is unfair, a remedy for this situation lies with Congress and not this Court.

Plaintiffs are, in essence, asking this Court to impute the Holder Rule notice into their promissory notes with KeyBank. This Court would stand alone in reading this obligation into notes issued by National Banks.[3] Adopting Plaintiffs' theory would require KeyBank and all other National Banks operating in California to insert the Holder Rule notice into their promissory notes or risk liability under Section 17200. In this case, the NBA and the corresponding OCC regulations preempt Plaintiffs' claims because adopting Plaintiffs' theory of liability under Section 17200 interferes with, obstructs, and impairs KeyBank's ability to perform activities authorized under federal law. *See Abel v. KeyBank USA, N.A.*, 313 F. Supp. 2d 720, 727 (N.D. Ohio 2004) (preempting plaintiffs' state law claims under the Ohio Retail Installation Sales Act which contains a notice requirement similar to that in the Holder Rule).

The power to negotiate promissory notes and to lend money is one of the express powers

---

[3] This position is unsupported by case law, the law of contracts, and is an unlawful attempt to re-write the FTC Holder Rule itself. *See In re Crisomia*, 2001 Bankr. LEXIS 1469, *11 n.8 -9 (distinguishing *Gonzalez v. Old Kent Mortgage Co.*, 2000 LEXIS 14530 (E.D. Pa. Sept. 21, 2000)), *citing Bartels v. Alabama Commercial College, Inc.*, 918 F. Supp. 1565 (S.D. Ga. 1995) (stating that the FTC Holder Rule notice is not implicitly included in student loan contracts as "no court in this nation has found that the state's law implicitly include the notice in contracts made in that state or under its laws.")

granted to national banks under the NBA. *See* 12 U.S.C. §24 (Seventh). Imputing the Holder Rule notice into the promissory note would significantly interfere with KeyBank's ability to negotiate promissory notes and lend money. Such a position adds terms and imposes new conditions and significantly impairs the ability of KeyBank to collect money on promissory notes in direct contravention to Federal law. In addition, this undoubtedly will have a disparate impact on the value of promissory notes issued in California because such notes will be worth less than similar notes in states that do not impose liability under the consumer protection statutes. *See Abel*, 313 F. Supp. 2d at 728. Such interference is so substantial as to mandate preemption by the NBA. *See Anderson National Bank v. Luckett*, 321 U.S. 233, 248 (1944) (preemption occurs even if compliance with federal and state law is possible if the state law in question "infringe[s] the national banking laws or imposes an undue burden on the performance of the banks' functions").

      Plaintiffs citations to cases *Gonzalez v. Old Kent*, 2000 U.S. Dist. LEXIS 14530 (E.D. Penn. 2000), *Iron & Glass Bank v. Franz*, 9 Pa. D. & C.3d 419, (Pa C.P. 1978), and *Heastie v. Cmty. Bank of Greater Peoria*, 727 F. Supp. 1133 (N.D. Ill 1989) are distinguishable and do not lend support to Plaintiffs' claims. As an initial matter, they did not involve a national bank such as KeyBank and therefore the court in those cases was not constrained by issues of Federalism at issue in this case. Moreover, *Iron and Glass Bank* and *Gonzalez* have both subsequently been criticized by subsequent Pennsylvania decisions. *See e.g. Williams v. Nat'l Sch. Of Health Tech., Inc.*, 836 F. Supp. 273, 283 (E.D. Pa. 1993) (declining to follow Iron and Glass Bank); *see also In re Crisomia*, 2001 Bankr. LEXIS 1469, *10-11 (disagreeing with the Gonzalez court's analysis). In addition, *Gonzalez* relied entirely on case law where the contracts at issue contained the Holder Rule notice.[4]

---

[4] Notably, the reasoning of *Heastie* was rejected in *Nashville Elec. Serv. v. Stone*, 1998 Tenn. App. LEXIS 474 at *12-14 (1998). In *Stone*, the court recognized that the Holder Rule does not apply to the lender and that the burden is "totally on the seller" either to include the required notice or not accept loan proceeds. Finding that the lender was "in full compliance with the requirements of the FTCA" the court declined to cast the net of its state consumer protection act wider than its legislature had chosen to do. *Id.* at *13. "For this Court to declare that a lender's failure to include the FTC 'holder' rule language in its loan documents as a violation of the [state] Consumer Protection Act is legislative in nature. Until the Tennessee General Assembly, in its wisdom, chooses to make a violation by the seller of 16 C.F.R. §433 an 'unfair or deceptive' act or practice by the lender, we will not undertake to do so." *Id.* Here, even if conflict preemption did not prevent the use of 17200 to modify private loans made by National Banks, the failure of California to specifically legislate this issue is also fatal.

### C. Plaintiffs Fail to Plead Adequate Aiding and Abetting or Unfair Conduct By Helping SSH

Plaintiff also attempt to bootstrap liability claims against non-party SSH on KeyBank. Plaintiffs claim "KeyBank knew that SSH's Service Contract did not contain the required Holder Rule Notice" and therefore "acted unlawfully under Section 17200 by aiding and abetting SSH's violation of subsection (a) of the Holder Rule by facilitating SSH's taking or receiving a consumer credit contract which lacked the required Holder Rule Notice."  Compl. (Docket No. 129) at ¶ 75. Plaintiffs also claim "KeyBank acted unlawfully under the UCL by aiding and abetting SSH's violation of subjection (b) of the Holder Rule by facilitating SSH's acceptance of the proceeds of a 'purchase money loan' with the knowledge that the Service Contract did not contain the Holder Rule Notice."  Compl. ¶ 80.  Plaintiffs acknowledge that California law prohibits a Section 17200 claim predicated on vicarious liability, Opp. at p. 12, but continue to assert that their conclusory allegations describing KeyBank's partnership with SSH establish the required "personal participation" and "unbridled control" necessary for an aiding and abetting claim. *See Perfect 10, Inc. v. Visa Int'l Serv. Ass'n,* 494 F.3d 788, 808 (9th Cir. 2007).  Contrary to Plaintiffs' statements, they do <u>not</u> allege personal participation and unbridled control in deciding whether SSH should include the Holder Rule in its Service Contract.  Their allegations amount to nothing more than an amalgamation of inconsequential events that do not make KeyBank liable for SSH's contractual failures.

Plaintiffs allege:

- SSH explained that students would be provided loans through an arrangement SSH had established with KeyBank and KeyBank marketing and sales personnel helped create, review, approve and ratify SSH's marketing and sales presentation.  Compl. ¶ 32.

- SSH students requested an extension from KeyBank to complete training and KeyBank would extend the student's in-school deferment status; KeyBank had actual knowledge SSH had the potential to fail.  Compl. ¶ 36.

- KeyBank informed SSH it would consider SSH for participation in its education loan programs and solicited SSH to provide a full range of other financing, transaction and advisory service.  Compl. ¶44.

- KeyBank received SSH's application and rejected it.  Compl. ¶45.

- SSH corrected its application and KeyBank accepted it.  Compl. ¶46.

- KeyBank had its loan servicing agent install SCHOLARNET software on SSH computers.  Compl. ¶47.

- SSH's Application identified KeyBank as the preferred lender.  Compl. ¶ 48.

- SSH provided copies of its Service Contract to KeyBank for its review and approval before KeyBank approved any of the Loans.  Compl. ¶ 49.

- SSH promoted KeyBank as preferred lender, disseminated and collected applications from students, applied for the loans on students' behalf, received credit information from prospective students and transmitted it to KeyBank, and oversaw the execution and transmission to KeyBank of the Notes.  Compl. ¶ 50.

- SSH had an enrollment person solicit students to apply for loans from KeyBank, SSH would transmit applications to KeyBank, KeyBank would approve the loan, prepare the Note and transmit it back to SSH, the student would sign and return the Note to SSH, SSH would send the executed Note to KeyBank, and SSH employed "student finance managers" whose responsibility was to interact with Plaintiffs regarding financing tuition through KeyBank.  Compl. ¶ 51.

Even taking these allegations as true for the purpose of this motion, none of the allegations come close to meeting the required elements that KeyBank personally participated in drafting SSH's Service Contract or deciding whether SSH should or should not have included the Holder Rule Notice.  None of the allegations are directed to the issue of KeyBank's controlling whether SSH included the Holder Rule Notice.  The mere allegation that SSH provided exemplar copies of the Service Contract to KeyBank, Compl. ¶ 49, fails to establish that KeyBank had any control over SSH's contracting.

*Marcelos v. Dominquez*, 2008 U.S. Dist. LEXIS 91155 (N.D. Cal. Jul. 18, 2008), is clearly distinguishable.  In *Marcelos*, the plaintiff alleged that he was deceived by a mortgage broker into taking out a financially burdensome loan on his home.  The plaintiff brought a claim for violation of Section 17200 against Argent Mortgage Company and New Century Title Company.  While recognizing that a Section 17200 claim cannot be predicated on vicarious liability, the *Marcelos* court refused to dismiss the claim against the Argent Mortgage Company stating that it did have a relationship with new Century and, as lender, ostensibly had at least some control over the

1   distribution of loan documents." *Id.* at 32.  Here, there is no allegation—because there cannot be—
2   that KeyBank had control over the drafting of SSH's own service contract with its students to which
3   KeyBank was not a party.  Because the Plaintiffs have no claim under Section 17200 against
4   KeyBank for failure to include the Holder Rule Notice in its Promissory Note they try to create a
5   claim based on SSH's alleged violations.  Neither Congress nor any court have held that a national
6   bank, such as KeyBank, is responsible or liable for the seller's violation.  Plaintiffs identify no duty
7   or supporting facts that make KeyBank liable for the actions or inactions of SSH.

### D. Plaintiffs Fail to State A Claim Under the "Unfair" Prong

Contrary to Plaintiffs' assertion, KeyBank did address Plaintiffs' meritless Fifth Claim for Relief under the "unfair" prong of Section 17200.  *See* Motion, at p. 12- 13.  Because no statute, regulation or case authority exists requiring KeyBank to include the FTC Holder Rule, or that can impose liability on KeyBank for a seller's failure to include the FTC Holder Rule, KeyBank has not violated any declared or regulatory policy.  Additionally, all prongs of their Section 17200 claim fail to state a claim based on their preemption by the NBA.  *See* Motion, § F.

### E. Plaintiffs' Fraud Claim Under Section 17200 Fails Because Defendants Did Not Conceal Material Facts

Plaintiffs rebuttal that they have adequately pleaded fraud again misses the mark and presupposes that KeyBank had a duty to disclose the alleged material facts.  As explained in its Motion, KeyBank had no duty to disclose to the Plaintiffs.  *See* Motion, § I.  Moreover, Plaintiffs' at this late stage in pleading attempt to claim that "[h]ad KeyBank disclosed SSH's numerous red flags to Plaintiffs, Plaintiffs most certainly would have acted differently and would not have entered into the Service Contracts with SSH or would have terminated their enrollment with SSH." Opp. p. 16.  Such allegations are not within the Complaint and such pleading here does not save Plaintiffs' deficient claim.


### F. Plaintiffs Continue to Seek to Avoid Their Contractual Agreements By Bringing Suit In a Forum And Under Law Despite Their Express Contractual Obligations

Plaintiffs fail to meet their burden to show that the agreed-to, mandatory choice of forum and choice of law provisions in the Promissory Notes should be disregarded. *See Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2003). Plaintiffs charge into their argument that the contractual language is a nullity because Ohio law contravenes California public policy. *See* Opp. at p. 16. But Plaintiffs' attempt to use this Court's Order on KeyBank's motion to compel arbitration as the basis to jettison the contractual forum and choice of law is misplaced. This Court ruled, and KeyBank has appealed, that Plaintiffs are not compelled to bring their claims in arbitration. *See* Order (Henderson, J) dated July 8, 2009, (Docket No. 81); Notice of Appeal (Docket No. 85). Such decision was based on the court's finding that California law precluded arbitration of claims for injunctive relief.[5] The prosecution of this action in a court, however, does not depend on whether California or Ohio have a policy allowing arbitration of injunctive relief claims. Thus, enforcement of the choice of forum and choice of law would not contravene that stated policy of California.

Additionally, Plaintiffs' arguments that there are other "fundamental" and "strong" policies of California that will be contravened if they are forced to litigate in Ohio is erroneous. Both Ohio and California courts have preempted state consumer protection laws under the NBA, 12 U.S.C. § 21 *et seq*. *See* collection of cases in Motion at p.7 n. 8. Additionally, the fact that another state law differs from California law does not require a finding that California policy would be contravened. *See Batchelder v. Kawamoto*, 147 F.3d 915, 919 (9th Cir. 1998) ("The fact that Japanese law may differ . . . from California law does not necessarily signify that application of Japanese law would contravene California's public policy."); *Cardonet, Inc. v. IBM Corp.*, 2007 U.S. Dist. LEXIS 14519, at *16-17 (N.D. Cal. Feb. 14, 2007) ("The fact that New York law differs from California law does not necessarily signify that application of New York law would contravene California public policy.

---

[5] As this Court is aware, KeyBank disputes this finding and believes that the arbitrability of injunctive claims is an issue of federal, rather than state, law. *See Equal Opportunity Comm'n v. Waffle House, Inc.*, 534 U.S. 279, 294-296 (2002). *See also* KeyBank's Opening Brief to the Ninth Circuit, attached as Exhibit A to KeyBank's Opp. to Pl. Mot. File Third Am. Compl. (Docket No. 124).

Similarly, the mere fact that the chosen law provides greater or lesser protection than California law, or that in a particular application the chosen law would not provide protection while California law would, are not reasons for not applying California law.") (internal quotations and citations omitted).

Plaintiffs' other arguments against an Ohio forum and application of Ohio law are similarly insufficient. The forum selection clause was not obtained as a result of overreaching through the use of an adhesion contract. Plaintiffs have not and cannot allege that KeyBank harassed, pressured, coerced, or defrauded the plaintiffs into signing something they did not want to sign. *See Circuit City Stores, Inc. v. Mantor,* 335 F.3d 1101, 1106 (9th Cir. 2003) (oppression is present when the stronger party pressures, harasses, or compels another party into entering into a contract). Additionally, Plaintiffs had a meaningful and informed opportunity to opt-out of the arbitration agreement but chose not to. *See Oestreicher v. Alienware Corp.*, 502 F. Supp. 2d 1061, 1067 (N.D. Cal. 2007) (A contract of adhesion is one which is "presented on a 'take it or leave it' basis with no opportunity to negotiate."); *see also McKinney v. KeyBank USA, N.A.*, 5:06-CV-01335 SGL-JCR (C.D. Cal. Feb. 21, 2007), attached as Exh. G to Brooks Decl.

Moreover, the parties' agreement to litigate under Ohio law in Ohio is not "hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." *See Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1532 (Cal. Ct. App. 1997) citing *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486 (Cal. Ct. App. 1982). The entire Note is scarcely more than 4 pages long. The choice of law and forum provision appears in bold print in its own paragraph. *See* Baldwin Decl., Exhs. A & B at ¶ R(5). It was not hidden or in small print. Plaintiffs also were not without market alternatives from which they could have sought financing of their education as is plainly evidenced by the inclusion of another loan provider, Student Loan Xpress, in the original suit. In light of these facts, Plaintiffs simply cannot meet their burden of showing oppression or surprise with respect to the choice of law or choice of forum.[6]

---

[6] KeyBank also incorporates by reference its arguments in the Motion to Compel Arbitration (Docket No. 64); Reply to Plaintiffs' Opposition to Motion to Compel Arbitration (Docket No. 71); and at the hearing on the Motion to Compel Arbitration, *see* Transcript July 6, 2009 (Docket No. 95).

## III. CONCLUSION

For all of the foregoing reasons, KeyBank and Great Lakes' Motion to Dismiss should be granted in its entirety.

DATED:  February 12, 2010

Respectfully submitted,

NIXON PEABODY LLP

By: /s/ W. Scott O'Connell
W. SCOTT O'CONNELL
TODD C. TORAL
Attorneys for Defendants
KEYBANK, NATIONAL ASSOCIATION
and GREAT LAKES EDUCATIONAL
LOAN SERVICES, INC.